## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

### No. 24-10120-J
_____

**SANTORI LITTLE, et. al.,**

    **Plaintiffs-Appellants,**

**v.**

**THE CITY OF VALLEY, ALABAMA, et. al.,**

    **Defendants-Appellees.**

_____

### On Appeal from the United States
### District Court for the Middle District of Alabama
_____


### PLAINTIFF-APPELLANT PRINCIPAL BRIEF

Brian M. Clark
Wiggins Childs Pantazis Fisher & Goldfarb LLC
301 North 19th Street
Birmingham, Alabama 35203
205-314-0500

Attorney for Plaintiffs-Appellants

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
APPEAL NO. 24-10120-J

SANTORI LITTLE, TAMARA KHELIFA,
and CHARLES GRAY

      Plaintiffs-Appellants,

v.

THE CITY OF VALLEY, ALABAMA,
and AMWASTE, LLC,

      Defendants-Appellees.

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1, 26.2 and 26.3, Plaintiffs-Appellants Santori Little, Tamara Khelifa, and Charles Gray, submits the following list of persons or entities, which upon information and belief of attorneys for Plaintiffs-Appellants, have or may have an interest in the outcome of this case:

1.      AmWaste, LLC, Defendant-Appellee;

2.      Allan Lamar Armstrong, and the attorneys working for or with the firm of Armstrong Law Center, LLC, Attorneys for Plaintiffs-Appellants;

3.      Callie L. Barrow, and the attorneys working for or with the firm of Burr & Forman LLP, Attorneys for Defendants-Appellees;

*Little, et. al. v. Valley, et. al.,* Appeal No. 24-10120-J

4.      William Joseph Baxley, and the attorneys working for or with the firm of Baxley Jackson Law Firm, Attorneys for Plaintiffs-Appellants;

5.      Darrell Lloyd Cartwright, and the attorneys working for or with the firm of Cartwright Law Center, LLC, Attorneys for Plaintiffs-Appellants;

6.      Brian M. Clark, and the attorneys working for or with the firm of Wiggins, Childs, Pantazis, Fisher, and Goldfarb, LLC, Attorneys for Plaintiffs-Appellants;

7.      Benjamin B. Coulter, and the attorneys working for or with the firm of Burr & Forman LLP, Attorneys for Defendants-Appellees;

8.      Charles Gray, Plaintiff-Appellant;

9.      Bart Gregory Harmon, and the attorneys working for or with the firm of Alexander Hyde, Attorneys for Defendants-Appellees;

10.     Honorable R. Austin Huffaker, Jr., United States District Judge for the Middle District of Alabama;

11.     Robbie Alexander Hyde, and the attorneys working for or with the firm of Alexander Hyde, Attorneys for Defendants-Appellees;

12.     Tamara Khelifa, Plaintiff-Appellant;

13.     Santori Little, Plaintiff-Appellant;

14.     The City of Valley, Defendant-Appellee;

*Little, et. al. v. Valley, et. al.*, Appeal No. 24-10120-J

15.    John Mark White, and the attorneys working for or with the firm of White Arnold & Dowd, P.C., Attorneys for Plaintiffs-Appellants;

The Plaintiff-Appellant is an individual. Plaintiff-Appellant has no knowledge of the Defendants-Appellees' parent companies, subsidiaries, partners, limited liability entity members and managers, trustees, affiliates or similar entities.

*/s/ Brian M. Clark*_____
Counsel for Plaintiff-Appellant

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is requested. The issues in this appeal require oral argument because: (l) the appeal is not frivolous and involves an issue of first impression in this Circuit; (2) the dispositive set of issues presented have not been recently authoritatively decided; and (3) the decisional process will be significantly aided by oral argument.

**<u>CERTIFICATE OF TYPE SIZE AND STYLE</u>**

Pursuant to Eleventh Circuit Rule 28.1 (d) the following is the type size and styled used in this brief:

Times New Roman 14 pt.

# TABLE OF CONTENTS

**PAGE NO.**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ............................... C-1 of C-3

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

CERTIFICATE OF TYPE SIZE AND STYLE ...................................................... i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ..................................................................iv

TABLE OF RECORD REFERENCES IN THE BRIEF.........................................x

I.     STATEMENT OF JURISDICTION ..................................................2

II.    STATEMENT OF ISSUES .............................................................2

III.   STATEMENT OF CASE .................................................................3

       A.     Course Of Proceedings And Disposition Below...................................3

       B.     Statement Of Facts ................................................................4

              1.     Charles Gray ..........................................................5

              2.     Tamara Khelifa .......................................................5

              3.     Santori Little .........................................................5

              4.     The District Court Records Confirm The Facts In
                     The FAC.............................................................6

              5.     The Relationship Between The City And AmWaste................10

       C.     Standard Of Review .........................................................12

IV.    SUMMARY OF ARGUMENT ....................................................12

V.    ARGUMENT ............................................................................15

    A.    The Applicable Law Concerning Garbage Fees ................................15

    B.    The District Court Improperly Applied *Monell* in Dismissing The Claims Against The City.............................................17

        1.    The Actual Holding in *Monell*, and Why it Does Not Apply..........................................................................18

        2.    The District Court Ignored Its Own Precedent, Based On This Court's Precedent, Improperly Taking the Causation Question Away from the Trier of Pact ...................23

        3.    The Choice to Initiate Criminal Proceeding it Knew Would End in Jail Time Was a Policy Choice From Among Other Alternatives.........................................31

    C.    The District Court Improperly Decided the Fact Question of Whether There Was an Agreement Between AmWaste and the City to Extort Money From Plaintiffs .............................35

        1.    Existence of an Enterprise ......................................36

        2.    AmWaste Participated in the Conduct of the Enterprise to Provide Garbage Services and Collect Fees Therefore ..............................................39

        3.    A Pattern of Racketeering Activity Has Been Pled.................42

        4.    The Predicate Act Hobbs Act Violations Have Been Properly Pled..................................................43

VI.    CONCLUSION.........................................................................45

CERTIFICATE OF COMPLIANCE.........................................................46

CERTIFICATE OF SERVICE ................................................................47

## <u>TABLE OF AUTHORITIES</u>

**PAGE NO.**

*Ala. Power Co. v. Moore*,
899 So.2d 975, 979 (Ala. 2004)...............................................................24

*Baisch v. Gallin*,
346 F.3d 366, 377 (2d. Cir. 2003)...........................................................40

*Bd. of Cty. Comm'rs v. Brown*,
520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed.2d 626 [*1302] (1997).................23

*Bey v. Vega,*
588 Fed. Appex. 923, 926 (11th Cir. 2013)..............................................6

*BioHealth Med. Lab, Inc. v. Cigna Health & Life Ins. Co.*,
706 Fed. Appx. 521, 523 (11th Cir. 2017)..............................................12

*Boyle v. U.S.*,
556 U.S. 938, 946 (2009) .......................................................................36

*Bullen v. State*,
518. So.2d. 227, 233 (Ala. Crim. App. 1987).........................................15

*Butler v. Olshan,*
280 Ala. 181, 191 So.2d 7 (1966).........................................................29

*Carter v. City of Montgomery*,
473 F. Supp. 3d 1273, 1302-03 (M.D. Ala. 2020).........................23, 25, 26, 29, 30

*Catino v. Capuano*,
2019 U.S. Dist. Lexis 114983 * 16 (S.D. Sla. July 11, 2019) ................................37

*Conley v. Gibson*,
355 U.S. 41, 45-46 (1957) ....................................................................5

*Craig v. Floyd City*,
643 F.3d 1306, 1310 (11th Cir. 2011) ...................................................22

*Doe v. McRae's of Alabama*,
703 So.2d 348, 350 (Ala. Civ. App. 1996) ..............................................28

*D.L. Hernando County Sherriff's Office*,
620 F. Supp. 3d 1182, 1199 (M.D. Fla. 2022).........................................33

*Elliot v. Foufas*,
867 F.2d 877, 881 (5th Cir. 1989) ...........................................................37

*General Motors Corp. v. Edwards*,
482 So.2d 1176, 1195 (Ala. 1985)....................................................27, 29

*GoTV, Inc. v. Fox Sports Latin Am.,*
2018 U.S. Dist. Lexis 29836 at *38, 39 (S.D. Fla. Jan. 26, 2018) ...................42, 43

*Goles v. Gardner*,
249 So.2d 824, 826 (Ala. 1971).................................................................28

*Goodwyn v. Gibson*,
235 Ala. 19, 177 So. 140 (1937)................................................................27

*Great Western Dev. Corp. v. Benson*,
2018 U.S. Dist. Lexis 184408 at *19 (N.D. Ala. Oct. 29, 2018)...........................36

*Gummo v. Olsen*,
2019 U.S. Dist. Lexis 239617 at * 24 (N.D. Ga. June 4, 2019) ............................33

*Haddan v. Norfolk S. Ry. Co.*,
367 So.3d 1063, 1067, 1072-73 (Ala. 2022) ..............................13, 27, 29

*H.J. Inc., v. N.W. Bell Tel. Co.*,
492 U.S. 229, 237 (1989).........................................................................42

*Lands v. Ward*,
349 So.2d 219, 228 (Ala. 2021)................................................................28

*Lehman v. Lucom*,
727 F.3d 1326, 1330 (11th Cir. 2013) .....................................................35

*Lemley v. Wilson*,
178 So.3d 834, 842 (Ala. 2015) ...................................................................24

*Louisville & N.R. Co. v. Courson*,
234 Ala. 273, 174 So. 474 (1937) ...............................................................27

