No. 24-10120-J

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

SANTORI LITTLE, et al.,

*Appellants,*

vs.

THE CITY OF VALLEY, ALABAMA, and AMWASTE, LLC,

*Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF ALABAMA
No. 3:23-cv-00044-RAH-KFP

## BRIEF OF APPELLEE AMWASTE, LLC

Benjamin B. Coulter
Callie L. Barrow
Burr & Forman LLP
420 North 20th Street
Suite 3400
Birmingham, Alabama 35203
(205) 251-3000

*Attorneys for Appellee AmWaste, LLC*

No. 24-10120-J

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

SANTORI LITTLE, et al.,

*Appellants,*

vs.

THE CITY OF VALLEY, ALABAMA, and AMWASTE, LLC,

*Appellees.*

## APPELLEE AMWASTE, LLC'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit R. 26.1-(2)(a), the undersigned counsel of record for AmWaste, LLC, Appellee in the above-styled appeal, hereby certify that the following persons have an interest in the outcome of this appeal.

Alexander Hyde, LLC

AmWaste, LLC

Armstrong, Allan Lamar

Armstrong Law Center

C-1 of 3

53598735 v2

———————————

*No. 24-10120-J*

*Santori Little, et al. v. The City of Valley, Alabama, et al.*

———————————


Barrow, Callie Leopard

Burr & Forman LLP

Cartwright, Darrell Lloyd

Cartwright Law Corporation

City of Valley, Alabama

Clark, Brian Michael

Coulter, Benjamin Brock

Gray, Charles

Harmon, Bart Gregory

Huffaker, Hon. R. Austin, Jr.

Hyde, Robbie Alexander

Khelifa, Tamara

Little, Santori

Matter Management Enterprises, LLC

Pate, Hon. Kelly F.


C-2 of 3

———————————————

*No. 24-10120-J*

*Santori Little, et al. v. The City of Valley, Alabama, et al.*

———————————————

White Arnold & Dowd, P.C.

White, John Mark

Wiggins Childs Pantazis Fisher & Goldfarb LLC

To Appellee's knowledge, there are no other entities whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of this Appeal.

s/ Benjamin B. Coulter
Benjamin B. Coulter
Callie L. Barrow

Counsel of Record for the
Appellee, AmWaste, LLC

OF COUNSEL:

BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, Alabama 35203
(205) 251-3000
bcoulter@burr.com
cbarrow@burr.com

C-3 of 3

53598735 v2

## STATEMENT REGARDING ORAL ARGUMENT

Appellee AmWaste, LLC does not request oral argument. The applicable case law is fully developed and clear, and the briefs and record set forth an adequate basis upon which to decide the matters presented.

# TABLE OF CONTENTS

APPELLEE AMWASTE, LLC'S CERTIFICATE OF INTERESTED
PERSONS AND CORPORATE DISCLOSURE STATEMENT .. C-1

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF CONTENTS ......................................................................ii

TABLE OF CITATIONS ......................................................................v

I.    STATEMENT OF SUBJECT-MATTER AND APPELLATE
      JURISDICTION ................................................................1

II.   STATEMENT OF THE ISSUES....................................................2

III.  STATEMENT OF THE CASE ......................................................3

      A.   Summary and Nature of the Case .........................................3

      B.   Procedural History ................................................................3

      C.   Statement of the Facts..........................................................7

           1.   The Alabama Solid Wastes and Recyclable
                Materials Management Act permits criminal
                punishments for failing to pay mandatory
                residential solid waste collection fees............................8

           2.   Appellants are arrested, imprisoned, and fined by
                the District Court of Chambers County, Alabama........9

           3.   AmWaste contracts with the City to provide
                residential solid waste collection. ...............................10

      D.   Statement of the Standard of Review...................................11

IV.   SUMMARY OF THE ARGUMENT ..............................................12

V.    ARGUMENT ..............................................................................16

A.    Appellants fail to allege sufficient facts to state a claim for conspiracy to violate 42 U.S.C. § 1983. ........................... 16

    1.    Appellants have abandoned any argument regarding the District Court's dismissal of the § 1983 claims as to AmWaste. .................................... 16

    2.    Even if Appellants did not abandon their argument to the contrary, the District Court correctly held that Appellants failed to allege an agreement between AmWaste and the City. ............... 20

    3.    Appellants fail to plead a plausible *Monell* claim. ...... 23

        a.    Appellants do not allege that the City had control over the challenged actions. ................... 24

        b.    Appellants do not adequately allege causation. . 26

B.    Appellants do not allege sufficient facts to state a claim under RICO. .......................................................................... 31

    1.    The District Court correctly concluded that Appellants' allegations of an enterprise were insufficient .................................................................. 32

        a.    A contract and common interest in making money does not constitute an enterprise. ........... 33

        b.    A statute does not make a scheme. ................... 36

    2.    Appellants fail to plausibly allege that AmWaste conducted the affairs of a RICO enterprise, as opposed to its own affairs. ........................................... 37

    3.    Appellants fail to allege that AmWaste engaged in the racketeering activity of extortion because the City and AmWaste were statutorily authorized to collect fees. ................................................................. 42

iii

C.    Appellants do not rule out the obvious alternative explanation............................................................. 48

VI    CONCLUSION .......................................................................... 51

CERTIFICATE OF COMPLIANCE............................................................. 52

CERTIFICATE OF SERVICE................................................................ 53

iv

# TABLE OF CITATIONS

<u>Cases</u>:                                                                                                    <u>Page(s)</u>

*Access Now, Inc. v. Sw. Airlines Co.,*
    385 F.3d 1324 (11th Cir. 2004) ......................................................18

*Almanza v. United Airlines, Inc.,*
    851 F.3d 1060 (11th Cir. 2017) ...................................32, 33, 41, 50

*Am. Dental Ass'n v. Cigna Corp.,*
    605 F.3d 1283 (11th Cir. 2010) ...................................22, 32, 48, 49

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. City of Miami,*
    637 F.3d 1178 (11th Cir. 2011) ......................................................18

*Am. United Life Ins. Co. v. Martinez,*
    480 F.3d 1043 (11th Cir. 2007) ......................................................47

*\*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................48, 50

*Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.,*
    956 F.2d 1112 (11th Cir. 1992) ......................................................18

*Barnett v. MacArthur,*
    956 F.3d 1291 (11th Cir. 2020) ......................................................23

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,*
    520 U.S. 397 (1997) ................................................................23, 27

*Bd. of Managers of Trump Tower at City Ctr. Condo.*
*by Neiditch v. Palazzolo,*
    346 F. Supp. 3d 432 (S.D.N.Y. 2018) ............................................38

*Beard v. State,*
    627 So. 2d 1122 (Ala. Crim. App. 1993)........................................44

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................22, 50

v

<u>Cases</u>:                                                                       <u>Page(s)</u>

*Benedek v. Adams,*
  725 F. App'x 755 (11th Cir. 2018) ...................................................11

*Bonanni Ship Supply, Inc. v. United States,*
  959 F.2d 1558 (11th Cir. 1992) ......................................................11

*Boyd v. TTI Floorcare N. Am.,*
  230 F. Supp. 3d 1266 (N.D. Ala. 2011),
  *aff'd sub nom. Green v. Bissell Homecare Inc.,*
  476 F. App'x 238 (11th Cir. 2012) ..................................................34

*Boyle v. United States,*
  556 U.S. 938 (2009) ..............................................................33, 41

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,*
  140 F.3d 494 (3d Cir. 1998)..........................................................46

*Camp v. Corr. Med. Servs., Inc,*
  668 F. Supp. 2d 1338, (M.D. Ala. 2009),
  *aff'd in part*, 400 F. App'x 519 (11th Cir. 2010) ...........................28

*Camreta v. Greene,*
  563 U.S. 692 (2011) ......................................................................29

*Carter v. City of Montgomery,*
  473 F. Supp. 3d 1273 (M.D. Ala. 2020) ....................................29, 30

*\*Cisneros v. Petland, Inc.,*
  972 F.3d 1204 (11th Cir. 2020) .............................22, 34, 35, 42, 50

*City of Okla. City v. Tuttle,*
  471 U.S 808 (1985) ..................................................................27, 28

*Connick v. Thompson,*
  563 U.S. 51 (2011) .......................................................................27

<u>Cases</u>:                                                                    <u>Page(s)</u>

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,*
    406 F. Supp. 3d 1258 (M.D. Ala. 2019),
    *aff'd,* 6 F.4th 1247 (11th Cir. 2021), *cert. denied*
    *sub nom. Coral Ridge Ministries Media, Inc. v.*
    *S. Poverty Law Ctr.*, 142 S. Ct. 2453 (2022) .............................8, 26

*Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    945 F.3d 1150 (11th Cir. 2019) .........................................32, 42, 43

*Crichton v. Golden Rule Ins. Co.,*
    576 F.3d 392 (7th Cir. 2009) ........................................................39