*Malone v. City of Decatur, Alabama*,
2018 WL 4901212 (N.D. Ala. Oct. 9, 2018) .............................................45

*Mobile Gas Serv. Corp. v. Robinson*,
20 So.3d 770, 780-781 (Ala. 2009).............................................................24

*Monell v. Dept. of Soc. Svcs. Of N.Y.C.*,
436 U.S. 658, 694 (1978) ....................................... 2, 14, 17, 18, 19, 32, 33

*Morgan v. City of Tuscaloosa*,
268 Ala. 493, 108 So. 2d 342 (1959).........................................................27

*Oklahoma City v. Tuttle*,
471 U.S. 808, 823 (1985).....................................................................14, 33

*Profilet v. Cambridge Pin Corp.*,
231 B.R. 373, 381 (S.D. Fla. 1999) ..........................................................43

*Reves v. Ernest Young*,
507 U.S. 170............................................................................................40

*Salinas v. United States*,
522 U.S. 52, 65 (1997) ..............................................................................41

*Smith v. City of Oak Hill*,
587 F. App'x 524, 527 (11th Cir. 2014)...................................................23

*Smithfield Foods, Inc., v. United Food Commer. Workers Int'l Union*,
585 F.Supp. 2d 789, 800, 802 (E.D. va. 2008) .......................................44

*Springer v. Jefferson Cty.*,
595 So.2d 1381, 1383, 1384 (Ala. 1992)..............................13, 24, 26, 30

*Stubbs v. Wyndham Resort & Crystal Palace Casino*,
447 F.3d 1357, 1360 (11th Cir. 2006) ...................................................21

*Teagan v. City of McDonough*,
949 F.3d 670, 672, 674 (11th Cir. 2020) ...............................17, 25, 33, 34

*Thetford v. City of Clanton*,
605 So.2d 835, 841 (Ala. 1992) ...............................................................28

*United States Fid. & Guar. Co. v. Jones*,
356 So. 2d 596 (Ala. 1977) ......................................................................29

*United States v. Agnes*,
753 F.2d 293, 298-99 (3d Cir. 1985) .......................................................44

*United States v. Browne*,
505 F.3d 1229, 1264 (11th Cir. 2007) ......................................................41

*United States v. Enmons*,
410 U.S. 396, 399-400 (1973) ..................................................................44

*United States v. Godwin*,
765 F.3d 1306, 1320 (11th Cir. 2014) ......................................................40

*United States v. Goldin Indus., Inc.*,
219 F.3d 1271, 1275 (11th Cir. 2000) ......................................................36

*United States v. Householder*,
2023 U.S. Dist. Lexis 815 * 11 (S.D. Ohio Jan. 3, 2023) .......................41

*United States v. Nicholson*,
716 Fed Appx. 400, 408 (6th Cir. 2017) ..................................................41

*United States v. Pendergraft*,
297 F.3d 1198, 1205 (11th Cir. 2002) .................................................44, 45

*United States v. Porcaro*,
648 F.2d 753, 760 (1st Cir. 1981) .............................................................44

*United States v. Turkette*,
452 U.S. 576, 583 (1981)...................................................................14, 37

*United States v. Warledo*,
557 F.2d 721, 730 (10th Cir. 1977) ..........................................................44

*U.S. v. Allen*,
155 F.3d .5, 42-43 (2d. Cir. 1998) ............................................................40

*Vines v. Plantation Motor Lodge*,
336 So.2d 1338, 1339 (Ala. 1976)............................................................27

*Watt v. Combs*,
244 Ala. 31, 12 So. 2d 189 (1943).............................................................27

*Williams v. Bennett*,
689 F.2d 1370, 1389 (11th Cir. 1982) ........................................13, 24, 26

*Williams v. Mohawk Indus., Inc.*,
465 F.3d 1277, 1282 (11th Cir. 2006) .......................................................35

*Wright v. Newsome*,
795 F.2d 964, 967 (11th Cir. 1986) .............................................................5

**STATUTES:**

42 U.S.C. § 1983................................................... 2,13, 17, 18, 19, 23, 33

18 U.S.C. § 1964 ........................................................................................3

18 U.S.C. § 1962(c) ......................................................................14, 15, 35

18 U.S.C. § 1951(b)(2).................................................................15, 43

42 U.S.C. § 1988...........................................................................26

18 U.S.C. § 1960...........................................................................35

18 U.S.C. § 1961(4) ................................................................................36

18 U.S.C. § 1951(a) ................................................................................43

18 U.S.C. § 2113(a) ................................................................................45

**OTHER AUTHORITIES:**

Ala. Code § 11-47-130 ............................................................................18

Ala. Code § 11-47-135 ............................................................................18

Ala. Code § 22-27-1 ..........................................................................15, 18

Ala. Code § 22-27-5 .........................................................................5, 6, 7

Ala. Code § 22-27-7 ....................................................................12, 15, 16

Ala. Code § 22-27-11 ...................................................................10, 11, 17

Ala. Code § 22-27-n6 ..............................................................................16

Ala. Const. § 20 ...............................................................................14, 15

Valley Mun. Code § 58-127 ................................. 3, 9, 11, 12, 16, 32, 45

## TABLE OF RECORD REFERENCES IN THE BRIEF

| **Brief Page #** | | **Docket #** |
|---|---|---|
| 3 | Complaint | Doc. 1 |
| 3 | Amended Class Action Complaint | Doc. 9 |
| 3 | City Motion to Dismiss First Amended Class Action Complaint | Doc. 21 |
| 3 | Valley Supporting Memorandum to Dismiss First Amended Class Action Complaint | Doc. 22 |
| 3 | AmWaste's Motion to Dismiss First Amended | Doc. 23 |
| 4 | Plaintiffs' Response to City's Motion to Dismiss First Amended | Doc. 19 |
| 4 | Plaintiffs' Response to AmWaste's Motion to Dismiss | Doc. 20 |
| 4 | Order Granting AmWaste's Motion to Dismiss | Doc. 30 |
| 4 | Order Mooting City's Motion to Dismiss | Doc. 32 |
| 4, 5, 6, 7 10, 11, 12, 17, 19, 20, 21, 22, 25, 26, 28, 31, 32, 36, 38 39, 40, 42, 43 | Second Amended Complaint | Doc. 31 |
| 4 | AmWaste's Motion to Dismiss Second Amended Complaint | Doc. 33 |
| 4 | City's Motion to Dismiss Second Amended Complaint | Doc. 34 |

| 4 | City's Supporting Memorandum to Dismiss Second Amended Complaint | Doc. 35 |
|---|---|---|
| 4 | Plaintiffs' Opposition to AmWaste's Motion to Dismiss | Doc. 38 |
| 4 | Plaintiffs' Opposition to City's Motion to Dismiss | Doc. 39 |
| 4, 13, 25, 26, 27, 28, 32, 34, 35 | Court Memorandum Opinion & Order | Doc. 42 |
| 4 | Notice of Appeal | Doc. 43 |
| 6, 8, 9, 10, 20 | City Supporting Memorandum Brief Exhibit B | Doc. 35-2 |
| 7, 8, 9, 20 | City Supporting Memorandum Brief Exhibit C | Doc. 35-3 |
| 7, 8, 20 | City Supporting Memorandum Brief Exhibit A | Doc. 35-1 |
| 10 | Valley Supporting Memorandum to Dismiss First Amended Complaint Exhibit A | Doc. 22-1 |

**PLAINTIFF'S PRINCIPAL BRIEF**

## PLAINTIFFS'-APPELLANTS' PRINCIPAL BRIEF

## I.    <u>STATEMENT OF JURISDICATION</u>

This appeal arises from a final judgment on all issues between all parties.

## II.    <u>STATEMENT OF ISSUES</u>

1.    Whether the District Court erred when it held that Plaintiffs' Claims under 42 U.S.C. § 1983 fail under <u>Monell v. Dept. of Soc. Svcs. Of N.Y.C.</u>, 436 U.S. 658, 694 (1978) because the custom or policy of the City of Valley, Alabama, was not the factual and proximate cause of the complained of Constitutional deprivations when all prosecutions were initiated by the choice of the City Valley, Alabama to pursue prosecutions it knew would result in jail time not authorized by any statute as opposed to civil actions to collect debt.

2.    Whether the District Court erred in holding that the jailing of Plaintiffs for the failure to pay garbage bills was not within the authority and responsibility of the City of Valley, Alabama.

3.    Whether the District Court erred in holding that the allegations of the Second Amended Complaint failed to plausibly allege a RICO Claim.

## III.    STATEMENT OF THE CASE

This case arises out of the jailing of Plaintiffs for violating an ordinance of the City of Valley, Alabama, where neither the city ordinance that covering garbage collection, Valley Mun. Code § 58-127, nor the State statute authorizing the above-referenced City of Valley Municipal Code section, provide for the imposition of a jail sentence for the failure to pay garbage fees.

### A.    Course of Proceedings and Disposition Below.

On January 19, 2023, Plaintiff Santori Little filed a Complaint against the City of Valley, Alabama ("Valley" or "the City"), and AmWaste, LLC ("AmWaste"), Doc. 1, complaining of the Constitutional validity of the practice of jailing people in Valley, Alabama, for failing to pay their garbage bills that were collected by the City of Valley, Alabama. Doc. 1, pp 7-11. The Complaint also contained a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, against the City and Amwaste.

On February 3, 2023, Plaintiffs filed an Amended Class Action Complaint, Doc. 9, adding plaintiffs Gray and Khelifa.