*Cuesta v. Sch. Bd. of Miami-Dade Cnty.,*
    285 F.3d 962 (11th Cir. 2002) ......................................................28

*DePaola v. Nissan N. Am., Inc.,*
    No. 1:04CV267, 2006 WL 1181131
    (M.D. Ala. May 2, 2006) ...............................................................31

*DiPietro v. Med. Staff at Fulton Cty. Jail,*
    805 F. App'x 793 (11th Cir. 2020) ................................................48

*Dixon v. Burke Cnty.,*
    303 F.3d 1271 (11th Cir. 2002) ....................................................28

*Eubank v. Leslie,*
    210 F. App'x 837 (11th Cir. 2006) ................................................21

*Fitzgerald v. Chrysler Corp.,*
    116 F.3d 225 (7th Cir. 1997) ........................................................41

*Fossil Grp., Inc. v. Angel Seller LLC,*
    627 F. Supp. 3d 180 (E.D.N.Y. 2022) ...........................................38

*Fullman v. Graddick,*
    739 F.2d 553 (11th Cir. 1984) ......................................................20

<u>Cases</u>:                                                          <u>Page(s)</u>

*Grayden v. Rhodes,*
    345 F.3d 1225 (11th Cir. 2003) ......................................................37

*Grech v. Clayton Cty.,*
    335 F.3d 1326 (11th Cir. 2003) ......................................................24

*Grider v. City of Auburn,*
    618 F.3d 1240 (11th Cir. 2010) ......................................................18

*Grider v. Cook,*
    590 F. App'x 876 (11th Cir. 2014) ...................................................21

*Hansel v. All Gone Towing Co.,*
    132 F. App'x 308 (11th Cir. 2005) ...................................................21

*Harvey v. Harvey,*
    949 F.2d 1127 (11th Cir. 1992) ......................................................21

*Hill v. Cundiff,*
    797 F.3d 948 (11th Cir. 2015) ......................................................24

*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989) ......................................................................31

*Javitch v. Capwill,*
    284 F. Supp. 2d 848 (N.D. Ohio 2003) ...........................................40

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC,*
    413 F. App'x 136 (11th Cir. 2011) ...................................................21

*Little v. T–Mobile USA, Inc.,*
    691 F.3d 1302 (11th Cir. 2012) ......................................................18

*Malone v. City of Decatur,*
    No. 5:16-cv-00483-MHH, 2018 WL 4901212
    (N.D. Ala. Oct. 9, 2018) ...............................................................45

*Marantes v. Miami-Dade Cnty.,*
    649 F. App'x 665 (11th Cir. 2016) ...................................................20

viii

Cases:                                                                          Page(s)

*McCullough v. City of Montgomery,*
    No. 2:15-cv-463 (RCL), 2017 WL 956362
    (M.D. Ala. Mar. 10, 2017), *rev'd & remanded on other
    grounds sub nom. McCullough v. Finley,*
    907 F.3d 1324 (11th Cir. 2018) ......................................................44

*McDowell Bey v. Vega,*
    588 F. App'x 923 (11th Cir. 2014) ............................................7, 26

*McDowell v. Brown,*
    392 F.3d 1283 (11th Cir. 2004) ......................................................23

*McMillian v. Johnson,*
    88 F.3d 1573 (1996), *aff'd sub nom.*
    *McMillian v. Monroe Cnty.*, 520 U.S. 781 (1997) .........................24

*Mcneil v. Cmty. Prob. Servs., LLC,*
    No. 1:18-cv-00033, 2021 WL 366776
    (M.D. Tenn. Feb. 3, 2021)...............................................................45

*Mobile Cnty. v. Williams,*
    61 So. 963 (Ala. 1913)....................................................................37

*Monell v. Dep't of Soc. Servs. of N.Y.,*
    436 U.S. 658 (1978) ..................................... 6, 14, 23, 24, 26, 27, 30

*Paez v. Sec'y, Fla. Dep't of Corr.,*
    947 F.3d 649 (11th Cir. 2020) ......................................................26

*Parm v. Nat'l Bank of Cal., N.A.,*
    242 F. Supp. 3d 1321 (N.D. Ga. 2017) ...............................34, 38, 39

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) ......................................................................27

*Phillips v. Mashburn,*
    746 F.2d 782 (11th Cir. 1984) ......................................................21

ix

Cases:                                                                      Page(s)

*Raney v. Allstate Ins. Co.,*
    370 F.3d 1086 (11th Cir. 2004) ......................................................42

*Ray v. Spirit Airlines, Inc.,*
    836 F.3d 1340 (11th Cir. 2016) ................................................33, 34

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993) .......................................................................38

*\*Sapuppo v. Allstate Floridian Ins. Co.,*
    739 F.3d 678 (11th Cir. 2014) ...........................................17, 18, 19

*Singh v. U.S. Atty. Gen.,*
    561 F.3d 1275 (11th Cir. 2009) .....................................................19

*Smithfield Foods, Inc. v. United Food & Com.*
*Workers Int'l Union,*
    585 F. Supp. 2d 789 (E.D. Va. 2008)............................................45

*Teagan v. City of McDonough,*
    949 F.3d 670 (11th Cir. 2020) .......................................................24

*Tisdale v. State,*
    No. CR-21-0174, 2022 WL 17729211
    (Ala. Crim. App. Dec. 16, 2022, *cert. denied*
    *sub nom. Ex parte Tisdale*, No. SC-2023-0122,
    2023 WL 3668348 (Ala. May 26, 2023)........................................44

*Traylor v. P'ship Title Co.,*
    491 F. App'x 988 (11th Cir. 2012) ................................................11

*Turner v. Williams,*
    65 F.4th 564 (11th Cir. 2023)........................................................28

*\*Turquitt v. Jefferson Cnty.,*
    137 F.3d 1285 (11th Cir. 1998) .........................................24, 26, 27

x

Cases:                                                                    Page(s)

*Underwood v. City of Bessemer,*
    11 F.4th 1317 (11th Cir. 2021).......................................................23

*United Bhd. of Carpenters & Joiners of Am.*
*v. Bldg. & Const. Trades Dep't, AFL-CIO,*
    770 F.3d 834 (9th Cir. 2014) .........................................................46

*United States v. Agnes,*
    753 F.2d 293 (3d Cir. 1985), *abrogated on*
    *other grounds by Smith v. Borough of Wilkinsburg,*
    147 F.3d 272 (3d Cir. 1998)...........................................................47

*United States v. Browne,*
    505 F.3d 1229 (11th Cir. 2007) ...............................................38, 41

*United States v. Castor,*
    937 F.2d 293 (7th Cir. 1991) .........................................................46

*United States v. Enmons,*
    410 U.S. 396 (1973) ................................................................43, 45

*United States v. Nicholson,*
    716 F. App'x 400 (6th Cir. 2017)...................................................40

*United States v. Pendergraft,*
    297 F.3d 1198 (11th Cir. 2002) ...............................................43, 44

*United States v. Sturm,*
    870 F.2d 769 (1st Cir. 1989)..........................................................47

*United States v. Warledo,*
    557 F.2d 721 (10th Cir. 1977) .......................................................47

*United States v. Zappola,*
    523 F. Supp. 362 (S.D.N.Y. 1981),
    *aff'd,* 677 F.2d 264 (2d Cir. 1982)................................................46

xi

<u>Cases</u>:                                                                                <u>Page(s)</u>

*Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.,*
    996 F.2d 1534 (3d Cir. 1993).............................................................39

*U.S. Airline Pilots Ass'n v. Awappa, LLC,*
    615 F.3d 312 (4th Cir. 2010) .........................................................31

*Vandiver v. Meriwether Cnty.,*
    325 F. Supp. 3d 1321 (N.D. Ga. 2018) ...........................................28

*Veney v. Wyche,*
    293 F.3d 726 (4th Cir. 2002) ....................................................8, 26

*Williams v. Monroe Cnty. Dist. Att'y,*
    702 F. App'x 812 (11th Cir. 2017) ...................................................24


<u>Statutes</u>:

18 U.S.C. § 1951(a)................................................................................ 42

18 U.S.C. § 1951(b)................................................................................ 43

18 U.S.C. § 1961(4)...........................................................................32, 33

18 U.S.C. § 1962(c) ............................................................................... 31

28 U.S.C. § 1291 ..................................................................................... 1

Ala. Code § 11-47-135............................................................................ 36

Ala. Code §§ 22-27-1 *et seq.*............................................................. 8, 25

Ala. Code § 22-27-3................................................................................. 8

Ala. Code § 22-27-5.........................................................................8, 36, 43

Ala. Code § 22-27-7.......................................................................... 9, 44

Rules:                                                                      Page(s)

Fed. R. Civ. P. 12(b)(6) ........................................................................12, 16

Fed. R. Evid. 201 .................................................................................... 7


Other:

18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d]
(3d ed. 2011) ........................................................................... 29

Ala. Op. Att'y Gen. No. 1986-00331, 1986 WL 1308564
(Aug. 18, 1986)........................................................................ 44

## I.    STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as this appeal involves a final decision by way of dispositive motions to dismiss by the United States District Court for the Middle District of Alabama that disposed of all of Appellants' claims.