On March 23, 2023, the City filed a Motion to Dismiss the First Amended Complaint, Doc. 21, along with a supporting Memorandum. Doc. 22. On March 24, 2023, AmWaste filed a Motion to Dismiss, Doc. 23. Each

3

of those Motions was responded to by Plaintiffs, Docs. 19, 20, and a hearing was had on the Motions on July 31, 2023. On August 31, 2023, the Court entered an Order granting AmWaste's Motion to Dismiss without Prejudice, allowing Plaintiffs until September 15, 2023, to file an amended Complaint to set forth more fully the factual and legal predicates to their RICO claims against AmWaste. Doc. 30. The City's Motion was denied as moot by separate Order. Doc. 32.

Plaintiffs filed the Second Amended Complaint ("SAC"), on September 15, 2023, Doc. 31. On September 29, 2023, AmWaste filed a Motion to Dismiss the SAC, Doc. 33, and on September 29, 2023, the City filed a Motion to Dismiss the SAC. Doc. 34. The City filed a separate supporting Memorandum. Doc. 35. Both Motions were opposed by Plaintiffs; Docs. 38, 39, on October 26, 2023.

On December 15, 2023, the Court entered its Memorandum Opinion and Order in the case, Doc. 42, granting the Motions to Dismiss filed by both AmWaste and the City of Valley. This appeal followed by the filing of a Notice of Appeal on January 11, 2024. Doc. 43.

## B.    <u>Statement of Facts</u>.

This case was decided on a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss. Under the applicable standard of review, which is that all facts must be

accepted as true, <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Wright v. Newsome</u> 795 F.2d 964, 967 (11th Cir. 1986), the following facts pled in the SAC are operative.

### 1.    **<u>Charles Gray</u>**

Mr. Gray was delinquent on his garbage bill with the City of Valley in late 2021, Doc. 31, p. 3. A warrant was issued for Mr. Gray's arrest on the charge of Failure to Pay Solid Waste Fees, pursuant to Ala. Code § 22-27-5, and January 14, 2022, Mr. Gray was arrested pursuant to the warrant and taken to jail, Doc. 31, p. 3. Mr. Gray was in jail until January 19, 2022, when he posted a $2,500 bond for his release. Doc. 31, p. 3. Mr. Gray also had to pay a $25.00 fee and the original $104.92 bill. Doc. 31, p. 3.

### 2.    **<u>Tamara Khelifa</u>**

On or about November 30, 2022, Ms. Khelifa was served with an arrest warrant for the offense of Failure to Pay Solid Waste Fees. Doc. 31, p. 4. Ms. Khelifa was jailed for the offense of Failure to Pay Solid Waste Fees. Doc 31, p. 4. Ms. Khelifa posted bond in the amount of $2,500.00 and was released from jail. Doc. 31, p. 4.

### 3.    **<u>Santori Little</u>**

On December 5, 2011, Mr. Little was arrested for the Failure to Pay Solid Waste Fee. Doc. 31, p. 2. On July 9, 2013, Ms. Little was arrested and

jailed for Failure to Pay Solid Waste Fee. Doc. 31, p. 3. Ms. Little was issued

Show Cause Orders to show cause why she has not paid her fines and fees

since 2013, July of 2021, November 9, 2021, and May 9 of 2022. Doc. 31, p.

3. Ms. Little was served with a warrant on January 23, 2023. Doc. 31, p. 3.

### 4.    The District Court Records Confirm The Facts Pled In The FAC.

The District Court records show[1] that Mr. Gray and Ms. Khelifa were

jailed for "Fail Pay Solid Waste Fees". Mr. Gray's Case Action Summary

record shows in the very first entry that he was arrested on January 14, 2022.

Doc. 35-2, p. 5. The text clearly states why he was arrested. It reads, "Charge

01: Fail to Pay Solid Waste." Doc. 35-2, p. 5. The document shows that Mr.

Gray posted $2,500.00 bond, and that he was not released from jail until

January 19, 2022. Doc. 35-2., p. 5. The actual charging document corroborates

this. The criminal Complaint, Doc. 35-2, p. 7, states the date Mr. Gray was

arrested and states that Mr. Gray did "Commit the Offense of Fail Pay Solid

Waste Fees" or about 1/21/2022. Doc. 35-2, p. 7. The document mentions

nothing about the failure to appear, or any other alleged criminal act. The

document further references Ala. Code § 22-27-5. Doc. 35-2, p. 7. Of course,

Ala. Code. § 22-27-5 is a statute enabling municipalities to enter into a

---

[1] *Bey v. Vega*, 588 Fed. Appex. 923, 926 (11th Cir. 2013)(Court may take judicial notice of state court criminal docket).

6

contract with third parties to provide garbage services, and then, for the non-payment of bills of by residents, "suspend the services or may proceed to recover the amount of any delinquency with interest in a civil action, or both." Ala. Code §22-27-5.

Ms. Khelifa's District Court records are in accord with Mr. Gray's. The Case Action Summary sheet from the Court states, just like the SAC, that Ms. Khelifa was arrested on November 30, 2022. Doc. 35-3, p.5. The charge is clearly listed as "Fail to Pay Solid Waste." Next, the Case Action Summary sheet says, as does the SAC, Doc. 31, p. 4, that Ms. Khelifa's bond was set at $2,500.00, and that she paid the bond on the same day she was jailed, and was released. Doc, 35-3, p. 5. Like Mr. Gray, the Criminal Complaint shows, exactly as alleged in the SAC, that Mr. Khelifa was arrested for "Fail to Pay Solid Waste Fees." Again, Ala. Code §22-27-5, is cited as the only charge listed. Doc. 35-3, p. 7.

Finally, Ms. Little's District Court record shows exactly how it is undisputed that Mr. Gray and Ms. Khelifa were arrested and jailed for the failure to pay garbage fees, and not for the failure to appear. Ms. Little's record shows that she was arrested in 2011, just like Mr. Gray and Ms. Khelifa, for the "Fail to Pay Solid Waste Fee" Doc. 35-1, p. 5. The distinguishing fact is that the record shows that Ms. Little was arrested on

7

12/5/2011 for "Fail to Pay Solid Waste" fee. Doc. 35-1, p. 5. However, when she did not appear at a plea docket on 1/11/12, she was charged with Failure to Appear. Document 35-1, p. 10, is the warrant for Ms. Little's arrest or a charge of "Failure to Appear or the Charge of Fail to Pay Solid Waste Fee-Misdemeanor." Doc. 35-1, p. 10. The difference is that Ms. Little was arrested on 12/5/2011, Doc. 35-1, p. 5, and charged with the failure to pay solid waste fee, then when she did not appear for the plea docket on 1/11/2017, she was arrested for her failure to appear. No such charges appear on the records for Mr. Gray or Ms. Khelifa. Mr. Gray and Ms. Khelifa were jailed in the first instance (as was Ms. Little) for the Failure to Pay Solid Waste Fees, **__not__** for the failure to appear at a later plea docket. Mr. Gray's Case Action Summary sheet shows that: (1) he was arrested and jailed for the failure to pay garbage fees on 1/14/22; (2) bonded out for $2,500.00; and then (3) his case was set for a plea docket on March 9, 2022, where he pled guilty, Doc. 35-2, p. 5. Mr. Gray was jailed in the first instance on a charge of failure to pay solid waste fees.

Ms. Khelifa's records follow the same pattern. Ms. Khelifa was arrested, in the first instance, on 11/30/21 on a charge of Fail to Pay Solid Waste. Doc. 35-3, p. 5. Ms. Khelifa bonded out of jail, Doc. 35-3, p. 5, and her case was set for plea docket on 1/11/23. Doc. 35-3, p. 5. The case is about

an original arrest and jailed for the Charge of failure to pay solid waste fees. That is what the District Court records show, and that is what has been pled in the SAC.

The guilty pleas entered by Mr. Gray and Ms. Khelifa show exactly what they were arrested and charged with in the first instance. Mr. Gray's record shows that after he was bonded out on 1/19/2022, his case set for a plea docket on March 9, 2022. Doc. 35-2, p. 5. At that plea docket on 3/9/2022, the record shows that the following: "Charge 01 Disposed of by Guilty Plea on 03/09/20222." Doc. 35-2, p. 5. "Charge 01" is not failure to appear. "Charge 01", according to the District Court record is "Fail to Pay Solid Waste 1# CNTS:001," meaning there was only one Count in the arrest, and it was for failure to pay solid waste fees. Similarly, Ms. Khelifa's record shows that after she bonded out of jail on 11/30/2022, her case set for a plea docket on 1/11/23. Doc. 35-3, p. 5. At that plea docket, Ms. Khelifa, the record shows, "Charge 01 Disposed by Guilty Plea". Doc. 35-3, p. 5. Right under that count, the Court records shows what "Charge 01" was. It states, "Charge 01: Fail to Pay Solid Waste 1 # CNTS: 001." Doc. 35-3, p. 5.

Finally, Ms. Little's records show how this process was begun by a choice to criminally prosecute citizens for failing to pay garbage bills, as opposed to pursuing the civil action authorized by Valley Mun. Code § 58-

9

127 and/or Ala. Code § 22-27-11. Ms. Santori's file contains the original Code

Violation Citation sworn out by the City. Doc. 22-1, p. 8, and the SAC alleges

that, "In each instance referenced above the process was started with the City

making a Complaint for a Code Violation. Pursuant to Alabama statute each

of the Plaintiffs herein were arrested and jailed." Doc. 31, p. 4.