1

## II.    STATEMENT OF THE ISSUES

1.    Whether Appellants have abandoned any argument regarding the viability of their claim for conspiracy to violate 42 U.S.C. § 1983 against AmWaste by failing to address this issue in their principal brief before this Court.

2.    Whether the District Court properly dismissed Appellants' 42 U.S.C. § 1983 claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure where they failed to allege key elements of the claims.

3.    Whether the District Court correctly dismissed Appellants' RICO claim for failure to plead sufficient facts to state a plausible claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

2

### III.   STATEMENT OF THE CASE

#### A.   Summary and Nature of the Case

The crux of Appellants' complaint is that AmWaste, LLC ("AmWaste") and the City of Valley, Alabama (the "City") conspired to unconstitutionally arrest residents of the City for failure to pay residential garbage collection fees, to the benefit of AmWaste. As to AmWaste, the complaint asserts claims for conspiracy to violate 42 U.S.C. § 1983 and violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C § 1964. The District Court properly dismissed the claims against AmWaste with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and Appellants have appealed. For all of the reasons that follow, the Court should reject Appellants' contentions and affirm the judgment of the District Court.

#### B.   Procedural History

Santori Little initiated this case on behalf of herself and all similarly situated persons who were prosecuted, jailed, or threatened with jail for failing to pay a garbage collection fee to the City of Valley, Alabama, by filing a putative class action complaint on January 19, 2023. (ECF No. 1.) Little asserted claims of (i) violation of substantive due

3

process under the Fourteenth Amendment against the City, (ii) conspiracy to violate 42 U.S.C. § 1983 against the City and AmWaste, (iii) violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 ("RICO") against the City and AmWaste, and (iv) violations of the Eighth Amendment against the City. (ECF No. 1 at 7-12.) On February 3, 2023, Appellants filed a First Amended Complaint, adding Appellants Charles Gray and Tamara Khelifa, as well as adding a claim for unjust enrichment/disgorgement against the City. (ECF No. 9.) AmWaste moved to dismiss the First Amended Complaint on February 17, 2023. (ECF No. 14.) The City moved to dismiss the First Amended Complaint on March 23, 2023. (ECF No. 21.) After considering the parties' papers and oral argument as to AmWaste's motion to dismiss, the District Court granted AmWaste's Motion to Dismiss the First Amended Complaint on August 31, 2023, finding that it did not meet the pleading requirements of the Federal Rules of Civil Procedure as to the § 1983 conspiracy and RICO claims against AmWaste. (ECF No. 30.) The District Court gave Appellants leave to file an amended complaint that set forth sufficient factual allegations to state plausible claims for relief.

4

(*Id.*) The District Court denied the City's motion to dismiss as moot. (ECF No. 32.)

Appellants filed a Second Amended Complaint (the "<u>SAC</u>") on September 15, 2023. (ECF No. 31.) Appellants brought five counts in the Second Amended Complaint: (1) violation of the Due Process Clause of the Fourteenth Amendment (Count I), against the City only; (2) conspiracy to violate Appellants' constitutional rights under § 1983 (Count II), against both the City and AmWaste; (3) claim under RICO (Count III) against the City and AmWaste; (4) violation of the Eighth Amendment (Count IV), against the City only, and; (5) a state law claim of unjust enrichment against the City only. (Count V.)

AmWaste and the City each moved to dismiss the Second Amended Complaint on September 29, 2023. (ECF Nos. 33, 34, 35.) On October 26, 2023, Appellants opposed both motions. (ECF Nos. 38, 39.) AmWaste and the City each filed a reply brief. (ECF Nos. 40, 41.)

On December 15, 2023, the District Court entered its Memorandum Opinion and Order granting the motions to dismiss filed by AmWaste and the City. (ECF No. 42.) The District Court dismissed with prejudice

Counts I, II, III, and IV of Appellants' SAC, and dismissed without prejudice Count V. (*Id.* at 19.)

The District Court held that Appellants failed state a § 1983 claim because "the actions [Appellants] challenge were state, not municipal, acts and the City had no control over the district court, so they fail the threshold question" for § 1983 municipal liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). (ECF No. 42 at 11.) The District Court also found that the "the state district court's independent decisions broke the chain of causation necessary to impose liability on the City." (*Id.* at 12.). Finally, "[b]ecause it takes two to conspire," and as the Second Amended Complaint failed to "allege facts sufficient to show 'the defendants 'reached an understanding' to violate the [Appellants'] constitutional rights,' Count II is also due to be dismissed as to AmWaste." (*Id.* at 14 (citations omitted).)

The District Court further held that the SAC "failed to plausibly allege facts supporting all of the necessary RICO elements." (*Id.*) The general allegations in the SAC did not plausibly show "Defendants participated in the operation or management of an allegedly illegal collection scheme or enterprise through a pattern of racketeering

6

activity, or that the Defendants committed 'at least two qualifying predicate acts, each of which must constitute a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1).'" (*Id.* at 16.) The District Court properly concluded that the allegation that "AmWaste entered into a legitimate, legal contract with the City to provide a legitimate service—garbage collection—to the City's residents with knowledge of the City's long-time practice of filing state criminal charges under state law against its residents does not, standing alone, state a plausible RICO claim." (*Id.* at 16-17.)

On January 11, 2024, Appellants filed a notice of appeal. (ECF No. 43.)

## C.    Statement of the Facts

Pursuant to the appropriate standard of review on a Rule 12(b)(6) motion, the Court must assume the well-pleaded facts in the SAC to be true. This Court may also take judicial notice of the contents of official court dockets and criminal complaints.[1] The facts alleged in the SAC as

_____

[1] *See* Fed. R. Evid. 201; *see also McDowell Bey v. Vega*, 588 F. App'x 923, 926–27 (11th Cir. 2014) (affirming, *in a civil case,* the district court's

well as the relevant facts that appear in the Appellants' state court criminal documents are summarized below.

> **1.    The Alabama Solid Wastes and Recyclable Materials Management Act permits criminal punishments for failing to pay mandatory residential solid waste collection fees.**

The Alabama Solid Wastes and Recyclable Materials Management Act, Alabama Code §§ 22-27-1 *et seq.* (the "<u>Act</u>"), authorizes municipalities to provide garbage collection and disposal services to the general public, and to contract with private parties to provide residential garbage collection. Ala. Code § 22-27-3(a)(1). The Act also permits municipalities to charge fees for such services. Ala. Code § 22-27-5(a). Municipalities may require mandatory public participation in such residential solid waste collection. Ala. Code § 22-27-3(a)(2). Finally, the

---

taking judicial notice of contents of state court criminal docket sheet and, further, using information provided there as the basis for its affirmance). This Court is not required to "accept as true allegations that contradict matters properly subject to judicial notice." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1272 (M.D. Ala. 2019) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)), *aff'd*, 6 F.4th 1247 (11th Cir. 2021), *cert. denied sub nom. Coral Ridge Ministries Media, Inc. v. S. Poverty Law Ctr.,* 142 S. Ct. 2453 (2022).

8

Act provides for criminal proceedings for violations of any its provisions, including for failing to pay the mandatory fees. Ala. Code § 22-27-7.

> **2.     Appellants are arrested, imprisoned, and fined by the District Court of Chambers County, Alabama.**

On December 5, 2011, Appellant Santori Little was arrested and charged for failure to pay solid waste fees under Alabama Code § 22-27-5. (ECF No. 31 at ¶ 13; ECF No. 35-1 at 3.) On February 17, 2012, a warrant was issued for Little's arrest. (ECF No. 35-1 at 5.) She was arrested again in July of 2013. (ECF No. 31 at ¶ 13.) Little posted a bond and was released from jail on July 16, 2013. (ECF No. 31 at ¶ 14; ECF No. 35-1 at 5.) She pleaded guilty to the charge of failure to pay solid waste fees on August 14, 2013, and was ordered to pay fines and restitution. (ECF No. 31 at ¶¶ 14–15; ECF No. 35-1 at 6.) She thereafter received several show cause orders directing her to appear in the District Court of Chambers County, Alabama. (ECF No. 31 at ¶¶ 16–17; ECF No. 35-1 at 6.)

Appellant Charles Gray was arrested and charged with failure to pay solid waste fees under Alabama Code § 22-27-5 on January 14, 2022. (ECF No. 31 at ¶ 19; ECF No. 35-2 at 2, 5.) He posted a $2,500.00 bond,

and was released from jail. (ECF No. 31 at ¶ 20, ECF No. 35-2 at 5.) He pleaded guilty to the charge on March 9, 2022. (ECF No. 31 at ¶ 21; ECF No. 35-2 at 5.) The court ordered Gray to pay fines and restitution. (ECF No. 31 at ¶ 21; ECF No. 35-2 at 6.)