### 5.    The Relationship Between The City And AmWaste.

As far back as 2011, Valley contracted with an outside company for

residential garbage collection. Doc. 31, p. 2. In 2019, AmWaste assumed the

City's garbage contract. Doc. 31, 9. 5. When it assumed the contract,

AmWaste knew that the City had been jailing people for not paying their

garbage bills. Doc. 31, p. 5.

AmWaste knew that the collection of garbage fees by criminal

conviction and jailing was more about using the fear of being jailed to

intimidate people into paying then actually collecting fees from those charged.

Doc. 31, p. 4. In each of Plaintiffs' cases, the additional fees and court costs

for outweighed the amount actually owed. For instance, in the case of Charles

Gray, the original amount owed was $104.92. Mr. Gray's bond, after he was

asserted, was set at $2,500.00. Doc. 35-2. In order to get bonded out of jail,

Mr. Gray had to pay a bondsman. Mr. Gray had to pay a bondsman $250.00.

Doc. 31, p. 4. The City would have been better served to simply pursue

10

ordinary collection avenues, which are available under Mun. Ord. 58-127 and Ala. Code § 22-27-11. Doc. 31, p. 4. In addition to the bond, Mr. Gray had to pay a $25.00 bond fee, and $219.00 in costs. Doc. 31, p.4.

Over the course of time, the court costs are additional fees, in the aggregate, are over three times the amount owed. Doc. 31. p. 4.  None of that money goes to the City. The City would be better of just collecting the monies via the statutorily authorized civil action. However, it uses the prosecution and jailing process to intimidate the broader community into paying their garbage bills. Doc. 31, p. 5. AmWaste knew about this when it took over garbage collection, and the City was to collect the fees. Doc. 31, p. 51. AmWaste knew the collecting of garbage fees included jailing people. Doc. 31, p 5. In effect, AmWaste and the City were partners in the garbage collection business. Doc. 31, p. 16. When AmWaste took over the garbage collection for the City in 2019, "The status quo of collection efforts would remain in place, including the use of jail and threats of jail to collect garbage fees. This was understood and approved by AmWaste when it assumed the garbage collection contract, and AmWaste gladly accepted the fruit of the illegal collection practices." Doc. 31, p. 16. "When it assumed the garbage collection contract, AmWaste agreed that the City would continue to collect its fees as it had done before AmWaste assumed the contract – through using

11

jail and the threats of jail as a method to force payment of the fees." Doc. 31, p. 17.

**C.**    **Statement of Standard of Review.**

The standard of review for a motion to dismiss is <u>de novo</u>, and all material facts must be viewed in the light most favorable to the non-moving party. <u>BioHealth Med. Lab, Inc. v. Cigna Health & Life Ins. Co.</u>, 706 Fed. Appx. 521, 523 (11th Cir. 2017).

**IV.**    **SUMMARY OF THE ARGUMENT**

This case is about the choice the City of Valley made when presented with residents of the City who had not paid garbage bills. The City chose, instead of instituting civil actions to collect debts like any other creditor, to institute criminal prosecutions that it knew would lead to incarceration for those owing the debts, despite the fact that neither the City of Vally Municipal Code covering garbage collection, Valley Mun. Code. § 58-127, or the State statute for solid waste collection, Ala. Code § 22-27-7, authorized incarceration for failure to pay garbage bills.

The first error of the District Court was to hold that, because the State district court was the entity that actually imposed the extra-statutory jail time for garbage fees, the chain of causation between the actions of the City, who uniformly instituted the criminal process, was broken. The reason that this is

12

error is because causation in a § 1983 case is a matter of state law in which the case sits. Williams v. Bennett, 689 F.2d 1370, 1389 (11th Cir. 1982). Causation in Alabama is but for causation. In other words, would the injury have occurred but for the defendant's act on omission? Springer v. Jefferson County, 595 So. 2d 1381, 1383 (Ala. 1992).

The District Court opinion admits that the but for causation threshold is met, stating, "…as the Plaintiffs allege, the City initiated the causal chain that led to the actions of which the Plaintiffs complain…" Doc. 42. p. 12. However, the Court held that, "The chain of causation was broken by the subsequent acts of the state district court. This is a misapplication of the law. In order for an event to be an intervening cause, that event had to be unforeseeable, and must have been sufficient in and of itself to have been the sole 'cause in fact' of the injury." Hadden v. Norfolk S. Ry. Co., 367 So. 3d 1067, 1072-73 (Ala. 2022). The State district court's role in imposing jail for offenses that do not provide for jail time fails on both counts: (1) The City knew well from lengthy experience that when it made criminal complaints for failure to pay solid waste, jail time would be imposed; and (2) the district court's action could not, in and of itself, caused the injury as it was not animated except when the City, which in all instances it did, began the process by the filing of a Code Violation Citation sworn out by the City.

13

The District Court then erred when it found that the criminal process ending with jail time for debts was not the result of a custom or policy of the City because, "all it did was refer the cases for prosecution." That is not all it did. A policy, under Monell v. Dept. of Social Svcs., 436 U.S. 658 (1978), is "a course of action consciously chose from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1980). In this case, the City had the, frankly more efficient in terms of collection, option to pursue a civil action for the garbage fees under either State law or Municipal Ordinance. Instead it chose an option that it knew and intended due to the effect of intimidating citizen into paying garbage bills, would lead to incarceration for debt that is not authorized by statute, and is particularly prohibited by the Alabama Constitution. Ala. Const. §20.

The District Court furthered erred in its RICO analysis when it based its opinion on reasoning that a business relationship between the City and AmWaste could not meet the "enterprise" element of RICO claim under U.S.C. § 1962(c). The existence of an association in fact between alleged RICO conspirators beyond the alleged RICO predicate acts of unlawful activity is necessary. The law is that the association in fact creating the RICO enterprise must be an entity separate and apart from the pattern of activity in which it engages." U.S. v. Turkette, 452 U.S. 576, 583 (1981). In this case,

14

the otherwise legitimate activity of the City collecting garbage fees on behalf of the provider of the garbage services, AmWaste, provides that separate entity used as a vehicle to undertake the pattern of extortion that that violates the Hobbs Act, 18 U.S.C. § 1951 (b)(2), resulting in RICO liability under 18 U.S.C. § 1962 (c).

## V.    **ARGUMENT**

### A.    **The Applicable Law Concerning Garbage Fees.**

This case is based on the legal premise that it is extra-constitutional to jail people for failing to pay their garbage bills. The practice violates the Alabama Constitution which states, "No person shall be imprisoned for debt" Ala. Const. § 20. "The Alabama Supreme Court has condemned the use of threat of prosecutions as a means of collecting debt" Bullen v. State, 518. So. 2d. 227, 233 (Ala. Crim. App. 1987). Jail time is simply not an available penalty for the failure to pay garbage fees under either the Valley Municipal Code ("Valley Mun. Code"), or the State statute Ala. Code § 22-27-1, et. seq. enabling the solid waste disposal provisions of the Valley Municipal Code. Neither Defendant has disputed this as a matter of substantive Constitutional law.

The Valley Municipal Code sets forth billing procedures for garbage collections, and then sets out the penalties for non-payment. The Municipal

15

Code states that where residents do not pay their garbage bills, the City may suspend service "or may proceed to recover the amount of any such delinquency with interest at 12 percent per annum from the due date in a civil action or both." Valley Mun. Code § 58-127. There are criminal sanctions that can be imposed on those who do not pay garbage bills, however, imprisonment is not available under the Municipal code. The Code states:

> In addition any person violating any provisions hereof or any rule or regulation made herein, shall be guilty of a misdemeanor, and upon conviction, shall be fined not less than $50.00 nor more than $200.00, and if the violation or failure or refusal to obey or comply with such provision, rule or regulation is a continuing one, each day's violation shall constitute a separate offense and shall be punished accordingly. The City also adopts any other sanctions for violations outlined in Code of Ala. 1975, §§ 22-27-n6 and 22-27-7, as amended, including the right of civil action.

Valley Mun. Code § 58-127. Jail time is simply not available for the failure to pay garbage bills under the Municipal Code, nor is it available under the State statute authorizing municipalities to institute their own solid waste programs, and specifically referenced by the Valley Municipal Code. Ala. Code § 22-27-7, states that a person found guilty of paying garbage fees "shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than $50.00 nor more than $200.00." Ala. Code § 27-27-7. Similarly, the Alabama Code section on solid waste disposal contains a civil remedy for those violating the Code. It states that the Department, "May issue administrative orders under

16

Section 22-22A-5 or initiate civil actions, or both, as it deems necessary against any person in enforcement of this article." Ala Code § 22-27-11 (1975).

The facts in this case are that instead of pursuing a civil action to collect a debt, like any other creditor, the City made a Complaint for a Code Violation, Doc. 31, p. 4, setting in motion a process it knew would end up with the jailing of citizens for not paying their garbage bills. Doc. 31, p. 5. The City institutes criminal proceedings not so much to collect debts from those charged, but to intimidate the populace, writ large, into paying the garbage bills. Doc. 31, p. 5.