Appellant Tamara Khelifa was arrested on November 30, 2022. (ECF No. 31 at ¶ 22; ECF No. 35-3 at 2, 5.) Like the other Appellants, Khalifa was charged with a violation of Alabama Code § 22-27-5 for failure to pay her solid waste fee. (ECF No. 35-3 at 3.) She was released from jail after paying a $2,500.00 bond, and later pleaded guilty to the charge. (ECF No. 31 at ¶¶ 23–24; ECF No. 35-3 at 5.)

### 3. AmWaste contracts with the City to provide residential solid waste collection.

The City and AmWaste entered into a contract in 2019, pursuant to which AmWaste provided residential solid waste collection for residents of the City. (ECF No. 31 at ¶ 34.) The City paid AmWaste for this service. (*Id.*)

According to Appellants, AmWaste was aware of the alleged arrests when it contracted with the City in 2019. (*Id.* at ¶¶ 71, 73.) Appellants further allege that "AmWaste knew of and approved of the methodology

10

to be used in collecting those fees, including the use of jail or the threat of jail." (*Id.* at ¶ 73.) The purpose of this alleged agreement between the City and AmWaste was to "use the threat and intimidation of jail time to extort money from [Appellants]." (*Id.* at ¶ 89.)

Appellants assert that "AmWaste gladly accepted the fruits of the illegal collection practices." (*Id.* at ¶ 92.) Appellants, however, do not allege AmWaste benefitted in any way from the alleged threats or arrests. Rather, Appellants allege that the City kept all excess funds from the mandatory garbage fees, and any fees and costs arising from the criminal prosecutions went "into the City's coffers." (*Id.* at ¶¶ 49, 89.)

## D.    Statement of the Standard of Review

This Court conducts a *de novo* review of a district court's order granting a motion to dismiss. *Traylor v. P'ship Title Co.*, 491 F. App'x 988, 989 (11th Cir. 2012). That being said, "this court may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court." *Bonanni Ship Supply, Inc. v. United States*, 959 F.2d 1558, 1561 (11th Cir. 1992); *see also Benedek v. Adams*, 725 F. App'x 755, 761 (11th Cir. 2018) (same).

## IV.   SUMMARY OF THE ARGUMENT

The District Court correctly dismissed Appellants' claims against AmWaste pursuant to Federal Rule of Civil Procedure 12(b)(6) because Appellants did not allege sufficient facts to state plausible claims under 42 U.S.C. § 1983 or the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C § 1964 ("RICO"). Despite having three opportunities to plead their case, Appellants' SAC fails to allege anything other than conclusory allegations utterly unsupported by facts. Appellants' claims are not well-pleaded, let alone plausible.

The factual basis underlying Appellants' SAC is that AmWaste entered into a contract with the City, pursuant to which AmWaste provided residential solid waste collection. Appellants also rely on state statutes that authorize municipalities to contract with private parties to provide such services. Based on this single contract and various state statutes, Appellants extrapolate to an agreement between AmWaste and the City to arrest and jail residents of Valley, Alabama, for failing to pay their garbage fees, in violation of Appellants' constitutional rights. Appellants' SAC is fatally short on well-pleaded allegations rooted

12

in facts. Unable to overcome this flaw, Appellants resort to unreasonable and unsupported conclusions.

Specifically, Count II of the SAC asserts a claim against AmWaste and the City for conspiracy to violate § 1983. First, Appellants abandoned any argument regarding the viability of the claim against AmWaste by failing to address the element of agreement in their brief. The District Court found that the SAC failed to plead facts to show AmWaste and the City agreed to violate Appellants' rights. (ECF No. 42 at 14.) As the only ground to hold AmWaste liable under § 1983 is an alleged conspiracy, this Court should affirm dismissal of the § 1983 claim.

Second, the District Court correctly held that the Appellants failed to establish § 1983 liability against the City because "the actions [Appellants] challenge were state, not municipal, acts and the City had no control over the district court." (*Id.* at 11.) The actions of which Appellants complain—the alleged unconstitutional prosecutions, imprisonment, and imposition of excessive fees—all occurred in and were controlled by the District Court of Chambers County, Alabama, which is a state court. As the City had no control over the state judicial proceedings, the City (and AmWaste) cannot be liable under § 1983

13

pursuant to the standards for municipal liability set forth in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). (*Id.* at 7.)

The District Court also correctly dismissed the RICO claim because Appellants did not "plausibly allege" AmWaste's participation in an illegal enterprise through a pattern of racketeering activity. (*Id.* at 14.) Like Appellants' § 1983 claim, the RICO count is premised on nothing more than a rote recitation of the elements, AmWaste's contract with the City, and state statutes. But "[Appellants'] attempts to recast a contractual relationship as a RICO enterprise are unavailing." (*Id.* at 17.) The District Court also correctly found that Appellants' allegations only establish that AmWaste operated its own affairs, as opposed to the affairs of a RICO enterprise, and thus failed to satisfy an essential element of the RICO claim. (*Id.* at 16–17.) Finally, although not addressed by the District Court, this Court should affirm dismissal of the SAC because Appellants failed to plead that AmWaste or the City engaged in the racketeering activity of extortion. Appellants' unsupported, conclusory allegation that the City and AmWaste acted as an association-in-fact

14

with the goal of extorting Appellants is simply not sufficient to state a RICO claim.

Overall, the SAC is rife with conclusory assertions that ultimately alleges nothing more than AmWaste entered into a contract with the City to provide garbage collection services. Appellants cannot point to any factual allegations to survive a motion to dismiss, and no amount of inferences in their favor can make up for the absence of well-pleaded facts. For all of these reasons, and those that follow, this Court should affirm.

# V.    ARGUMENT

## A.    Appellants fail to allege sufficient facts to state a claim for conspiracy to violate 42 U.S.C. § 1983.

The District Court properly dismissed the claim for conspiracy to violate 42 U.S.C. § 1983 pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action upon which relief could be granted.

### 1.    Appellants have abandoned any argument regarding the District Court's dismissal of the § 1983 claims as to AmWaste.

Dispositive of their § 1983 claim, Appellants have abandoned any argument regarding the District Court's finding that the SAC "fails to allege facts sufficient to show" AmWaste and the City "reached an understanding" to violate Appellants' constitutional rights. (ECF No. 42 at 14.) The District Court dismissed the § 1983 claims because (1) Appellants' challenged state, not municipal actions, and thus the SAC failed to plead a necessary element for municipal liability under § 1983, (2) the state district court broke the chain of causation necessary to impose liability under § 1983, and (3) the SAC did not allege facts establishing that AmWaste and the City agreed to violate Appellants' constitutional rights. (*Id.* at 11–12, 14.) In this appeal, Appellants only

16

challenge these first two holdings, and make no argument that they pleaded sufficient facts to show AmWaste and the City conspired. (*See generally* Appellants' Br.) In order for this Court to reverse, Appellants must "convince [the Court] that every stated ground for the judgment against [them] is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). As Appellants failed to challenge the District Court's specific holding that they failed to plead an agreement, they have abandoned that argument on appeal, and this Court should affirm.[2]

Appellants' § 1983 claim against AmWaste arises solely from an alleged conspiracy with the City. (*See* ECF No. 31 at 12–13.) "To prevail on a § 1983 conspiracy claim a plaintiff must show that an agreement between two or more people (at least one of whom is a state actor) to

_____

[2] Although Appellants' claim brought under RICO arises from the same factual basis as the § 1983 claim and the arguments are parallel, Appellants' briefing on the RICO claim does not save its § 1983 conspiracy claim from abandonment. The District Court dismissed the RICO claim on the grounds that the SAC did not plausibly plead that AmWaste participated in the operation or management of the alleged illegal enterprise through a pattern of extortion. (ECF No. 42 at 16.)

17

violate his constitutional rights resulted in an actual violation of those rights." *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1191 (11th Cir. 2011) (citing *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010)). The "linchpin for conspiracy is agreement." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992). Because Appellants did not challenge the District Court's holding that they failed to plead facts establishing the City and AmWaste reached an understanding to violate their rights, Appellants are "deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Sapuppo*, 739 F.3d at 680 (citing *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012)).

"[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "Any issue that an appellant wants the Court to address should be specifically and clearly identified in the brief." *Id.* "[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [the Court] considering the issue on appeal."

53598735 v2

*Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009). Similarly, making "passing references" to issues in the statement of the case, summary of the argument, or even the argument section itself does not protect an argument from abandonment. *See Sapuppo*, 739 F.3d at 681–82.

Appellants' statement of the issues does not mention any dispute with the District Court's ruling that Appellants' allegations of agreement were insufficient, which alone is enough to abandon that argument. *Id.* at 680 ("Their statement of the issues does not mention any issues involving the district court's alternative rulings …. As a result, the [Appellants] have abandoned any argument that the additional reasons the district court stated for dismissing each of the claims was error."). Appellants not only failed to raise this holding in their statement of issues but also failed to dedicate a "discrete section" of their argument to this issue. *Id.* at 681. At most, Appellants make passing references to the relationship between City and AmWaste in their statement of the case. (Appellants' Br. 10–11.) But they make no argument that they pleaded any facts to show AmWaste and the City "reached an understanding" to violate Appellants' constitutional rights. (*See id.* at 35–45.)