### B.    The District Court Improperly Applied *Monell* in Dismissing the Claims Against the City.

The District Court's Opinion contains no substantive analysis of the claims under the Fourteenth (Count I), Doc. 31, pp. 11-12, and Eighth (Count IV), Doc. 31, pp. 17-18, Amendments made pursuant to 42 U.S.C. § 1983. Rather, it bases its dismissal on an application on <u>Monell</u> that is not the holding of the case. Instead, the District Court based its ruling on <u>Teagan v. City of McDonough</u>, 949 F.3d 670 (11th Cir. 2020), more than any other authority. This authority was used as the primary underpinning of the District Court's opinion despite the fact that this authority was never argued by the City below in any detail. It was not argued below because <u>Teagan</u> is a case

17

decided on the principle that a municipality cannot be held liable where the complaint lodged against it is one for its exercise of State, as opposed to municipal, authority. In this case, the complaint is against the City for exercising a governmental function, enforcement of garbage bills due, delegated to it[2] and exercised by the defendant municipality.

### 1. The Actual Holding in *Monell*, and Why it Does Not Apply.

In <u>Monell v. Department of Social Svcs.</u>, 436 U.S. 638 (1978), the plaintiff brought an action against the city of New York, claiming that an official policy of the city had compelled pregnant employees to take unpaid leaves of absences as a matter of policy before such leave was required for medical purposes. The claims were brought pursuant to 42 U.S.C. § 1983. The District Court dismissed, and the Second Circuit affirmed, holding that municipalities were not "persons" subject to § 1983 liability. The Supreme Court reversed, holding that municipalities are subject to § 1983 liability where the Constitutional deprivation is the result of a governmental custom or policy. The holding reads as follows:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts

---

[2] The solid waste provision of the Valley Municipal Code, states that it is authorized by Ala. Code §§ 11-47-130, 135; and Ala. Code 22-27-1, <u>et. seq</u>. In practice the City took responsibility for collecting garbage, and hired AmWaste to do the collection while retaining the collection of fees for itself. Doc. 31, p. 6.

> or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation found by the District Court, see supra, at n. 2, we must reverse the judgment below. In so doing, we have no occasion to address, and do not address, what the full contours of municipal liability under § 1983 may be. We have attempted only to sketch so much of the § 1983 cause of action against a local government as is apparent from the history of the 1871 Act and our prior cases, and we expressly leave further development of this action to another day.

Monell, 436 U.S. at 694.

The Monell decision did not speak to the causation issue the District Court based its ruling on, other than to say that the Constitutional deprivation cannot be based upon a respondent superior theory, but had to be the result of the "execution of a government's policy or custom." Id. The SAC clearly meets this mandate. First it lays out strikingly similar facts for the three named plaintiffs wherein prosecutions for the violation of Municipal Ordinances led to unauthorized jail time. Second, the SAC clearly alleges that, "In each instance referenced above the process was started with the City making a Complaint for a Code Violation." Doc. 31, p. 4. This is important, as there were, as stated at greater length, infra, other options that would not lead to incarceration for offenses without statutory support. Third, the SAC pleads the longevity of the practice, stating, "Long before this action was filed, the City had been jailing people for not paying their garbage bills…the City used

this process to intimidate people into paying their garbage bills." Doc. 31, p. 5.

The Complaint in this case shows that it was the custom or policy of the City of Valley to criminally charge and jail people for the failure to pay garbage bills as a matter of course. The arrest records of just the three named Plaintiffs show that longstanding policy. Ms. Little was arrested for the failure to pay garbage fees way back in 2011. Doc. 35-1, p. 5. Mr. Gray was arrested and jailed for failing to pay his solid waste fee in January of 2022, Doc. 35-2, p. 5; and in December 2022, Ms. Khelifa was arrested and jailed for the same charge. Doc. 35-3, p. 5. Not only were the charges the same, but bond was set on all three cases as $2,500.00. Doc. 35-1, p. 5; Doc. 35-2, p. 5, and Doc. 35-3, p. 5.

In addition to the identity of the proceedings on the Case Action Summary Sheet, Mr. Gray and Ms. Khelifa were charged in identical criminal complaints, Doc. 35-2, p. 7; 35-3, p. 7., with the failure to pay solid waste fees that by statute, were to be paid to the city, who set in motion the prosecutions. The theory of the case is not that some officer or official of the City made a particular decision within the line and scope of his or her duties, subjecting the city to liability biased upon the doctrine of respondeat superior. The theory is that in each case, the prosecutions were initiated by the City when there

20

were other alternatives, i.e., civil actions or fines, Doc. 31, p.4, and that in addition to the named plaintiffs "at least hundreds of individual members of the class of persons jailed were threatened with jail, for failure to pay garbage collection fee[s]…", Doc. 31, p. 9, ¶¶ 53, 54.

It is clear that the SAC alleges that it was the custom of the city to prosecute citizens knowing that they would be jailed. The SAC alone shows that the practice has been going on for over ten (10) years. The SAC specifically alleges that the jailing of citizens for failing to pay garbage bills was known to each defendant, and was "for AmWaste to generate garbage collection fees, and then for the City to collect those fees." Doc. 31, p. 13. at ¶ 73. It is alleged that the City initiated the prosecutions, Doc. 31 p. 4, that, contrary to Alabama law, resulted in revenues for the City above and beyond the pass-through for AmWaste. Doc. 31, p. 8. Moreover, it is alleged that the pattern of arresting, jailing, and collecting excessive fees and fees occurred dozens, or hundreds, of times within the last ten (10) years. Doc. 31, p. 16 at ¶ 91.

Particularly under the proper evidentiary standard for Rule 12(b)(6) motions, Stubbs v. Wyndham Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006), Plaintiffs have alleged that it is the custom or policy of the City to initiate criminal complaints (they are the only actor who would

know, ab initio, that garbage bills were in arrears), SAC, Doc. 31, p. 4, ¶ 25, with full knowledge that the end result would be the jailing of citizens despite other options being available, i.e, a civil action.

The above-referenced allegations show that it is the custom or policy to institute criminal proceedings with the knowledge that jail, time will result from a conviction. A "policy" or "custom" is shown by "a long standing and widespread practice". Craig v. Floyd City, 643 F. 3d 1306, 1310 (11th Cir. 2011). For this case, the arrest records show that the practice has been going on for at least twelve (12) years, and it is alleged that the jailing of citizens for failing to pay garbage fees was used for the purpose of intimidating people into paying garbage bills, and had "occurred dozens, or hundreds, of time within the last ten (10) years." Doc. 31, pp. 5-6, 16.

The District Court Opinion makes no finding that the prosecution resulting in jail were not the result of a custom, policy, or practice of the City. The Opinion contains no analysis of the point. Instead, the District Court bases its dismissal on a theory that because the prosecutions resulting in jail time took place in the State district courts, and the jailing was occasional by orders of the court, the chain of causation between the prosecutions initiated by the City and the Constitutionally prohibited jailings was broken. The conclusion is not supported by the applicable law.

22

## 2. The District Court Ignored Its Own Precedent, Based On This Court's Precedent, Improperly Taking the Causation Question Away from the Trier of Pact.

The District Court ignored its own precedent, <u>Carter v. City of Montgomery</u>, 473 F. Supp. 3d 1273 (M.D. Ala. 2020), in holding that the intervening actions of the State district court break the necessary chain of causation between the actions of the City pursuant to policy and the Constitutional deprivation of jail time for a non-jailable offense. In <u>Carter</u>, a citizen jailed for unpaid traffic tickets sued the City of Montgomery under 42 U.S.C. § 1983, claiming that she and a class were denied due process and equal protection by being incarcerated for their poverty. The City of Montgomery made the same argument Valley makes here – that the actions of the municipal court, which imposed the jail time by its orders, broke the necessary chain of causations for <u>Monell</u> liability. The Court held:

> [A] municipality cannot be held liable under §1983 on a *respondeant superior* theory." *Monell*, 436 U.S. at 691. Rather, the municipality must be the factual and proximate cause of the plaintiffs injury. *Smith v. City of Oak Hill*, 587 F. App'x 524, 527 (11th Cir. 2014). A plaintiff must demonstrate that a municipality is the "moving force" behind his rights violation: he must show that the municipality is culpable for and caused the violation. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 [*1302] (1997). If municipal decision makers have notice that a program systemically causes rights violations and fails to correct it, they may be held to have culpably caused the violation. Id. at 407-08. Because the torts Mr. Carter alleges took place in Alabama, the Court looks to Alabama law to define

the relevant causation standards. *Williams v. Bennett*, 689 F.2d 1370, 1389 (11th Cir. 1982). HN26 In determining whether factual cause exists, Alabama courts ask whether the plaintiff's injury would have occurred but for the defendant's act or omission. *Springer v. Jefferson Cty.*, 595 So. 2d 1381, 1383 (Ala. 1992) (citing *Prosser and Keeton on Torts* § 41 (5th ed. 1984)). For proximate cause, they ask whether the plaintiff's [**44] injury must naturally and probably result from the defendant's act or omission. *Mobile Gas Serv. Corp. v. Robinson*, 20 So. 3d 770, 780 (Ala. 2009). Though a proximate cause may not depend on the intervention of an independent cause, id., more than one act or omission can concurrently cause an injury, *Lemley v. Wilson*, 178 So. 3d 834, 842 (Ala. 2015). And "a foreseeable intervening [act] does not break the causal relationship between the defendants' actions and the plaintiffs' injuries." *Mobile Gas*, 20 So. 3d at 780-81 (quoting *Ala. Power Co. v. Moore*, 899 So.2d 975, 979 (Ala. 2004)) (emphasis and alteration in original). Taking the facts in the light most favorable to the non-movant, the Court holds that Mr. Carter has produced enough evidence for a jury to find that JCS was the but-for and proximate cause of his injuries. Without JCS's petition, the Municipal Court would not have revoked Mr. Carter's probation. JCS therefore factually caused Mr. Carter's probation revocation. And JCS proximately caused the revocation. JCS's petition naturally resulted in the Municipal Court's decision to revoke Mr. Carter's probation. The Municipal Court intervened in the causal chain but did not break it. Because its intervention was foreseeable — indeed the natural consequence of a petition asking for revocation — JCS cannot shift its responsibility for Mr. Carter's injuries onto the Municipal [**45]Court. *See Springer*, 595 So. 2d at 1384. Moreover, given the Municipal Court's established practice of not holding indigency hearings, JCS could have foreseen the Municipal Court's decision to jail Mr. Carter without an indigency hearing. Finally, a jury could find that JCS was culpable for Mr. Carter's

24

> injuries because it sought to revoke his probation when it knew
> or should have known that he was unable to pay.