19

The District Court properly dismissed Appellants' claim for conspiracy to violate § 1983 for failure to adequately allege an agreement, and because Appellants abandoned any argument to the contrary on appeal, this Court need go no further and should affirm on that basis. *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672–73 (11th Cir. 2016) (holding that where appellant challenged "only one of the district court's two grounds for dismiss[al] . . . the judgment is due to be affirmed on the unchallenged ground").

> **2. Even if Appellants did not abandon their argument to the contrary, the District Court correctly held that Appellants failed to allege an agreement between AmWaste and the City.**

Even if Appellants had not forfeited their argument that the District Court erred in finding they failed to allege agreement, a review of the SAC demonstrates that the conspiracy claim consists solely of conclusory allegations based on complete speculation, which are insufficient to survive a motion to dismiss. (*See generally* ECF No. 31.) "It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir. 1984). Instead, "[a] plaintiff claiming a conspiracy under § 1983 must make

20

particularized allegations that a conspiracy exists." *Kivisto v. Miller,*
*Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 139 (11th Cir. 2011)
(citing *Phillips v. Mashburn,* 746 F.2d 782, 784 (11th Cir. 1984)); *see also*
*Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005).

To make such "particularized allegations," a plaintiff "must plead
in detail, through reference to material facts, the relationship or nature
of the conspiracy between the state actor(s) and the private persons."
*Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992). Appellants failed
to meet this burden, and the District Court justifiably dismissed the SAC.
*See Eubank v. Leslie*, 210 F. App'x 837, 842 (11th Cir. 2006) (dismissing
complaint that "never alleged how [Defendants] conspired . . . with any
other defendants to violate his rights" and "only stated generally that a
conspiracy existed" and "made the allegations relevant to these
defendants' conduct"); *Grider v. Cook*, 590 F. App'x 876, 881 (11th Cir.
2014) (dismissing complaint that consisted of conclusory allegations and
"never identified—even generally—a date, time, or location" of any
communications between the defendants).

Instead of pleading particularized facts, the SAC makes the bare
assertions that AmWaste and the City "agreed" that AmWaste would

21

provide garbage services and that AmWaste "knew of and approved" of the alleged constitutional deprivations. (ECF No. 31 at ¶¶ 70–73.) Statements that a defendant "with knowledge and intent, agreed to the overall objective of the conspiracy" are "wholly conclusory." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293–94 (11th Cir. 2010) (citation omitted). Unable to plead facts, Appellants resort to employing adjectives, adverbs, and synonyms to make the hollow legal conclusions seem more forceful. For example, the SAC asserts that AmWaste had "full knowledge" and "knew exactly" what the City was allegedly doing, (ECF No. 31 at ¶¶ 71, 72), and "agreed," "assent[ed]," and "approved" of the alleged unlawful actions. (*Id.* at ¶¶ 71, 73.)

But colorful language and legal conclusions add no factual substance to Appellants' claims, and the District Court correctly found such conclusory assertions insufficient. (ECF No. 42 at 14.) And as discussed *infra*, the few facts Appellants do plead fail to rule out the "obvious alternative explanation" that AmWaste simply collected garbage pursuant to a contractual relationship with the City. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1212 (11th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)).

53598735 v2

### 3.    Appellants fail to plead a plausible *Monell* claim.

The District Court also correctly dismissed Appellants' § 1983 claim because the SAC does not establish essential elements to subject a municipality to liability under § 1983. (ECF No. 42 at 8–11.) As the City had no control over the alleged arrests, imprisonments, and fines to which Appellants objected, the City and AmWaste cannot be held responsible. (*Id.* at 12.)

Municipalities such as the City may be liable under § 1983. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). To establish *Monell* municipality liability, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). The municipality must be the "moving force" behind the injury. *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)).

23

### a. Appellants do not allege that the City had control over the challenged actions.

The District Court correctly concluded that the City cannot be liable under *Monell* because Appellants failed to plead facts that show the City "has authority and responsibility of the governmental function at issue." (ECF No. 42 at 7 (quoting *Teagan v. City of McDonough*, 949 F.3d 670, 675 (11th Cir. 2020) (quoting *Grech v. Clayton Cty.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (en banc)).) This Court's precedent is clear: "[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1292 (11th Cir. 1998) (en banc). Instead, the local government "must have power in an area in order to be held liable for an official's acts in that area." *Id.* (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1578 (1996), *aff'd sub nom. McMillian v. Monroe Cnty.,* 520 U.S. 781 (1997)); *see also Williams v. Monroe Cnty. Dist. Att'y*, 702 F. App'x 812, 814 (11th Cir. 2017) ("A municipality's liability under § 1983 'is limited to action for which the municipality is actually responsible.'" (quoting *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015)).

24

The actions of which Appellants complain are the alleged unconstitutional prosecutions, imprisonment, and imposition of excessive fees.[3] (ECF No. 31 at ¶¶ 25–26, 64, 68.) The prosecutions and judicial proceedings that resulted in the charges, fines, and imprisonment occurred in the District Court of Chambers County, Alabama, a state court. (*See* ECF Nos. 35-1, 35-2, 35-3.) Appellants were charged with violations of a state statute, the Alabama Solid Wastes and Recyclable Management Act, Ala. Code §§ 22-27-1 *et seq.*, for failing to pay solid waste fees.[4] (*See* ECF Nos. 35-1, 35-2, 35-3.) The state court

---

[3] Appellants' Brief argues that the City "**did** have control over whether to initiate criminal prosecutions it knew would result in jailings as opposed to instituting civil actions," and thus acted "as the final policymaker as to that decision." (Appellants' Br. at 35.)

However, as alleged in the SAC, the constitutional deprivations were violations of the Due Process Clause by being imprisoned or threatened with imprisonment for failure to pay the garbage collection fee, (ECF No. 31, ¶ 65), and imposition of excessive bail in violation of the Eighth Amendment, (*id.* at ¶¶ 97-99). As the District Court correctly noted, "the [Appellants] do not allege in the SAC that the City's mere act of initiating the misdemeanor proceedings . . . is itself a constitutional violation." (ECF No. 42 at 11.)

[4] Although Appellants repeatedly reference Valley Municipal Code § 58–127, the state court dockets show that Appellants were charged with state offenses. (*See* ECF Nos. 35-1, 35-2, 35-3.) The District Court

system had full control to prosecute, arrest, or jail the Appellants. (*See id.*; *see also* ECF No. 42 at 12.) Thus, the City cannot be liable under *Monell* because it is not responsible "for the acts of those whom [it] has no authority to control." *Turquitt*, 137 F.3d at 1292.

### b. Appellants do not adequately allege causation.

Appellants' brief improperly conflates the requirements of control and causation, interpreting the District Court's order as dismissing the § 1983 claims solely for failure to plead causation. (Appellants' Br. at 22.) The District Court, however, found the claims failed on two separate grounds. (ECF No. 42 at 13.) First, as shown above, because the Appellants challenge state, not municipal, actions, "they fail the threshold question under *Monell*" of whether the City had control over the challenged function. (*Id.* at 11.) Second, "the state district court's

---

properly took judicial notice of the state court's criminal docket. *Vega*, 588 F. App'x at 926 (district court properly took judicial notice of a state court docket in ruling on a motion to dismiss); *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020). This Court is not required to "accept as true allegations that contradict matters properly subject to judicial notice." *Coral Ridge Ministries,* 406 F. Supp. 3d at 1272 (quoting *Veney*, 293 F.3d at 730).

independent decisions broke the chain of causation." (*Id.* at 12.) While the requirements of control and causation are related, they are distinct elements.