Carter, 473 F. Supp. 3d at 1302-03.

Similarly, it has been pled that both defendants were well aware that jail time was being ordered for the failure to pay garbage bills, Doc. 31, p. 5, ¶ 30. The SAC alleges that AmWaste was aware of this system, Doc. 31, p. 5, ¶¶ 30, 34, and that there were "dozens or hundreds" of occurrences in the last ten (10) years. Just as a jury could find that the City of was "on notice of rights violations for purposes of proximate cause," Carter 473 F. 3d. at 1303 in the Carter case, a jury could find that the City of Valley was on notice of the Constitutional deprivations in this case.

The Court below, despite finding that the "purported arrests and jailing, and the assessment of fees and costs against them here, are very disturbing," Doc. 42, p. 13, refused to follow Carter with regard to the proper causation analysis. The Court instead relied upon Teagan v. City of McDonough, 949 F.3d 670, 675 (11th Cir. 2020), a case not argued in any depth below. Teagan, however, is not a causation case. As explained infra, Teagan turns on an analysis of whether the authority for the action complained of is vested in the state or the municipality made a defendant in the case. The causation question, is squarely answered by Carter and the precedents cited therein.

The Carter Court, citing Williams v. Bennett, 689 F.2d 1370, 1389 (11th Cir. 1982), holds that, "Because the torts Ms. Carter alleges took place in Alabama, the Court looks to Alabama law to define the relevant causation standards." Carter, 473 F. Supp. 3d at 1302. See, Williams, 689 F. 2d at 1389 ("Alabama law governs the definition of proximate cause in this case."), citing 42 U.S.C. § 1988. When that Alabama law for causation is applied, it is clear that the City's actions with regard to initiating prosecutions meets the causation standard.

The relevant question under Alabama law is whether the plaintiff's injury would have occurred but for the defendant's act or omission. Springer v. Jefferson County, 595 So.2d 1381, 1383 (Ala. 1992). This but for causation has been pled. The SAC alleges that: (1) In each instance the process was started with the City making a complaint for a Code Violation, Doc. 31, p. 4; where (2) long before the action was filed, the City had been jailing people for not paying their garbage bills. Doc. 31, p. 5. Moreover, the District Court agreed that Plaintiffs had met this but for causation threshold. The Court's own opinion states, "even though, as the Plaintiffs allege, the City initiated the causal chain that led to the actions of which the Plaintiffs complain…" Doc. 42, p. 12. The disconnect comes when the City impermissibly decides

26

that the intervening actions of the state district court "broke the chain of causation necessary to impose liability on the city." Doc. 42, p. 12.

As a matter of Alabama law, whether an intervening cause breaks the chain of causation is a question of foreseeability.

> Not every cause which comes into operation after a tortfeasor has acted will relieve him of liability for his wrongful act. More than the proper temporal relationship between the tortfeasor's act and the subsequent cause is required. In order to be an intervening cause, a subsequent cause also must have been unforeseeable and must have been sufficient in and of itself to have been the sole 'cause in fact' of the injury. Vines[ v. Plantation Motor Lodge, 336 So. 2d 1338] at 1339 [(Ala. 1976)]. If an intervening cause could have reasonably been foreseen at the time the tortfeasor acted, it does not break the chain of causation between his act and the injury. Vines, supra; Morgan[ v. City of Tuscaloosa, 268 Ala. 493, 108 So. 2d 342 (1959)]; Louisville & N.R. Co. v. Courson, 234 Ala. 273, 174 So. 474 (1937). Conversely, if the intervening cause was [*1073] unforeseeable, the causal chain is broken. Vines, supra. In the same respect, if the intervening cause is not sufficient to be considered the sole 'cause in fact' of the injury, if it is not in and of itself sufficient to stand as the 'efficient cause' of the injury, the causal chain is not broken; but, if the intervening cause was alone sufficient to produce the injury complained of, it is deemed the proximate cause of the injury and the tortfeasor or tortfeasors between whose acts and the injury the cause intervened are relieved of liability. Watt v. Combs, 244 Ala. 31, 12 So. 2d 189 (1943); Goodwyn v. Gibson, 235 Ala. 19, 177 So. 140 (1937).

Haddan v. Norfolk S. Ry. Co., 367 So. 3d 1067, 1072-73 (Ala. 2022), quoting

General Motors Corp. v. Edwards, 482 So. 2d 1176, 1195 (Ala. 1985).

"It is well established that proximate cause is generally a jury question." Lands v. Ward, 349 So. 2d 219, 228 (Ala. 2021); Goles v. Gardner, 249 So. 2d 824, 826 (Ala. 1971). As stated above, it is clearly pled that the initiation of criminal proceedings was a but for cause of the jailings. A corollary to but for causation is foreseeability. The question of foreseeability, i.e., was it foreseeable to the City that its initiation of prosecutions would lead to the jailing of citizens for an offense for which jail time is not statutorily authorized, is similarly a fact question. Thetford v. City of Clanton, 605 So.2d 835, 841 (Ala. 1992) ("Foreseeability is an issue for the jury to resolve."); Doe v. McRae's of Alabama, 703 So.2d 348, 350 (Ala. Civ. App. 1996) ("Ordinarily, foreseeability is a question of fact for the jury."). The SAC clearly plead that foreseeability, stating, "Long before this action was filed, the City had been jailing people for not paying their garbage bills…The City used this process to intimidate people into paying their garbage bills. Doc. 31, p. 5.

Certainly the State district court played a role in the causal chain. However, even the District Court recognizes that, "The City initiated the causal chain that led to the actions of which the Plaintiffs complain." Doc. 42, p. 12. Both links in the chain can be proximate, and actionable, causes under the applicable Alabama law.

> This Court has stated that "an injury may have several concurrent
> proximate causes, ... including the actions of two or more
> tortfeasors, neither of whose action was sufficient in and of itself
> to produce the injury, who act, either together [**11] or
> independently, to produce it." *Edwards*, 482 So. 2d at 1195
> (citing, among other cases, *Butler v. Olshan*, 280 Ala. 181, 191
> So. 2d 7 (1966)). "Alabama law is clear that on such occasions,
> where the actions of two or more tortfeasors combine, concur, or
> coalesce to produce an injury, each tortfeasor's act is considered
> to be the proximate cause of the injury ... and each tortfeasor is
> jointly and severally liable for the entire injury." Id.(citing,
> among other cases, *United States Fid. & Guar. Co. v. Jones*, 356
> So. 2d 596 (Ala. 1977), and *Butler*, <u>supra</u>).

<u>Haddan v. Norfolk S. Ry. Co.</u>, 367 So. 3d 1067, 1073 (Ala. 2022). The District

Court's opinion recognizes that the City's actions began the causal chain. It

erred in holding that the causal chain was broken, or that there can be only

one cause. This is sufficient for a reversal.

The <u>Carter</u> case shows these basic legal precepts properly in action in a

context remarkably similar to the present case. In <u>Carter</u>, the plaintiffs brought

Section 1983 conspiracy claims against the City of Montgomery and a private

company it hired to supervise misdemeanor probations for being jailed for

unpaid tickets when JCS, as a matter of course, petitioned the Municipal Court

to revoke probation. The City and private company raised the same defense

that Valley does in this case, and that the District Court adopted in its opinion,

i.e., that the actions of the court in imposing the actual sentence broke the

chain of causation from the petition filed by the City/private probation

company. The Court disagreed, stating:

> Taking the facts in the light most favorable to the non-movant, the Court holds that Mr. Carter has produced enough evidence for a jury to find that JCS was the but-for and proximate cause of his injuries.
>
> Without JCS's petition, the Municipal Court would not have revoked Mr. Carter's probation. JCS therefore factually caused Mr. Carter's probation revocation. And JCS proximately caused the revocation. JCS's petition naturally resulted in the Municipal Court's decision to revoke Mr. Carter's probation. The Municipal Court intervened in the causal chain but did not break it. Because its intervention was foreseeable — indeed the natural consequence of a petition asking for revocation — JCS cannot shift its responsibility for Mr. Carter's injuries onto the Municipal [**45] Court. *See Springer*, 595 So. 2d at 1384. Moreover, given the Municipal Court's established practice of not holding indigency hearings, JCS could have foreseen the Municipal Court's decision to jail Mr. Carter without an indigency hearing. Finally, a jury could find that JCS was culpable for Mr. Carter's injuries because it sought to revoke his probation when it knew or should have known that he was unable to pay.

Carter, 473 F. Supp. 3d at 1302-03.