"[A] a local government can only be liable under § 1983 for injuries which the government itself caused, and causation necessarily implies control." *Turquitt*, 137 F.3d at 1292 (citing *Monell*, 436 U.S. at 691); *Bryan Cnty.* 520 U.S. at 405 ("[T]he conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."). The Supreme Court has demanded "rigorous requirements of culpability and causation" to ensure that *Monell* liability does not collapse into *respondeat superior* liability. *Id.*[5]

---

[5] *See also, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 70 (2011) ("proving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents 'difficult problems of proof,' and we must adhere to a 'stringent standard of fault'" (quoting *Bryan Cnty.*, 520 U.S. at 406, 410)); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.11 (1986) (finding that the plurality and concurrence in *City of Oklahoma City v. Tuttle*, 471 U.S 808 (1985) "found plaintiff's submission inadequate because she failed to establish that the

27

"It is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation." *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 967 (11th Cir. 2002). Here, just as the City did not have control over the state court's actions, a "causal relation does not exist" because "the continuum between [the City's] action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." *Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002); *see also Turner v. Williams*, 65 F.4th 564, 590 (11th Cir. 2023) ("Since we have already decided that there was probable cause to arrest [plaintiff], and the arrest was ultimately effectuated by an independent assistant state attorney and independent judge, the independent actions broke the causal chain."); *Vandiver v. Meriwether Cnty.*, 325 F. Supp. 3d 1321, 1331 (N.D. Ga. 2018) (holding the municipality did not cause the

---

unconstitutional act was taken *pursuant to* a municipal policy rather than simply resulting from such a policy in a 'but for' sense" which is "consistent with our holding today" (quoting *Tuttle*, 471 U.S. at 822–24)); *Camp v. Corr. Med. Servs., Inc*, 668 F. Supp. 2d 1338, 1351 (M.D. Ala. 2009) ("Plaintiffs assert that 'but for' this policy and custom, CMS would have hired Camp and Martindale. However, mere causation is insufficient to establish liability under *Monell*.") (citations omitted), *aff'd in part,* 400 F. App'x 519 (11th Cir. 2010).

28

constitutional violation because a state district attorney indicted the plaintiff, and even if the municipality had asked the district attorney to prosecute, "it had no power to make him do it").

Appellants contend that "[t]he District Court ignored its own precedent ... in holding that the intervening actions of the State district court break the necessary chain of causation." (Appellants' Br. at 23 (citing *Carter v. City of Montgomery*, 473 F. Supp. 3d 1273 (M.D. Ala. 2020)).) First, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)). Second, contrary to Appellants' argument, the District Court recognized the holding in *Carter*, distinguished it, and correctly followed this Court's precedent.

The District Court found that Appellants' case is distinguishable from *Carter* "because it involves proceedings prosecuted in state court and presided over by a state district judge while other cases involved municipal courts presided over by judicial officers funded and appointed by the municipality." (ECF No. 42 at 10 (citing cases).) Unlike the

29

municipality in *Carter*, the City "had no control over the decisions or actions of the district court." (*Id.* at 12); *cf. Carter*, 473 F. Supp. 3d at 1287–88, 1299 (recognizing that the city had control over the municipal courts and "final responsibility" over the private entity that caused the harm).

Appellants then argue, again in reliance on *Carter*, that because Alabama law governs the causation question, "the relevant question under Alabama law is whether the plaintiff's injury would have occurred but for the defendant's act or omission." (Appellants' Br. at 26.) Appellants cite to various Alabama state court cases governing proximate cause, contending that "but for" the City's actions, the alleged constitutional violations would not have occurred. (*Id.* at 26–29 (citing cases).) But as noted above, the causation requirements under *Monell* are much more rigorous than simple "but for" causation.

Because the City and AmWaste had no authority to control the state district court that charged, convicted, and fined the Appellants, they cannot be liable under *Monell*, and this Court should affirm.

30

## B.    Appellants do not allege sufficient facts to state a claim under RICO.

The District Court correctly held that the SAC fails to state a plausible RICO claim supported by sufficient factual allegations. (ECF No. 42 at 14.) Appellants assert a RICO claim under 18 U.S.C. § 1962(c), which makes it illegal to "participat[e] in the conduct of the affairs of an enterprise engaged in interstate commerce, through a pattern of racketeering activity." (ECF No. 31 at ¶ 76 (citation omitted); *see also id.* at 14–17.) This is not a racketeering case. AmWaste collected garbage pursuant to a contract with the City.

RICO is a unique cause of action concerned with eradicating organized, long-term criminal activity, or "racketeering," which is defined in terms of certain predicate acts that include extortion. *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317–18 (4th Cir. 2010) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233, 239 (1989)). RICO penalties are "drastic," and courts "must . . . exercise caution to ensure that RICO's extraordinary remedies do not threaten the ordinary run of commercial transactions." *Id.* at 317 (citation omitted); *see also DePaola v. Nissan N. Am., Inc.*, No. 1:04CV267, 2006 WL 1181131, at *12 (M.D.

31

Ala. May 2, 2006) (RICO claims "must be subjected to scrutiny due to their potential for abuse by civil litigants").

Conclusory allegations, like those presented by Appellants, fail to state actionable claims. *Am. Dental Ass'n*, 605 F.3d at 1293–94. Instead, to survive a motion to dismiss, a plaintiff must plead four essential elements supported by factual allegations: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.,* 945 F.3d 1150, 1158 (11th Cir. 2019) (citation omitted).

### 1. The District Court correctly concluded that Appellants' allegations of an enterprise were insufficient.

A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In a simple case, the alleged enterprise is a legal entity, which is not alleged here. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017). Rather, Appellants allege that the contractual arrangement between the City and AmWaste constituted an association-in-fact. (ECF No. 31 at ¶ 78.) Appellants, therefore, rely on the "more

32

challenging case" that occurs when an enterprise is alleged to be a "union or group of individuals associated in fact although not a legal entity." *Almanza*, 851 F.3d at 1067 (quoting 18 U.S.C. § 1961(4)).

An association-in-fact enterprise must have three distinct features: (1) a purpose, (2) a "relationship among the associates," and (3) "longevity sufficient to permit the associates to pursue the enterprise's purpose." *Id.* (quoting *Boyle v. United States*, 556 U.S. 938, 944, 946 (2009)). The District Court correctly found that Appellants failed to plausibly allege these elements.

### a. A contract and common interest in making money does not constitute an enterprise.

To constitute an "enterprise," a group must be "associated together for a common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 944 (citation omitted). According to Appellants, the purpose of the enterprise is "for the City to ultimately generate revenues for itself and AmWaste." (ECF No. 31 at ¶ 84.) This Court has held that a shared purpose of making money is insufficient to satisfy the purpose prong. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 n.3 (11th Cir. 2016) ([S]ince making money is the purpose of every for-profit corporation . . .

33

this purpose is wholly insufficient to establish an association-in-fact enterprise."); *see also Cisneros*, 972 F.3d at 1211 ("An abstract common purpose, such as a generally shared interest in making money, will not suffice [to satisfy the common purpose prong]."). Instead, where the purpose of the enterprise is to make money, a plaintiff "must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." *Id.*

Assertions that the goal of the enterprise is to make money "are particularly lacking when that common purpose is the very basis for Defendants' commercial, and entirely ordinary, relationships." *Boyd v. TTI Floorcare N. Am.*, 230 F. Supp. 3d 1266, 1283 (N.D. Ala. 2011), *aff'd sub nom. Green v. Bissell Homecare Inc.*, 476 F. App'x 238 (11th Cir. 2012); *see also Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1346 (N.D. Ga. 2017) ("[T]he enterprise that Plaintiff alleges is, at most, a routine contractual combination . . . . That type of enterprise is not generally sufficient to constitute a RICO enterprise . . . ."). AmWaste simply collected garbage pursuant to its contract, which is "a wholly innocent activity undertaken as a course of regular business." *Spirit Airlines*, 836 F.3d at 1353 (upholding dismissal because fact that

34

contractor provided service "does not give rise to a plausible inference" that the defendants acted with common purpose).

Notably, the SAC's allegations <u>contradict</u> the conclusory claim that AmWaste shared a goal of "making money" through extortion. For example, Appellants assert that the City "collected more money from its solid waste collection customers than it spent . . . on AmWaste." (ECF No. 31 at ¶ 48.) Then, according to Appellants, "the City transferred the excess funds to the City of Valley General Fund." (*Id.* at ¶ 49.) By Appellants' own allegations, AmWaste never profited from the alleged threats or arrests. Instead, it was paid its usual fee *regardless* of the City's collections. The SAC further makes it clear that the fees and costs associated with the arrests "all go into the City's coffers." (*Id.* at ¶ 89.) There is "no allegation that [AmWaste] received any money in connection with the alleged scheme to [arrest citizens]" or benefitted in any way from supposed unconstitutional criminal proceedings. *Cisneros*, 972 F.3d at 1213.

Thus, the District Court correctly held that "[Appellants'] attempts to recast a contractual relationship as a RICO enterprise are unavailing." (ECF No. 42 at 17.)

## b.    A statute does not make a scheme.

Appellants' other alleged basis for finding a RICO enterprise arises from certain Alabama statutes. Specifically, Appellants assert that because Alabama law authorizes the City to pay private parties to collect garbage, the statutes make AmWaste a partner in an elaborate, unconstitutional RICO enterprise. (ECF No. 31 at ¶ 80 ("The particular statutory framework for providing municipal garbage collection through a private party makes the City of Valley and AmWaste partners in an enterprise . . . ."); *see also id.* ¶¶ 33, 81–83.)

Appellants' logical leap is entirely inappropriate and implausible because the law expressly authorizes such a contractual arrangement. Under Alabama Code § 11-47-135, municipalities may "collect reasonable fees" that are necessary to carry out garbage collection. Similarly, Alabama Code § 22-27-5(a) authorizes municipalities to "establish fees, charges, and rates" for operating a solid waste program and to enter into contracts with third parties to run the waste program.