In this case, there are ample facts pled that the City was well

aware that the natural consequences of its initiation of criminal

proceedings would lead to jail time for citizens based upon a statute that

does not call for jail time. Just the three named plaintiffs show that

Valley has been jailing people for unpaid garbage fees for over ten (10)

years. The SAC alleges that the City used the jailing as a tactic to

incentivize payment by alleging that, "The collection of garbage fees through criminal conviction and the jailing of those in arrears is as much about fear of being jailed as it is about collecting garbage fees owed from the people prosecuted, per se." Doc. 31, p. 4. The SAC also alleges that, "Long before this action was filed, the City had been jailing people for not paying their garbage bills. As stated above, the City used this process to intimidate people into paying their garbage bills." Doc. 31, p. 5. Far from a mere inference of foreseeability, it was precisely because jail time was foreseeable that the City prosecuted people for unpaid garbage bills.

### 3. The Choice to Initiate Criminal Proceeding it Knew Would End in Jail Time Was a Policy Choice From Among Other Alternatives.

Not only was jailing foreseeable in a vacuum, but the criminal prosecution, leading to jail, was certainly the policy of the City because it has, under the applicable statute, a range of choices, and the City consistently chose the course of action it **knew** would end up with the jailing of citizens. The City's argument is that the jailing of persons could not be its policy because it did not make a choice – all it did was refer the cases for prosecution, and "The state district court exercised its own independent state authority to preside over misdemeanor actions and to issue arrest warrants [and] jail each of the Plaintiffs…"

31

Doc. 42. This ignores one simple fact. The City **did** have a choice – and one that made more sense if the true object was to collect debts.

While the applicable Valley Municipal Ordinance, and corresponding state enabling statute, allows for criminal prosecution with the maximum penalty being a $200.00 fine, the Ordinance provides a separate civil remedy. The Valley Municipal Code states that when residents do not pay their garbage bills, the City may suspend services "or may proceed to recover the amount of any such delinquency with interest at 12 percent per anum from the due date in a civil action, or both." Valley Mun. Code § 58-127, quoted at SAC, Doc. 31, p. 7.

The District Court's opinion rests on an assumption that the City simply referred the cases for prosecution, and had no other choice, so that the choice that led to jailing could not have been its policy. That is just wrong. It did have a choice, and it chose the course that it **knew** would lead to prosecutions and jailings – and intimidate people to pay, rather than a civil action. That falls squarely within what constitutes a policy decision actionable under <u>Monell</u>.

In terms of <u>Monell</u> liability, "The word 'policy' generally implies a course of action consciously chosen from among various

32

alternatives." <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823 (1985);

Hernando County quoted in <u>D.L. Hernando County Sherriff's Office</u>,

620 F. Supp. 3d 1182, 1199 (M.D. Fla. 2022), and <u>Gummo v. Olsen</u>,

2019 U.S. Dist. Lexis 239617 at * 24 (N.D. Ga. June 4, 2019). It was

the policy of the City to consciously choose the course of action it knew

would lead to the Constitutional deprivation and criminal prosecution.

That is the <u>sine</u> <u>qua</u> <u>non</u> of <u>Monell</u> liability.

Lastly, the discreet holding in <u>Teagan</u> can be quite easily

disposed of given that the City had a choice as to whether to initiate

criminal prosecutions it knew would result in extra-statutory jailings,

or to institute civil actions to actually collect the overdue balances. In

<u>Teagan</u>, the plaintiff brought a § 1983 action against the City of

McDonough, Georgia for claims relating to proceedings in the

municipal court. The plaintiff's claims were that she was wrongfully

imprisoned due to a failure to pay fines without any inquiry as to why

she could not pay; was denied counsel on her choice; was the subject

of an invalid search warrant; did not receive a proper probation

revocation hearing, was not brought before a judicial officer within 72

hours of her arrest; and was falsely imprisoned. <u>Teagan</u>, 948 F. 3d at

674. In short, her claims were that the municipal court system failed in its Constitutional duties.

To see how this case is different in kind from Teagan, one only need to look at the summation of the Court's holding in just the second paragraph of the opinion. It states that the dismissal was affirmed because, "The McDonough Municipal Court was exercising its judicial power under Georgia law to adjudicate a state-law offense – and therefore was not acting on behalf of the City when it took the actions that Ms. Teagan complains of." Teagan, 949 F.3d at 672.

Plaintiffs' quarrel in this case is not with the State district court. Plaintiffs' quarrel is with the City's policy decision to initiate criminal proceedings it knew would result in jail time, unauthorized by statute, instead of instituting a civil action to collect a debt that would: (a) not result in jail time; and (b) actually result in the collection of money.

The state prosecutor could not have "used its authority to apply and enforce state law," Doc. 42, p. 13, without the decision by City officials to prosecute cases it knew would result in jail time instead of instituting collection proceedings. Secondarily, the District Court missed Plaintiffs argument below when it stated, "The conduct Plaintiffs find fault with is that specifically attributable to the district

court. The City had no control over the actions over the decisions or actions of the district court and the district court was not acting as the final policy maker for the City wen it applied and enforced state law here." Doc. 42, p. 12. The facts are that the City **did** have control over whether to initiate criminal prosecutions it knew would result in jailings as opposed to instituting civil actions. The City <u>did</u> act as the final policymaker as to that decision.

### C.    <u>The District Court Improperly Decided the Fact Question of Whether There Was an Agreement Between AmWaste and the City to Extort Money From Plaintiffs.</u>

Plaintiffs have properly pled a cause of action for damages in a civil action under the Racketeering Influenced and Corruption Organizations Act ("RICO"). 18 U.S.C. §1960 <u>et seq</u>. This is a claim under RICO's civil action statute, 18 U.S.C. §1962(c), which requires the following elements to state a claim: (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. <u>Lehman v. Lucom</u>, 727 F.3d 1326, 1330 (11th Cir. 2013), citing <u>Williams v. Mohawk Indus., Inc.</u>, 465 F.3d 1277, 1282 (11th Cir. 2006). Each one of those elements have been met by specific allegations made in the Complaint.

## 1.    <u>Existence of an Enterprise.</u>

Statutorily, an enterprise for RICO purposes is any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). Courts have interpreted the enterprise element broadly, stating that, "The definite factors in determining the existence of a RICO enterprise is the existence of an association of individual entities, however, loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation. <u>United States v. Goldin Indus., Inc.</u>, 219 F.3d 1271, 1275 (11th Cir. 2000). Further broken down, an enterprise must have the following: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. <u>Boyle v. U.S.</u>, 556 U.S. 938, 946 (2009), cited in <u>Great Western Dev. Corp. v. Benson</u>, 2018 U.S. Dist. Lexis 184408 at *19 (N.D. Ala. Oct. 29, 2018).

Specific allegations in the Complaint meet this definition. The "purpose" of the association was for AmWaste to provide garbage collection on behalf of the citizenry of Valley (AmWaste assumed the City's garbage contract in 2019), Doc. 31, p. 5, ¶¶ 30, 31, and for the City to collect monies from the customers to pay AmWaste. Doc. 31, p. 14, ¶ 80.

The District Court opinion shows a fundamental misunderstanding of the enterprise element in stating that, "Allegations that one or both Defendants had a business relationship with the putative RICO enterprise or that one or both Defendants provided legitimate services for that enterprise does not suffice." Doc. 42, p. 16. Not only do such allegations **suffice** to meet enterprise, but they are necessary. An enterprise "can include 'both legitimate and illegitimate enterprises within its scope.'" <u>Catino v. Capuano</u>, 2019 U.S. Dist. Lexis 114983 * 16 (S.D. Sla. July 11, 2019), quoting <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981). However, it must be "an entity separate and apart from the pattern of activity in which it engages." <u>Turkette</u>, 452 U.S. at 583. In this case, the enterprise is the combination of the City and AmWaste through which it carries out the otherwise legitimate purpose of garbage collection and the collection of fees therefore. It is the fact that it used this enterprise to extort citizens that creates the RICO cause of action.

The purpose, which in and of itself is entirely legal, exists separate and apart from the pattern of racketeering activity i.e., to provide garbage services, and to collect the monies therefrom. It is true that the plaintiff must plead specific facts which establish that "the association exists for purpose other than simply to commit the predicate acts." <u>Elliot v. Foufas</u>, 867 F.2d 877, 881 (5th Cir. 1989). The common purpose of engaging in a course of conduct is

37

the agreement whereby AmWaste will provide garbage services and the City will collect the bills and remit monies to AmWaste. Doc. 31, p. 15, ¶¶ 82-84. Had they simply filed civil suits to collect unpaid bills, we would not be here today.

This is not a case where the "association in fact" **is** the agreement to perform the predicate acts of illegally jailing people for garbage bills. The parties have conducted the affairs in the otherwise legitimate enterprise of garbage collection and payment through the practice of extorting payments by jailing, threats of jail, and exorbitant bonds for the offense the parties created by their codependent conduct. Doc. 31, p. 16, ¶ 89. If the association only conducted its business through the wholly permissible practices of collecting garbage and legally collecting revenues, there would be no claim. The claim arises when RICO defendants participate in the affairs of an otherwise legitimate business through a pattern of racketeering activity. This is not a routine commercial activity.

The remaining two definitional elements of an enterprise (relationship and longevity) are similarly pleaded with clarity. There is clearly a relationship between AmWaste and the City. It is pled throughout the Complaint in the description of AmWaste's acquisition of the Valley garbage business while it knew how the City collected bills. Doc. 31, p. 5, ¶¶ 30-32.