In the SAC, Appellants allege that "AmWaste was aware of this provision," referring to Alabama Code §§ 11-47-135, and 22-27-5. (ECF No. 31 at ¶ 82.) There are no facts establishing that AmWaste had any

36

knowledge of the statutes. *See Grayden v. Rhodes*, 345 F.3d 1225, 1243 (11th Cir. 2003) ("The law does not entertain the legal fiction that every individual has achieved a state of legal omniscience; in other words, there is no presumption that all of the citizens actually know all of the law all of the time."); *see also Mobile Cnty. v. Williams*, 61 So. 963, 974 (Ala. 1913) ("No man can avoid a liability, as a general thing, because he is ignorant of the law. . . . But the law is not so senseless as to make absurd presumptions of fact."). More importantly, Appellants do not explain how a statute authorizing contractual relationships makes the parties to such contracts partners in an extortion enterprise. If that were the case, every government contractor runs the risk of finding themselves part of a RICO enterprise.

Because Appellants fail to adequately allege a RICO enterprise, this Court should affirm the dismissal of the RICO claim.

### 2.    Appellants fail to plausibly allege that AmWaste conducted the affairs of a RICO enterprise, as opposed to its own affairs.

Even if the SAC had properly pleaded a RICO enterprise, the Appellants' claim still fails because no facts establish that AmWaste controlled or directed the enterprise's affairs. To satisfy the "conduct"

37

element of a RICO claim, a plaintiff must allege that the defendant participated in the operation or management of the enterprise itself and played some part in directing the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The law is clear that "[t]o manage or operate an enterprise's affairs is to **direct** the enterprise's affairs." *United States v. Browne*, 505 F.3d 1229, 1277 (11th Cir. 2007) (emphasis added).[6]

 "[L]iability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves*, 507 U.S. at 185. Thus, while "even lower-rung participants" may find themselves part of an enterprise, a defendant must do more than simply perform services in accordance with a business relationship—that is, a participant must direct the enterprise. *Parm*, 242

---

[6] Appellants call the operation or management test a "relatively low hurdle." It may be true that "[**i]n the Second Circuit**, 'the operation or management test typically has proven to be a relatively low hurdle for plaintiffs to clear." *Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 204 (E.D.N.Y. 2022) (quoting *Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 461 (S.D.N.Y. 2018)). However, AmWaste was unable to find any case law in the Eleventh Circuit describing this test as a "low hurdle."

F. Supp. 3d at 1348; *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) ("Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice."); *Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").

The SAC only alleges that AmWaste operated its own affairs. For example, Appellants assert that AmWaste provides the "garbage collection services" to "generate garbage fees" pursuant to its contract with the City. (ECF No. 31 at ¶ 79.) Put another way, Appellants assert that AmWaste collected garbage—i.e., it ran an ordinary business and operated its own affairs. Even their allegation that AmWaste "understood and approved" of the prosecutions and punishments when it assumed the contract fails to push the claim across the line of plausibility. (*Id.* at ¶ 92.) "[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject [a defendant] to RICO liability under § 1962(c)." *Parm*, 242 F.

39

Supp. 3d at 1348 (quoting *Javitch v. Capwill*, 284 F. Supp. 2d 848, 854 (N.D. Ohio 2003)).[7]

Appellants urge that RICO is a "conspiracy statute," and that, therefore, they do not have to allege that AmWaste committed any predicate acts because it agreed to the extortion enterprise with the City. (Appellants' Br. at 41.) The SAC, however, does not allege a RICO conspiracy under 15 U.S.C. § 1692(d); the Appellants only assert a cause of action under § 1692(c), which requires participation in—i.e., control of—an enterprise. (ECF No. 31 at ¶ 76; *see also* ECF No. 42 at 14 ("[Appellants] bring their RICO claim solely under 18 U.S.C. § 1962(c).").) Indeed, the cases cited by Appellants illustrate the difference between claims under Subsections (c) versus (d). *See United States v. Nicholson*, 716 F. App'x 400, 407 (6th Cir. 2017) ("[U]nlike a § 1962(c) substantive RICO violation, to prove RICO *conspiracy*, the prosecution is not required

---

[7] The SAC also includes the conclusory claim that "Both Defendants participate in the affairs of the enterprise between through . . . extortion under the Hobbs Act." (ECF No. 31 at ¶ 86.) This is a hollow legal conclusion. There were no facts alleged that AmWaste arrested anyone, made any threats, or even that any employee or agent of AmWaste ever *spoke* to any Appellant.

40

to show that a defendant actually committed a racketeering act or any overt act at all."); *see also Browne*, 505 F.3d at 1282 (recognizing difference in scope between Subsections (c) and (d)).

Moreover, even if Appellants had alleged a conspiracy under § 1962(d), they would still have to plead the existence of an enterprise as an element of their claim. *Almanza*, 851 F.3d at 1067 ("Each of these subsections [18 U.S.C. § 1962 (a), (c), and (d)] requires [Appellants] to have alleged the existence of an 'enterprise . . . .'"). RICO "is not a conspiracy statute. Its draconian penalties are not triggered just by proving conspiracy. 'Enterprise' connotes more." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997); *see also Boyle,* 556 U.S. at 950 (recognizing that "Section 1962(c) demands much more [than does proof of a conspiracy]: the creation of an 'enterprise'–a group with a common purpose and course of conduct–and the actual commission of a pattern of predicate offenses").

Because the SAC does not properly plead the existence of an enterprise or that AmWaste operated or managed the affairs of any such enterprise, the District Court correctly dismissed the RICO claim.

41

    **3.**    **Appellants fail to allege that AmWaste engaged in the racketeering activity of extortion because the City and AmWaste were statutorily authorized to collect fees.**

The fourth element of a RICO claim—racketeering activity—requires a plaintiff "to "put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215. Appellants assert that the predicate act was extortion under the Hobbs Act. (ECF No. 31 at ¶ 86.) Therefore, "[t]o state the predicate act of extortion for their RICO claim, [Appellants] must show a violation of the Hobbs Act." *Crawford's Auto Ctr.,* 945 F.3d at 1159; *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004) ("[Pleading predicate acts] requires that a plaintiff allege facts that support each statutory element of a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1).").

The Hobbs Act prohibits "obstruct[ing], delay[ing], or affect[ing] commerce . . . by robbery or extortion . . . or commit[ting] or threaten[ing] physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." 18 U.S.C. § 1951(a). Extortion under the Hobbs Act is defined as "the obtaining of property

from another, with his consent, induced by **<u>wrongful</u>** use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2) (emphasis added). A defendant's action is wrongful if the defendant uses "**<u>wrongful</u>** means to achieve a **<u>wrongful</u>** objective." *United States v. Pendergraft*, 297 F.3d 1198, 1205 (11th Cir. 2002) (emphasis added) (citing *United States v. Enmons*, 410 U.S. 396, 399–400 (1973)).

An objective is not wrongful if the defendant has a "lawful claim" to the funds. *Id.*; *see also Crawford's Auto Ctr.*, 945 F.3d at 1160. Appellants did not, and cannot, establish a wrongful objective because AmWaste and the City had a lawful claim to the garbage fees. Indeed, Alabama Code § 22-27-5(a) explicitly authorizes municipalities to "establish fees, charges, and rates" for operating a solid waste program, and to contract with third parties to run the waste program. The City was statutorily entitled to collect fees, and AmWaste was contractually entitled to be paid for its services. Therefore, there was no "wrongful objective" under the Hobbs Act.

Nor do the facts alleged establish that AmWaste and City used wrongful means. A "threat to litigate" is not inherently wrongful under

43

the Hobbs Act. *Pendergraft*, 297 F.3d at 1206. Similarly, arrests and fines are not inherently wrongful.[8] *See McCullough v. City of Montgomery*, No. 2:15-cv-463 (RCL), 2017 WL 956362, at *14 (M.D. Ala. Mar. 10, 2017) (no wrongful objective or means to find extortion when the defendant was authorized by Alabama Code "to collect money and those who did not make required payments could indeed be arrested"), *rev'd & remanded on other grounds sub nom. McCullough v. Finley*, 907 F.3d 1324 (11th

---

[8] Appellants also argue that jail time is not a permissible penalty under the City's ordinance, Valley Mun. Code § 58-127. (Appellants' Br. 16–17.) As shown in section III.A.2., Appellants were charged for violations of the Alabama Solid Wastes and Recyclable Materials Management Act, which "clearly authorizes criminal prosecutions and provides for criminal penalties." *Beard v. State*, 627 So. 2d 1122, 1125–26 (Ala. Crim. App. 1993) (citing Ala. Code § 22-27-7).