38

That relationship is summed up in the Complaint wherein it is alleged that, "AmWaste provides the garbage collection services, and the City of Valley collects monies particularly to pay AmWaste." Doc. 31, p. 15, ¶ 80. Finally, there is no question that sufficient longevity has been pled for AmWaste to provide garbage services, and the city to collect the bills. The Complaint alleges AmWaste took over the garbage collection in 2019, and Mr. Gray and Ms. Khelifa were arrested in 2022. Doc. 31, p. 3, ¶¶ 19, 22. This satisfies the longevity requirements.

### 2. AmWaste Participated in the Conduct of the Enterprise to Provide Garbage Services and Collect Fees Therefore.

It is clear from the above that a RICO enterprise, separate from the underlying predicate acts, has been properly pled. It is equally clear that AmWaste conducted or participated in the conduct of the affairs of that enterprise. The test is articulated as follows:

> In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.

39

Reves v. Ernest Young, 507 U.S. 170.

There is no question that AmWaste was involved in the operation or management of the enterprise to collect garbage and charge fees, collected by the City. The Supreme Court's "operation or management" test is stated in the disjunctive, meaning that if AmWaste is a part of either the operation or management of the enterprise, sufficient conduct has been alleged. AmWaste was involved in the "operation" of the enterprise. It collected the garbage that generated the fees. Defendant admits this fact, and it is pled throughout the SAC. Doc. 31, p. 13, ¶70 ("AmWaste would generate the fees and agreed that the City would continue to collect its garbage fees by contract…"); Doc. 31, p. 13, ¶70. This is certainly within the province of "operation" where "even lower-rung participants or virtual outsiders may, by virtue of their conduct, find themselves ensnared." United States v. Godwin, 765 F.3d 1306, 1320 (11th Cir. 2014).

In this case, AmWaste controlled the affairs of the enterprise through its direction of the garbage collection, which was an integral part of the enterprise. It decided, also, through its contract with the City, how it would be paid for those services. This more than meets the test which has been described as a "relatively low hurdle to clear, especially at the pleading stage. Baisch v. Gallin, 346 F.3d 366, 377 (2d. Cir. 2003), citing U.S. v. Allen, 155

F.3d .5, 42-43 (2d. Cir. 1998) (the question of whether one "operated or managed" the affairs of an enterprise to be one of fact).

The Court wrongly concludes that in order for a RICO claim to be made out against it, it must be shown that AmWaste performed the predicate acts. This misses the whole point of the RICO Act. It is a conspiracy statute. "[T]o prove RICO conspiracy, the prosecution is not required to show that a defendant actually committed a racketeering act or any overt act at all." Salinas v. United States, 522 U.S. 52, 65 (1997) "Instead, a RICO conspiracy conviction can be sustained if a defendant agreed that either he or someone else would commit at least two RICO predicate acts…and this agreement may be inferred from a defendant's acts." United States v. Nicholson, 716 Fed Appx. 400, 408 (6th Cir. 2017), cited by United States v. Householder, 2023 U.S. Dist. Lexis 815 * 11 (S.D. Ohio Jan. 3, 2023). In this case, it has been alleged that AmWaste took over the garbage program knowing of Valley's actions regarding collection, and gladly accepting the benefits thereof, this is more than sufficient to raise the inferences of an agreement between the two parties. United States v. Browne, 505 F.3d 1229, 1264 (11th Cir. 2007) ("If a party can prove an agreement on an overall objective, it need not prove a defendant personally agreed to commit two predicate acts…a party may prove such an agreement through inferences from the conduct of the alleged

41

participants or circumstantial evidence of a scheme amounting to evidence that each defendant necessarily must have known that the others were also conspiring to participate…) This has been pled.

### 3.    A Pattern of Racketeering Activity Has Been Pled.

To establish the requisite "pattern of racketeering activity" under § 1962(c), "a plaintiff must allege; (1) at least two predicate acts over a ten-year period that; (2) amount to, or threaten, continued criminal activity. GoTV, Inc. v. Fox Sports Latin Am., 2018 U.S. Dist. Lexis 29836 (at *38 (S.D. Fla. Jan. 26, 2018), See, H.J. Inc., v. N.W. Bell Tel. Co., 492 U.S. 229, 237 (1989). Mr. Gray was jailed on January 14, 2022, and Ms. Khelifa was jailed on November 30, 2022. Doc. 31, pp. 3-4, ¶¶ 19, 22. Those are two predicate acts within two years.

The continuity requirement can be satisfied "either by showing past conduct that by its nature shows a threat of future racketeering or by showing repeated racketeering acts over a substantial period of time." GoTV, 2018 U.S. Dist. Lexis 29836 at * 39. Both are pleaded here. The Complaint alleges: (1) way back in 2013, Ms. Little was jailed for failing to pay her garbage bill. Doc. 31, p. 3, ¶ 13; (2) in 2019, AmWaste took on the Valley garbage business well aware that Valley jailed people for not paying their garbage bills; Doc. 31, pp. 5-6; (3) the City was still jailing people for garbage fees in January of

2022, when Mr. Gray was jailed. Doc. 31, p. 3, ¶ 19; and (4) ten months later in November of 2022, when it jailed Ms. Khelifa. Doc. 31, p. 3, ¶ 22.

"The continuity requirement can be satisfied either by showing past conduct that by its nature shows a threat of future racketeering or by showing repeated racketeering acts over a substantial period of time." Profilet v. Cambridge Pin Corp., 231 B.R. 373, 381 (S.D. Fla. 1999), cited in GoTV, supra. In this case, both are present. Valley was jailing people in 2013 for unpaid garbage fees, was doing so in 2019, and did it through 2022 up to the end of 2022 when this Complaint was filed. This shows both repeated acts over a substantial period of time.

## 4. The Predicate Act Hobbs Act Violations Have Been Properly Pled.

The predicate acts precipitating RICO civil liability are violations of the Hobbs Act, 18 U.S.C. § 1951(b)(2), which makes it illegal to extort money by "extortion on attempts to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose…[or] the obtaining of property from another, with his consent, induced by wrongful use of actual of threatened force ,violence, or fear, under color of official right." 18 U.S.C. § 1951(a), 1951(b)(2). The City extorted many in the form of excessive bond and fines from Plaintiffs by threatening jail time, and actually jailing Plaintiffs. Doc. 31, p. 14, ¶ 78.

Defendant misframes the claims in making its argument that extortion has not been pled. It argues, apparently, that jailing people is permissible when they are actually delinquent on their bills, citing United States v. Pendergraft, 297 F.3d 1198, 1205 (11th Cir. 2002), relying on United States v. Enmons, 410 U.S. 396, 399-400 (1973), to argue that "wrongful" within the meaning of the Hobbes Act means "using a wrongful means to achieve a wrongful objective." Pendergraft, 297 F.3d at 1208, citing Enmons, supra. However Enmons has been "applied…restrictively" by lower courts, Smithfield Foods, Inc., v. United Food Commer. Workers Int'l Union, 585 F.Supp. 2d 789, 800 (E.D. va. 2008) "explicitly tried to the labor context and more specifically to the strike context." Smithfield Foods, supra, citing United States v. Porcaro, 648 F.2d 753, 760 (1st Cir. 1981) (Enmons is a labor case dealing with the unique problems of strike violence); United States v. Agnes, 753 F.2d 293, 298-99 (3d Cir. 1985); United States v. Warledo, 557 F.2d 721, 730 (10th Cir. 1977). To expand Enmons beyond its facts "runs contrary to the rather clear legislative history of the statute.

In this case, the City had imposed upon Plaintiffs a penalty not allowed under the law – jail time for garbage fees. The ordinance at issue allows only for the suspension of service; a fine of not less than $50.00, or more than $200.00; or the institution of a civil action to collect the debt and 12% interest.

44

Valley Mun. Code §58-127. In both <u>Malone</u> and <u>Pendergraft</u>, the "extortionate" acts were allowed by law, and thus not a wrongful means, or by extension, a wrongful objective. In the present case, jail time is not statutorily allowed for the failure to pay garbage fees. Therefore, the jailing is a wrongful means, seeking a remedy not allowed by law. As explained above, the objective was not necessarily to collect monies from individuals. The objective was to use fear and intimidation to force the general populace to pay their garbage bills. This is actionable under the Hobbs Act, which defines extortion as "the obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force violence or fear." 18 U.S.C. § 2113(a).

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the District Court's judgment is due to be reversed.

*/s/ Brian M. Clark*
Brian M. Clark
bclark@wigginschilds.com
Attorney for Plaintiff-Appellant

OF COUNSEL:
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

## CERTIFICATE OF COMPLIANCE

Plaintiff-Appellant certify that the Principal Brief For Plaintiffs-Appellants complied with the type-volume limitation as it contains 10,958 words according to the word-count function of the word-processing system used to prepare the brief.

*/s/ Brian M. Clark*
Counsel for Plaintiff-Appellant

46

## CERTIFICATE OF SERVICE

I do hereby certify that I have e-filed today, February 21, 2024, the above and foregoing by utilizing the Court's CM-ECF system, with copies being served on:

Robbie Alexander Hyde
Bart Gregory Harmon
ALEXANDER HYDE, LLC
2138 Moore's Mill Road, Ste. A
Auburn, Alabama 36830
robbie@alexanderhyde.com
bart@alexanderhyde.com
Telephone: (334) 246-2333

Benjamin B. Coulter
Callie L. Barrow
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
bcoulter@burr.com
cleopard@burr.com
Telephone: (205) 251-3000

*/s/ Brian M. Clark*
Plaintiff-Appellant