To the extent Appellants contend that jail time is not permitted because Alabama Code § 22-27-7 does not explicitly mention imprisonment, courts may lawfully impose a jail time upon the conviction of any misdemeanor. *See Tisdale v. State*, No. CR-21-0174, 2022 WL 17729211 (Ala. Crim. App. Dec. 16, 2022) (although statute stated offense was a misdemeanor punishable by a fine of not more than $50, the crime was punishable as a Class C misdemeanor, and thus the court was authorized to imposed a jail sentence), *cert. denied sub nom. Ex parte Tisdale*, No. SC-2023-0122, 2023 WL 3668348 (Ala. May 26, 2023); *see also, e.g.*, Ala. Op. Att'y Gen. No. 1986-00331, 1986 WL 1308564 (Aug. 18, 1986) (finding that a municipal ordinance adopted pursuant to § 22-27-7 that imposed penalty of six months in jail was valid).

44

Cir. 2018); *Mcneil v. Cmty. Prob. Servs., LLC*, No. 1:18-cv-00033, 2021 WL 366776, at *13 (M.D. Tenn. Feb. 3, 2021) (holding that a facially lawful arrest or detention is not a wrongful use of force of violence for purposes of Hobbs Act extortion). Even if the alleged arrests and jailings were unconstitutional, they were not wrongful because Appellees had a lawful claim to the fees. *Malone v. City of Decatur,* No. 5:16-cv-00483-MHH, 2018 WL 4901212, at *9 (N.D. Ala. Oct. 9, 2018) (holding that even if incarcerations were unconstitutional, the defendants were statutorily entitled to fees and thus there was no extortion under the Hobbs Act).

Appellants attempt to distinguish well-established precedent by arguing that the *Enmons* "lawful claim" defense has been limited to the labor union strike context. (Appellants' Br. at 44.)[9] *Enmons*, however, has only been limited to the extent the wrongful means employed were

---

[9] Appellants' rely principally on *Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*, 585 F. Supp. 2d 789 (E.D. Va. 2008). (Appellants' Br., at 44). Opinions by the United States District Court for the Eastern District of Virginia have no binding effect on this Court. But more importantly, *Smithfield Foods* does not involve the Hobbs Act, which is the sole "predicate act" alleged by Plaintiffs. 585 F. Supp. 2d at 800 ("The present case, which involves neither the Hobbs Act nor striking workers, is neither analogous nor controlled by *Enmons*.").

45

threats of **physical** force or violence. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 522–24 (3d Cir. 1998) (citing cases).

Where there is no threatened or actual physical violence, "[t]he limitation we apply is that set forth in *Enmons:* that a defendant is not guilty of extortion if he has a lawful claim to the property obtained." *Id.* at 523. As one court explained, the *Enmons* lawful claim defense is inapplicable only to demands "asserted in an inherently unlawful manner, the use or threat of physical violence being an obvious example. . . . [Y]ou cannot beat someone up to collect a debt, even if you believe he owes it to you." *United States v. Zappola*, 523 F. Supp. 362, 367–68 (S.D.N.Y. 1981), *aff'd,* 677 F.2d 264 (2d Cir. 1982); *see also, e.g.*, *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 838 (9th Cir. 2014) ("Where violence or violent threats are concerned, the claim of right defense is strictly limited to employer-union labor disputes. But courts have recognized a claim of right defense where property is obtained through the use of fear of economic loss, which is not 'inherently' wrongful.") (citations omitted); *United States v. Castor*, 937 F.2d 293, 299 (7th Cir. 1991) (stating *Enmons* defense does "not reach extortions based on threats of physical violence outside the labor

46

context"); *United States v. Sturm*, 870 F.2d 769, 772–73 (1st Cir. 1989)

("Although it may be appropriate not to recognize a claim of right defense

in extortion cases based on the wrongful use of force or violence, different

considerations apply in the context of extortion based on economic

fear.").[10]

Thus, as alleged by the Appellants, AmWaste and the City did not

commit extortion as defined in the Hobbs Act because they had a lawful

claim to the money and therefore did not use wrongful means to obtain a

wrongful objective. Because Appellants did not plead a predicate act of

extortion under the Hobbs Act, the RICO claim fails. *Am. United Life Ins.*

*Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) ("RICO claims . . .

---

[10] The cases cited by Appellants both involved physical violence. (Appellants' Br. at 44). For example, in *United States v. Agnes*, the defendant had used assaulted and threats of severe violence to obtain property. 753 F.2d 293, 296–97 (3d Cir. 1985), *abrogated on other grounds by Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir. 1998). Similarly, in *United States v. Warledo*, 557 F.2d 721, 723–24 (10th Cir. 1977), the defendants threatened to take people hostage, use explosive to stop the trains, and kill the crewmembers. The defendants thereafter attempted to make good on those threats by starting a fire on the train tracks. *Id.* at 724.

cannot be maintained if the underlying predicate acts lack legal validity."). This is simply not a racketeering case.

### C.    Appellants do not rule out the obvious alternative explanation.

In addition to the conclusory pleading, factual omissions, and implausible inferences, Appellants failed to explain why any of their allegations prove an elaborate, unconstitutional extortion scheme rather than a simple, run-of-the-mill contractual arrangement. In ruling on a motion to dismiss, courts must disregard all conclusory allegations and unwarranted deductions of fact, and then, from the remaining factual allegations, infer "'obvious alternative explanations' which suggest lawful conduct." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)). The only facts alleged in SAC are as follows:[11]

---

[11] The SAC also alleges that AmWaste "knew," "was aware," "understood," "agreed," "assent[ed]," and "approved" of the alleged scheme to use the penal system to punish Appellants for failing to pay their solid waste fees. (*See generally* ECF No. 31.) All such assertions are wholly conclusory and utterly unsupported by any facts. *See DiPietro v. Med. Staff at Fulton Cty. Jail*, 805 F. App'x 793, 796 (11th Cir. 2020) (holding "speculative allegations" that supervisory officials "must have

48

- Alabama law authorizes municipalities to charge residents fees for garbage collection and to contract with private entities to provide residential solid waste collection. (ECF No. 31 at ¶¶ 33, 35.)

- In 2019, AmWaste entered into an agreement with the City to provide garbage collection services. (*Id.* at ¶ 34.)

- Pursuant to that contract, AmWaste collected residential solid waste, and the City paid AmWaste for its services. (*Id.* at ¶ 70.)

- Appellants were arrested, imprisoned, and fined for failing to pay solid waste fees. (*Id.* at 2–4.)

- Appellants were charged additional fees and court costs, and had to pay fines and bail bonds. (*Id.* at ¶¶ 27, 29.)

---

known and approved" the actions or omissions at issue failed to state a "plausible claim for relief," as "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal") (citation omitted); *Am. Dental Ass'n*, 605 F.3d at 1293–94 (rejecting statements that defendant "with knowledge and intent, agreed to the overall objective of the conspiracy" as "wholly conclusory").

49

The factual allegations do not support the inference that AmWaste and the City were attempting to make money or instill fear in residents by criminally prosecuting and punishing them, "as opposed to the 'obvious alternative explanation,'" that AmWaste simply collected garbage pursuant to a contractual relationship with the City. *Cisneros* 972 F.3d at 1212 (quoting *Twombly*, 550 U.S. at 567). Appellants' only actual fact—the existence of a contract between AmWaste and the City— does not nudge their claims to the point of plausibility. Appellants have failed to explain why these ordinary business operations are less plausible than an unconstitutional conspiracy or RICO enterprise. *See, e.g.*, *Almanza*, 851 F.3d at 1071 (dismissing RICO claims where "Appellants have not explained why their economic model should be accepted as plausible"); *see also Iqbal*, 556 U.S. at 682 ("As between that 'obvious alternative explanation' for the arrests and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." (quoting *Twombly*, 550 U.S. at 567)).

The SAC provides no factual basis from which to infer that AmWaste agreed with the City that the best way to collect residential solid waste fees is to have an independent actor arrest, imprison, and

50

prosecute citizens. Instead, the obvious explanation is that AmWaste operated its normal garbage collection business in accordance with its contract with the City.

## VI    CONCLUSION

The District Court properly dismissed all claims against AmWaste with prejudice. This Court should affirm the dismissal.

s/ Benjamin B. Coulter
Benjamin B. Coulter
Callie L. Barrow

Counsel of Record for the
Appellee, AmWaste, LLC

OF COUNSEL:

BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, Alabama 35203
(205) 251-3000
bcoulter@burr.com
cbarrow@burr.com

53598735 v2

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in 14-point Century Schoolbook, which is a proportionally spaced font that includes serifs.

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 10,138 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Eleventh Circuit Rule 32-4.

s/ Benjamin B. Coulter
Benjamin B. Coulter
Callie L. Barrow

Counsel of Record for the
Appellee, AmWaste, LLC

Dated:  April 22, 2024

52

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2024, a copy of the foregoing Brief of Appellee AmWaste, LLC has been electronically filed with the Clerk of the Court using the CM/ECF system, which will serve it on the CM/ECM participants.

s/ Benjamin B. Coulter
Benjamin B. Coulter
Callie L. Barrow

Counsel of Record for the
Appellee, AmWaste, LLC

53598735 v2