**USCA NO.: 24-10120-J**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

**SANTORI LITTLE, et al.,**

**Plaintiffs/Appellants,**

**v.**

**THE CITY OF VALLEY, ALABAMA, et al.,**

**Defendants/Appellees.**

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

_____

**BRIEF OF APPELLEE
THE CITY OF VALLEY, ALABAMA**

_____

**Robbie Alexander Hyde
Bart Harmon
ALEXANDER HYDE, LLC
2138 Moore's Mill Road, Ste. A
Auburn, Alabama  36830
Telephone:  (334) 246-2333
Fax:  (334) 246-2334
E-mail:  robbie@alexanderhyde.com**

**Attorneys for Defendant/Appellee
The City of Valley, Alabama**

## USCA NO.: 24-10120-J

_____

## SANTORI LITTLE, et al.,

## Plaintiffs/Appellants,

## v.

## THE CITY OF VALLEY, ALABAMA, et al.,

## Defendants/Appellees.

_____

## <u>CERTIFICATE OF INTERESTED PERSONS AND ENTITIES</u>

The undersigned counsel of record for Appellee the City of Valley, Alabama, certifies that the following persons or entities have an interest in the outcome of this case:

1.  AmWaste, LLC – Defendant below;

2.  Allan L. Armstrong – Attorney for AmWaste, LLC, Defendant below;

3.  Callie Leopard Barrow – Attorney for Plaintiffs below;

4.  William J. Baxley – Attorney for Plaintiffs below;

5.  Darrell L. Cartwright – Attorney for AmWaste, LLC, Defendant below;

6.  Brian Michael Clark – Attorney for Plaintiffs below;

7.  Benjamin Brock Coulter – Attorney for Plaintiffs below;

Little, et al. v. City of Valley, et al.
USCA No.: 24-10120-J

8.    Charles Gray – Plaintiff below;

9.    Bart Harmon – Alexander Hyde, LLC, Attorney for City of Valley,
      Alabama, Defendant below;

10.   Hon. R. Austin Huffaker, Jr. – United States Magistrate Judge for
      the Middle District of Alabama;

11.   Robbie Alexander Hyde – Alexander Hyde, LLC, Attorney for City
      of Valley, Alabama, Defendants below;

12.   Santori Little – Plaintiff below;

13.   Tamara Khelifa – Plaintiff below;

14.   City of Valley, Alabama – Defendant below;

15.   John Mark White – Attorney for Plaintiff below.

In accordance with Fed.R.App.P. 26.1, no corporate disclosure statement
is required from Appellee City of Valley as it is a governmental entity.  Appellee
City of Valley knows of no publicly traded company or corporation having an
interest in the outcome of this appeal.

                              **s/Robbie Alexander Hyde**
                              ROBBIE ALEXANDER HYDE (ALE023)
                              BART HARMON (HAR127)
                              Attorneys for Defendant/Appellee City of
                              Valley, Alabama

## STATEMENT REGARDING ORAL ARGUMENT

Appellee the City of Valley, Alabama does not request oral argument. The applicable case law is fully developed and clear while the briefs and record set forth an adequate basis upon which to decide the matters presented.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND ENTITIES...................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................ iii

TABLE OF CONTENTS................................................................................ iv

TABLE OF AUTHORITIES ........................................................................ vii

STATEMENT OF THE ISSUES.........................................................................1

STATEMENT OF THE CASE............................................................................2

STANDARD OF REVIEW ...............................................................................8

SUMMARY OF THE ARGUMENT .................................................................8

ARGUMENT .....................................................................................................9

I.    THE DISTRICT COURT BELOW PROPERLY APPLIED MONELL'S
      REASONING TO CONCLUDE THAT STATE COURT OFFICIALS,
      RATHER THAN THE CITY OF VALLEY, WERE THE "MOVING
      FORCE" BEHIND APPELLANTS' ARRESTS. .....................................9

      A.    The District Court accurately framed the dispositive issue before
            it—causation under Monell. .......................................................... 10

      B.    The District Court properly applied Monell's tenets to the facts of
            the Second Amended Complaint and Alabama law, resulting in an
            affirmable dismissal of Appellants' § 1983 claims....................... 13

II.   THE DISTRICT COURT WAS RIGHT TO DECLINE APPELLANTS'
      INVITATION TO DIVERGE FROM MONELL AND ITS
      ESTABLISHMENT OF A "RIGOROUS" STANDARD FOR PROVING
      CAUSATION IN FAVOR OF THE FAR MORE LENIENT "BUT FOR"
      TEST APPELLANTS ADVOCATED................................................... 18

      A.    Supreme Court authority has rejected the kind of but-for causation
            advocated by Appellants as being contrary to Monell's requirement
            of "direct" causation..................................................................... 18

B.     But-for causation is inconsistent with Eleventh Circuit precedent. ...................................................................................... 21

C.     Other Circuits, including our sister circuit, the Fifth, have *explicitly* rejected a but-for test of causation in the context of <u>Monell</u> liability. ...................................................................................... 24

D.     The holding of <u>Carter v. City of Montgomery</u> is an insufficient basis to impose but-for causation and to justify reversal; other federal district court opinions that run counter to <u>Carter</u> provide superior persuasive authority........................................................................ 25

III.   APPELLANTS' CONSTITUTIONAL CLAIMS COULD HAVE BEEN DISMISSED ON A HOST OF ALTERNATIVE GROUNDS IF THE DISTRICT COURT HAD NOT FOUND LACK OF CAUSATION TO BE DISPOSITIVE. .................................................................... 32

A.     Appellants failed to plausibly allege any arrest or incarceration based solely on their inability to pay garbage collection fees. ..... 32

B.     Appellants failed to state a plausible Substantive Due Process claim. ...................................................................................... 34

1.     The rights asserted here by Appellants are not "deeply rooted in our legal tradition." ......................................................... 35

2.     The Second Amended Complaint lacks any plausible pleading of arbitrary action. ............................................... 38

3.     Other constitutional provisions are better "fits" for these facts, although they will not ultimately provide Appellants any relief either. ......................................................... 38

C.     Appellants failed to state a plausible claim for conspiracy to violate 42 U.S.C. § 1983. ......................................................... 39

D.     Appellants failed to state a plausible Eighth Amendment claim. . 41

E.     The District Court could have abstained from exercising jurisdiction based on the <u>Younger</u> abstention doctrine. ................................... 43

F.     The District Court could have determined that the <u>Rooker-Feldman</u> doctrine barred Appellants' claims. .............................................. 44

G.     The District Court could have held that the doctrine articulated in <u>Heck v. Humphrey</u> barred Appellants' action. .............................. 45

IV.    THE FACTS ALLEGED IN APPELLANTS' SECOND AMENDED COMPLAINT DO NOT COME CLOSE TO STATING A PLAUSIBLE RICO CLAIM UNDER 18 U.S.C. § 1962. .............................................. 45

V.     THE APPLICABLE STATUTE OF LIMITATIONS BARS APPELLANT SANTORI LITTLE'S CLAIMS, AND SHE LACKS STANDING TO BRING THIS ACTION AS A RESULT..................... 49

CONCLUSION ................................................................................ 51

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION 52

CERTIFICATE OF SERVICE .......................................................... 53

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Albright v. Oliver</u>, 510 U.S. 266, 114 S. Ct. 807 (1994).................................. 38

<u>Ally v. Ally</u>, No. 1:19-cv-01282, 2019 U.S. Dist. LEXIS 137456 (M.D. Pa. Aug.

    13, 2019) ................................................................................................ 13

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937 (2009) .................................. 33

<u>Barnes v. Goggans</u>, No. 2:20-CV-811-WHA, 2021 U.S. Dist. LEXIS 15057

    (M.D. Ala. Jan. 5, 2021) .............................................................. 43

<u>Bd. of the Cty. Comm'rs v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382 (1997)passim

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) ....................................... 8

<u>Benson v. Andalusia</u>, 240 Ala. 99 (Ala. 1940)........................................... 36, 37

<u>Bey v. Vega</u>, 588 F. App'x 923 (11th Cir. 2014) ................................................ 3

<u>Bray v. State</u>, 140 Ala. 172 (Ala. 1903) ........................................................... 37

<u>Camp v. Corr. Med. Servs</u>., 668 F. Supp. 2d 1338 (M.D. Ala. 2009)......... 23, 29

<u>Carden v. Town of Harpersville</u>, No. 2:15-cv-01381-RDP, 2017 U.S. Dist.

    LEXIS 153752 (N.D. Ala. Sep. 21, 2017)....................................... 46, 47, 48

<u>Carter v. City of Montgomery</u>, 473 F. Supp. 3d 1273 (M.D. Ala. 2020)... passim

<u>City of Canton v. Harris</u>, 489 U.S. 378, 109 S. Ct. 1197 (1989)................. 20, 25

<u>City of Leeds v. Town of Moody</u>, 294 Ala. 496, 319 So. 2d 242 (Ala. 1975).. 14

<u>Connick v. Thompson</u>, 563 U.S. 51, 131 S. Ct. 1350 (2011)............................ 12

Crawford's Auto Center, Inc. v. State Farm Mut. Auto. Ins. Co., 945 F.3d 1150 (11th Cir. 2019)............................................................................. 46

D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983) ................................. 44

Estate of Bonilla v. Orange Cty., 982 F.3d 298 (5th Cir. 2020)........................ 25

Fair Hous. Agency of Ala. v. Williams, Nos. 05-0285-KD-M, 05-0291-KD-M, 2006 U.S. Dist. LEXIS 39154 (S.D. Ala. June 13, 2006) ............................ 14

Ford v. Griswald, No. 22-11774, 2023 U.S. App. LEXIS 12541 (11th Cir. May 22, 2023)............................................................................................... 49

Fraire v. Arlington, 957 F.2d 1268 (5th Cir. 1992) ........................................... 24

Genty v. RTC, 937 F.2d 899 (3d Cir. 1991)....................................................... 49

Graham v. Connor, 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). 38

Grech v. Clayton Cnty., 335 F.3d 1326 (11th Cir. 2003)........................... passim

Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994)................................. 45

Hill v. Hous. Cty. Judicial , No. 5:17-cv-00481-TES-MSH, 2018 U.S. Dist. LEXIS 86617 (M.D. Ga. Apr. 16, 2018)..................................................... 42

Hillcrest Prop., LLP v. Pasco Cty., 915 F.3d 1292 (11th Cir. 2019)..... 34, 35, 38

Holston v. Dawson, No. 2:21-cv-202-SPC-NPM, 2022 U.S. Dist. LEXIS 73623 (M.D. Fla. Mar. 9, 2022)............................................................................. 40

Joe Nathan James v. AG, No. 22-12345, 2022 U.S. App. LEXIS 20579 (11th Cir. July 26, 2022)............................................................................................. 35

Jones v. Childers, 18 F.3d 899 (11th Cir. 1994).................................. 46

Jones v. City of Birmingham, No. 2:19-cv-01122-AKK, 2019 U.S. Dist. LEXIS

      209473 (N.D. Ala. Dec. 5, 2019).................................................... 34

Lavender v. Tuscaloosa, 198 So. 459 (Ala. 1940)............................................ 37

Lee v. State, 75 Ala. 29 (Ala. 1883) .................................................... 37

Lehman v. Lucom, 727 F.3d 1326 (11th Cir. 2013).......................................... 50

Leonard v. Ala. State Bd. of Pharmacy, 61 F. 4th 902 (11th Cir. 2023)........... 43

Lewis v. City of Decatur, No. 7:18-cv-02050-LSC-JHE, 2019 U.S. Dist. LEXIS

      224412 (N.D. Ala. Dec. 6, 2019).................................................... 42

Lewis v. Clay, No. 4:16-cv-00287-LSC-HGD, 2016 U.S. Dist. LEXIS 151151

      (N.D. Ala. Sep. 9, 2016) .............................................................. 16

Lewis v. Reyes, No. 5:22-cv-650-JA-PRL, 2023 U.S. Dist. LEXIS 50461 (M.D.

      Fla. Mar. 23, 2023) .............................................................. 24, 29

Maddox v. Stephens, 727 F.3d 1109 (11th Cir. 2013) ...................................... 35

Marsh v. Butler County, 268 F.3d 1014 (11th Cir. 2001) ................................. 23

Marshall v. United States HUD, No. 1:19-CV-0460-JPB-JSA, 2020 U.S. Dist.

      LEXIS 269253 (N.D. Ga. Apr. 3, 2020)........................................ 34

May v. Morgan Cnty. Ga., 878 F.3d 1001 (11th Cir. 2017)............................. 44

McCullough v. City of Montgomery, No. 2:15-cv-463 (RCL), 2017 U.S. Dist.

      LEXIS 34492 (M.D. Ala. Mar. 10, 2017) .................................... 48

McDowell v. Brown, 392 F.3d 1283 (11th Cir. 2004) ...................................... 24

Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018

    (1978) ............................................................................................ passim

Morgan v. Tice, 862 F.2d 1495 (11th Cir. 1989)................................................ 28

Okla. City v. Tuttle, 471 U.S. 808, 105 S. Ct. 2427 (1985) ................. 11, 20, 28

Paez v. Sec'y, Fla. Dep't of Corr., 947 F.3d 649 (11th Cir. 2020)....................... 3

Patton v. State, 964 So. 2d 1247 (Ala. Crim. App. 2007) ................................. 16

Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292 (1986) ....... 11, 28

Ray v. Judicial Corr. Servs., No. 2:12-cv-02819-RDP, 2017 U.S. Dist. LEXIS

    22667 (N.D. Ala. Feb. 17, 2017) ........................................................... 29, 30

Ruiz-Cortez v. City of Chi., 931 F.3d 592 (7th Cir. 2019)................................. 25

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)......................................... 46

Shepherd v. Wilson, 663 F. App'x 813 (11th Cir. 2016) ................................... 33

Smith v. Smith, 380 So. 2d 897 (Ala. Civ. App. 1980)..................................... 36

Sosa v. Martin Cty., 57 F.4th 1297 (11th Cir. 2023)......................................... 34

Stephens v. City of Mobile, CV No. 93-0661-AH-M, 1995 U.S. Dist. LEXIS

    3652 (S.D. Ala. Mar. 13, 1995) ..................................................................... 13

Stinson v. Jackson, No. 2:12-CV-412-TMH [WO], 2012 U.S. Dist. LEXIS 79206

    (M.D. Ala. May 10, 2012) ............................................................................. 43

Swann v. So. Health Partners, Inc., 388 F.3d 834 (11th Cir. 2004) ................... 8

Teagan v. City of McDonough, 949 F.3d 670 (11th Cir. 2020)................. passim

Telesca v. Village of Kings Creek Condo. Ass'n, Inc., 390 F. App'x 877 (11th

Cir. 2010) ....................................................................... 50

Turner v. Williams, 65 F.4th 564 (11th Cir. 2023)......................... 15, 16, 17, 31

Van Ort v. Estate of Stanewich, 92 F.3d 831 (9th Cir. 1996) ........................... 25

Walker v. City of Calhoun, GA, 901 F.3d 1245 (11th Cir. 2018).................... 42

Williams v. Bennett 689 F. 2d 1370 (11th Cir. 1982) ....................................... 28

Woodard v. Town of Oakman, 885 F. Supp. 2d 1216 (N.D. Ala. 2012)27, 30, 31

Younger v. Harris, 401 U.S. 37 (1971)............................................................. 43

Statutes

18 U.S.C. § 1962(c) ......................................................... 2, 8, 45, 50

42 U.S.C. § 1983.................................................................... 11, 39

Ala. Code § 12-12-30 (1975) ........................................................ 16

Ala. Code § 22-27-5 (1975) ......................................................... 6, 45

Ala. Code § 22-27-7 (1975) ............................................................ 4

Ala. Code § 6-6-227 (1975) ......................................................... 36

Other Authorities

WORKING PAPER: LOCAL SELF GOVERNMENT IN ALABAMA, 33

Cumb. L. Rev. 245 (2003) .......................................................... 14

<u>Rules</u>

Ala. R. Crim. P. 7.2 (b) ........................................................................ 41

Fed. R. Evid. 201 ................................................................................ 3

## <u>STATEMENT OF THE ISSUES</u>

I.      THE DISTRICT COURT BELOW PROPERLY APPLIED <u>MONELL</u>'S REASONING TO CONCLUDE THAT STATE COURT OFFICIALS, RATHER THAN THE CITY OF VALLEY, WERE THE "MOVING FORCE" BEHIND APPELLANTS' ARRESTS.

II.     THE DISTRICT COURT WAS RIGHT TO DECLINE APPELLANTS' INVITATION TO DIVERGE FROM <u>MONELL</u> AND ITS ESTABLISHMENT OF A "RIGOROUS" STANDARD FOR PROVING CAUSATION IN FAVOR OF THE FAR MORE LENIENT "BUT FOR" TEST APPELLANTS ADVOCATED.

III.    APPELLANTS' CONSTITUTIONAL CLAIMS COULD HAVE BEEN DISMISSED ON A HOST OF ALTERNATIVE GROUNDS, IF THE DISTRICT COURT HAD NOT FOUND LACK OF CAUSATION UNDER <u>MONELL</u> TO BE DISPOSITIVE.

IV.     THE FACTS ALLEGED IN APPELLANTS' SECOND AMENDED COMPLAINT DO NOT COME CLOSE TO STATING A PLAUSIBLE RICO CLAIM UNDER 18 U.S.C. § 1962(c).

V.      THE APPLICABLE STATUTE OF LIMITATIONS BARS APPELLANT SANTORI LITTLE'S CLAIMS, AND SHE LACKS STANDING TO BRING THIS ACTION AS A RESULT.

1

## STATEMENT OF THE CASE

**(i)     Nature of the Case**

Appellants Santori Little, Charles Gray and Tamara Khelifa appeal the District Court's Order dismissing their Second Amended Complaint, with prejudice, because it failed, as a matter of law, to plausibly state a claim for constitutional injuries or for violation of the RICO Act at 18 U.S.C. § 1962(c). (Docs. 42, 43.)

**(ii)    Course of Proceedings Below**

Appellee the City of Valley adopts and incorporates the "Course of Proceedings Below" as set forth in Appellants' principal brief, Pgs 3-4.

**(iii)   Statement of Facts**

Appellee City of Valley is in agreement with many of the facts set out in Appellants' "Statement of Facts" but not all.[1]   Instead of partially adopting

---

[1] The biggest difference involves each party's reading of Appellants' criminal records.  Appellants stress verbiage in the records referring to their criminal charge being failure to pay their garbage collection fees.  The City of Valley agrees that all their arrests were *in the context of* a criminal case initiated for non-payment of garbage collection fees, which is explicitly provided for in Valley's ordinance and the state's enabling legislation.  What Appellants leave out of their facts (and ignore in their brief) however is the fact that these same records additionally reveal their arrests came only after they failed to appear for a hearing in the criminal case that arose out of their failure to pay.  The failure to appear is obvious in Gray's and Khelifa's records, and with respect to Little's 2013 arrest. (See footnote 4 to this brief). Of course, the importance of Little's records are greatly diminished in light of her arrests being so far outside the statute of limitations. Consequently, the only plausible reading of this record is that, while Appellants' failure to pay generated their criminal cases, it was their failure to appear that triggered their arrests.

Appellants' version of the facts, the City sets out its own version. Of course, many of Appellants' allegations will turn out <u>not</u> to be the "actual facts."

Pursuant to the appropriate standard of review on a Rule 12(b)(6) motion, this Court should assume the well-pled facts in the Second Amended Complaint to be true, as did the District Court below. Additionally, the reviewing court can take judicial notice of the contents of official court dockets and criminal complaints.[2] Any official documents on which Appellee City of Valley relied in its arguments below were provided as exhibits and filed with the District Court without objection by Appellants.

## A.    <u>The City of Valley's statutorily authorized waste collection system</u>.

The Second Amended Complaint concedes that municipalities like Valley are authorized by state law to enter into waste collection contracts with private entities. The same state enabling statutes, per the Second Amended Complaint, authorize the participating cities to enforce related rules and regulations by resort to criminal process: "[P]ersons violating rules and regulations promulgated under the solid waste provisions 'shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than $50.00, not more than $200, and if the violation or failure or refusal to obey or comply with such provision of this article or such rule or regulation

---

[2] <u>See</u> Fed. R. Evid. 201. <u>See also</u>, <u>Bey v. Vega</u>, 588 F. App'x 923, 926 (11th Cir. 2014) and <u>Paez v. Sec'y, Fla. Dep't of Corr.</u>, 947 F.3d 649, 652 (11th Cir. 2020).

3

is a continuing one, each day's violation shall constitute a separate offense and be punished accordingly."  (Doc 31 - Pg 6, quoting Ala. Code, § 22-27-7 (1975).)

The Second Amended Complaint likewise concedes that Valley enacted city ordinances in order to participate in such a garbage collection program for its citizens pursuant to Alabama Code § 22-27-7.  Valley's municipal code set the garbage collection fee at $17.50 per month, described the billing procedures, and then established penalties for non-payment.  The criminal aspect of enforcement set out in Valley's municipal code "mirror[ed]" the language of the state's enabling legislation.  (Doc 31- Pg 7.)

The City of Valley, pursuant to its statutory powers, contracted with Amwaste, LLC, a private corporation whose principal place of business is Sylva Springs in Jefferson County, Alabama. (Doc 31 - Pg 2.) According to the Second Amended Complaint, Amwaste knowingly participated in this system which allowed Valley residents who failed to pay their garbage collection fees to be jailed and/or threatened with jail. (Doc 31 - Pg 13.)[3]

**B.**   **Facts relative to Santori Little.**

There is no evidence (or allegation) that Plaintiff Santori Little has been arrested within the applicable statute of limitations.  Little's only arrests came in

---

[3] Nowhere does the Second Amended Complaint identify exactly who was issuing such threats.

4

2011 and 2013, far outside the statute of limitations' reach. (See Doc 31 - Pgs 2-3.) As a consequence, none of the remaining allegations concerning Ms. Little are relevant. Nonetheless, there is documentary evidence that Ms. Little's 2013 arrest came only *after* a failure to appear in Court. Four documents in the Chambers Court District Court records specifically reference a "fail[ure] to appear" or its abbreviation "FTA" on the part of Little. (See Doc 22-1 - Pgs 9-12, Ex. A.)[4]

## C.    Facts relative to Charles Gray.

According to the Second Amended Complaint, in late 2021, Plaintiff Charles Gray was delinquent on his garbage bill. (Doc 31 - Pg 3.) According to the criminal complaint in his district court case, Gray "failed to pay for three months of trash service. After receiving the bill for three months, then a citation, two door hangers on the residence, and multiple attempts at a phone call[,] *he missed his January 12, 2022 court date.* Mr. Gray owes a total of 104.92 dollars to the City of Valley." (Doc 35-2 - Pg 7, Ex. B) (Emphasis added).

---

[4] Apparently, the final four pages of this Exhibit A (Doc 22-1), though filed without objection with Valley's brief in support of its *first* Motion to Dismiss (Doc.22), were inadvertently omitted from Exhibit A filed in support of Valley's *second* Motion to Dismiss (Doc 35). (See Doc 35-1.) Consequently, these pages were a part of the record below. Appellants even refer to and rely on this document, Doc 22-1, at page 10 of their Appellants' brief. They can hardly object to the inclusion of Doc 22-1 in the Appellee's Appendix. Nonetheless, given the basis of the District Court's ruling and the remoteness of Little's arrests (2011 and 2013), the presence or absence of these four pages should not affect this Court's ruling. The City of Valley will add Exhibit A filed with its first Motion to Dismiss (Doc 22-1), which included four pages omitted from the Exhibit A filed in support of its second Motion to Dismiss, to its Appendix for the Court's consideration. The Court can, of course, allocate to these documents any weight it deems appropriate.

Only after Gray missed his court date on January 12, 2022, did the Chambers County District Court Magistrate Debra Powers issue an arrest warrant for Gray concerning the charge of Failure to Pay Solid Waste fees, referencing Alabama Code § 22-27-5. (Doc 31 - Pg 3 and 35-2 - Pg 7, Ex. B.) On January 14, 2022, Mr. Gray was served with the district court warrant and taken to the Chambers County Jail after processing.[5] After spending six days in jail while awaiting bail, Mr. Gray posted a $2500.00 bond and was released. (Doc 31 - Pg 3.)

On March 9, 2022, Mr. Gray pled guilty, and was ordered to pay costs, a $25.00 bond fee, and $104.92 to the City of Valley in installments. (Id.)

### D.    Facts relative to Tamara Khelifa.

According to the Second Amended Complaint, on or about November 30, 2022, Tamara Khelifa was served with an arrest warrant and jailed for failing to pay her City of Valley Solid Waste fees. (Doc 31 - Pg 4.) However, according to the criminal complaint in Ms. Khelifa's case, "Ms. Khelifa was issued a citation of the 18[th] of July, 2022 for not paying her trash bill for the months of May, June, and July in the year of 2022. Her total is 85 dollars. She was issued a bill for each month. Calls were made to the number she provided, and a door hanger was left on the residence in question. She has failed to pay *and she failed to show up for court*."

---

[5] The City of Valley uses the county jail for detentions requiring an overnight stay.

(Doc 35-3 - Pg 7, Ex. C) (Emphasis added).

Ms. Khelifa posted bond in the amount of $2500.00 and was immediately released from jail. (Doc 31 - Pg 4.*) Her bond noted FTA meaning failure to appear.* (Doc 35-2 - Pg 8, Ex. C.)

Ms. Khelifa appeared in Court and pled guilty to the charge, paid a bail fee, and set up a payment plan to pay her garbage bill. (Doc 31 - Pg 4.)

## STANDARD OF REVIEW

This Court conducts a *de novo* review of a federal district court's order granting a motion to dismiss.  Swann v. So. Health Partners, Inc., 388 F.3d 834, 836 (11th Cir. 2004).  A motion to dismiss under Rule 12(b)(6) is proper when the complaint does not assert sufficient facts to support a plaintiff's theory of recovery.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## SUMMARY OF THE ARGUMENT

The District Court properly dismissed the constitutional claims asserted against the City of Valley in Appellants' Second Amended Complaint because it failed to overcome Monell's strict requirements with respect to causation.  Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018 (1978).

Appellants' attempt to state a claim against Appellees City of Valley and AmWaste for violation of the RICO Act at 18 U.S.C. § 1962(c) was patently futile.  Appellants' allegations never even approached pleading a plausible RICO claim against them.  The District Court appropriately dismissed this claim as well.

# **ARGUMENT**

## I.    THE DISTRICT COURT BELOW PROPERLY APPLIED <u>MONELL</u>'S REASONING TO CONCLUDE THAT STATE COURT OFFICIALS, RATHER THAN THE CITY OF VALLEY, WERE THE "MOVING FORCE" BEHIND APPELLANTS' ARRESTS.

Although there were numerous alternative grounds upon which the District Court could have relied to dismiss the Appellants' Second Amended Complaint, it appropriately chose the most direct "route": Appellants' failure to overcome their causation burden under <u>Monell</u>. Given the way Alabama's criminal justice system is set up, there was no plausible way to find that the City of Valley was the "moving force" behind arrests it had no power to bring about. Even if the City desired to arrest citizens *merely* because they fell behind on paying their garbage collection fees (although the well-pled facts fail to plausibly establish that), no arrests could have occurred without a state court prosecutor filing an action, a state-court magistrate issuing an arrest warrant and a state court judge (with the power to quash warrants, set bail and dismiss actions) presiding over each district court proceeding. Alabama's district court structure was the insuperable bar that made it impossible for Appellants to plausibly plead that the City of Valley was the "moving force" behind their arrests and alleged injuries. No amount of artful pleading could mend the break in causation created by the discretionary power given to these state court

9

officials by Alabama law.

**A.    The District Court accurately framed the dispositive issue before it—causation under Monell.**

Before plugging in the facts of the Second Amended Complaint to its analysis, the District Court's initial task was to set out the proper framework in which to analyze Appellants' claims. The logical starting place for that analysis was the question of causation as defined by Monell and its progeny: "The threshold question here, one Plaintiffs fail to pass, is whether Plaintiffs have shown 'that the local government entity . . . has authority and responsibility of the governmental function at issue[.]" (Doc 42 - Pgs 6,7) (citing Teagan v. City of McDonough, 949 F.3d 670, 675 (11th Cir. 2020) (quoting Grech v. Clayton Cnty., 335 F.3d 1326, 1330 (11th Cir. 2003) (en banc)).

If the City of Valley lacked the authority and responsibility to bring about Appellants' arrest and instead a non-municipal entity, in this case the state district court, actually bore this authority and responsibility, the District Court reasoned, then Appellants had failed to meet their Monell burden.

> To succeed, Plaintiffs must show the City had the authority and responsibility to take the actions they claim violated their federal rights and, if attributable to the district court, whether the district court acted on behalf of the City when it decided to take those actions—regardless of whether those actions were the sole result of Plaintiffs' failure to pay garbage bills or, as the City contends, Plaintiffs' failure to appear in court. If Plaintiffs do not make such a showing, the City is not liable under § 1983.

10

(Doc 42 - Pg 8.)

The District Court's identification of what <u>Monell</u> required of the Appellants in this case was spot-on, well-supported in Supreme Court and Eleventh Circuit authority.  The core of <u>Monell</u> is, of course, the acknowledgment that while municipalities can be deemed "persons" for purposes of being liable for constitutional torts under 42 U.S.C. § 1983, governmental entities like cities do not function in the real world like "persons" do.  <u>See Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479, 106 S. Ct. 1292, 1298 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.") (Emphasis in original). Consequently, municipal governments can only be held liable for their formally approved official policies, widespread practices known to and condoned by the municipality[6], and, in certain cases, the actions of city employees deemed to be final

---

[6] Appellants' reliance on the language of <u>Okla. City v. Tuttle</u>, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985) describing municipal liability premised on "a course of action consciously chosen from among various alternatives" is misplaced.  First, <u>Tuttle</u>'s holding reversed a decision of the Eighth Circuit that was adverse to the municipal defendant, Oklahoma City.  Second, the phrase relied on by Appellants was written in the context of a plaintiff trying (but ultimately failing) to hold the municipality liable for the *conduct of its own employees* (after the municipality had chosen from among various programs to train those employees).  <u>Tuttle</u> has no

policymakers.  See generally, Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978); Connick v. Thompson, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011).

Cities can never be liable for damages under § 1983 for the actions of their officials or employees simply based on the existence of an employer-employee relationship.  And they certainly can never be liable for the intervening independent actions of third parties whom they do not even employ.  Intervening independent acts carried out by third parties break the chain of causation required to exist between a city's actions and a later constitutional injury.  Such a break in the chain of causation renders a claim of municipal liability unsustainable pursuant to a long line of cases beginning with Monell.

Under § 1983, "a municipality cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Monell, 436 U.S. at 691.  Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Id. at 694.

---

application to a scenario, like the instant one, based on the actions of non-municipal officials over whom the city has no control.

"Claims not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof." Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 406, 117 S. Ct. 1382, 1389 (1997). Finally, the high court warned that, "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." Id.

It should be obvious that before a city can incur liability under Monell, the alleged tortfeasors must be municipal officials or employees, or at least agents, of the municipality. See Stephens v. City of Mobile, CV No. 93-0661-AH-M, 1995 U.S. Dist. LEXIS 3652, at *7-8 (S.D. Ala. Mar. 13, 1995) ("[M]aking the City of Mobile liable for the actions of officers who are not employees of the City of Mobile would be an [unwarranted] extension of the Monell doctrine); Ally v. Ally, No. 1:19-cv-01282, 2019 U.S. Dist. LEXIS 137456, at *8 (M.D. Pa. Aug. 13, 2019) ("The borough or its police department cannot be held liable here under Monell because the alleged injury to Jonathan was caused by private third parties, not employees or agents of the municipality.").

**B.    The District Court properly applied Monell's tenets to the facts of the Second Amended Complaint and Alabama law, resulting in an affirmable dismissal of Appellants' § 1983 claims.**

Once the District Court established the proper Monell analytical framework, it then proceeded to accurately apply that analysis to the well-pled facts of the

Second Amended Complaint in the context of Alabama law.

First, the District Court acknowledged the City of Valley's lack of legal control over the agency of Appellants' arrests, without which Appellants could not establish causation per <u>Monell</u>. "[T]he actions Plaintiffs challenge were state, not municipal, actions and the City had no control over the district court, so they fail the threshold question under <u>Monell</u>." (Doc 42-11 (citing <u>Teagan</u>, 949 F.3d at 677–78)). The District Court's finding here is well-supported in the record as well as by the only reasonable reading of local law.  As this Court is well aware, Alabama is <u>not</u> structured as a "home rule" state granting broad powers to local governments like cities.  Instead, "[m]unicipalities…in the State of Alabama are creatures of limited jurisdiction and authority and they possess only those powers that have been delegated to them by the legislature."  <u>See</u> <u>generally</u> <u>Fair Hous. Agency of Ala. v. Williams</u>, Nos. 05-0285-KD-M, 05-0291-KD-M, 2006 U.S. Dist. LEXIS 39154, at *7 n.6 (S.D. Ala. June 13, 2006) (citing <u>City of Leeds v. Town of Moody</u>, 294 Ala. 496, 319 So. 2d 242, 246 (Ala. 1975)). [7]

While some Alabama cities operate their own municipal courts systems (and even those function strictly within the dictates of state law), the City of Valley does

---

[7] According to the Cumberland Law Review and its survey of state and local government relationships, the extent of Alabama's centralization of power in the state is rare among state governments, "only Alabama and Vermont deny home rule powers to municipalities." WORKING PAPER: LOCAL SELF GOVERNMENT IN ALABAMA, 33 Cumb. L. Rev. 245, 249 (2003).

*not* run its own municipal court system.  As a consequence, the City of Valley played a very limited role with respect to the Appellants' arrests.  All the City could do was set up a garbage collection system (including an enforceable legal obligation to pay for garbage collection), within the parameters allowed by state enabling legislation, and then report violations to Chambers County District Court officials.  The City was powerless to go beyond that.  As set out below, only court officials of the Chambers County District Court could prosecute non-payors.

Second, and closely related to its first premise, the District Court found the City of Valley's purported "initiation" of criminal charges insufficient evidence of causation, given the ability of state district court officials governed by Alabama law to break the chain of causation between the City's involvement on the "front end" of the process and Appellants' later arrests.  "[E]ven though, as the Plaintiffs allege, the City initiated the causal chain that led to the actions of which the Plaintiffs complain, the state district court's independent decisions broke the chain of causation necessary to impose liability on the City."  (Doc 42-12) (citing Brown, 520 U.S. at 404).

The District Court's reasoning here is consistent not only with the Supreme Court's holding in Brown, which it cited, but also the recent holding of this Court in Turner v. Williams, 65 F.4th 564 (11th Cir. 2023). In Turner, this Court considered whether the district court had properly dismissed a First Amendment claim where

15

there was an obvious break in the chain of causation separating the defendant from the actions of third parties: "[I]t is insufficient for the Complaint to allege that Williams 'acted with a retaliatory motive' and that Turner was harmed—Williams's 'motive must *cause* [Turner's] injury.'" Turner, 65 F.4th at 581 (emphasis in original). The plaintiff in that case, Bryan Turner, a former deputy sheriff, alleged that Sheriff Mike Williams, in retaliation for Turner's decision to run against Williams' hand-picked successor, arranged for Turner to be arrested without probable cause. Id. at 572-75. Affirming dismissal of Turner's First Amendment claim based on an allegedly retaliatory arrest, this Court concluded, "[t]he independent actions of the assistant state attorney and the judge broke any causal chain between Williams's alleged motive and the alleged constitutional tort." Id. at 581.

The record below and Alabama law[8] provided abundant support for the District Court's[9] finding as to a break or breaks in the chain of causation, like the

---

[8] District courts are arms of Alabama's state judicial system, not an extension of municipal authority. See generally, Ala. Code § 12-12-30; Patton v. State, 964 So. 2d 1247, 1250 (Ala. Crim. App. 2007) ("Just as a circuit court, which was the trial court in Seymour, derives its jurisdiction from the Alabama Constitution and the Alabama Code, so too do the district courts in Alabama's court system."); Lewis v. Clay, No. 4:16-cv-00287-LSC-HGD, 2016 U.S. Dist. LEXIS 151151, at *6 (N.D. Ala. Sep. 9, 2016) (describing district judge as a "State District Court Judge" who should be afforded judicial immunity).

[9] For the sake of clarity, all "shorthand" references to the Federal District Court for the Middle District of Alabama will capitalize each word, i.e., "District Court," while abbreviated references to the District Court of Chambers County will be in lower case, i.e., "district court."

16

ones described in <u>Turner</u>, <u>Teagan</u> and <u>Grech</u>. Only the Chambers County District Court clerk could set up the criminal action authorized by the state enabling statute.[10] Only the district court prosecutor could prosecute the criminal action. Only the district court magistrate could approve an arrest warrant. And only a district court judge could preside over the criminal prosecution including the power to dismiss the action, quash an arrest warrant, release or set bond for a detainee, determine guilt or innocence and impose punishment if its verdict was guilty.[11]  At several points in the criminal process, these court officials could have exercised their discretion under Alabama law to prevent the Appellants' arrests, reduce or eliminate Appellants' bond, or release them from custody.  As noted by the District Court below, the fact that the District Attorney for the Fifth Judicial Circuit of Alabama (which encompasses the City of Valley) has subsequently refused to prosecute trash pickup fee enforcement actions underscores the absolute independence of the district court in this context. (<u>See</u> Doc 42 - Pg 12 n. 6) ("In fact, the district attorney for Chambers County, Alabama recently announced that his office will not prosecute residents of the City for the nonpayment of unpaid garbage fees, a position that evidences the

---

[10] Appellants conceded in the context of defending their state-law-based unjust enrichment claim that "the prosecutions were brought by the State of Alabama." (Doc 39 - Pg 23.)

[11] Tellingly, none of the Appellants were *sentenced* to incarceration though found guilty of non-payment (Docs. 35-1 - Pg 3; 35-2 - Pg 3; 35-3 - Pg 3) thereby reinforcing the City of Valley's contention that their arrests were based on Appellants' *failure to appear* not failure to pay.

lack of control or authority the City has over the district court or the county prosecutor.").

Based on these twin premises--absence of city control and presence of breaks in the chain of causation--the District Court reached the only logical conclusion: Appellants failed to meet the burden of pleading causation imposed by <u>Monell</u> and its progeny.

## II.    THE DISTRICT COURT WAS RIGHT TO DECLINE APPELLANTS' INVITATION TO DIVERGE FROM <u>MONELL</u> AND ITS ESTABLISHMENT OF A "RIGOROUS" STANDARD FOR PROVING CAUSATION IN FAVOR OF THE FAR MORE LENIENT "BUT FOR" TEST APPELLANTS ADVOCATED.

While Appellants contend their view of causation is compatible with <u>Monell</u> and its progeny, this Court should see their position for what it really is.  It is a call to depart from <u>Monell</u>'s foundational principle requiring plaintiffs who sue municipalities for constitutional injuries to overcome a rigorous standard of causation.  Appellants would have the Court insert in its place a far more elastic standard, "but for" causation.  The District Court wisely refused to diverge from <u>Monell</u> and 45 years of case law construing its holdings; so should this Court.

### A.    <u>Supreme Court authority has rejected the kind of but-for causation advocated by Appellants as being contrary to Monell's requirement of "direct" causation.</u>

The City of Valley is aware of Appellants' efforts to convince the Court that the "but for" causation standard they advocate is not contrary to <u>Monell</u> and the

rationale undergirding it, but their arguments do not hold up to serious scrutiny. "But for" causation runs counter to the very heart of <u>Monell</u>. The advent of "but for" causation would loosen <u>Monell</u>'s "rigorous" standard for causation and open the door for respondent superior liability—the very result rejected in <u>Monell</u>.

When the United States Supreme Court rejected respondeat superior liability in <u>Monell</u>, it was essentially rejecting a "but for" theory of causation. In every case where a plaintiff seeks to establish municipal liability, could it not be argued that "but for" the hiring of the tortfeasor-employee, the plaintiff would not have been injured? The Supreme Court saw the possibility of such a broad construction under a more lenient standard of causation and wisely eliminated it by eschewing respondeat superior liability and more porous standards of causation.

While it may be true that the <u>Monell</u> opinion does not *explicitly* refer to and reject "but for" causation, the Supreme Court soon made obvious what it had implied in <u>Monell</u>. In <u>Brown</u>, 520 U.S. 397, the Court reversed the Fifth Circuit's opinion holding an Oklahoma county liable for injuries resulting from a local sheriff's hiring decision. In so doing, the Court directly addressed "but for" causation, the standard Appellants want this Court to adopt in the instant case, and found "but for" causation to be wanting.

> Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a "but-for" sense: But for the municipality's decision to hire the employee, the plaintiff would not

have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

520 U.S. at 410.

Finally, although many more cases could be cited, the Supreme Court, in principle, rejected a but-for type theory of causation in <u>City of Canton v. Harris</u>, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206 (1989). This case arose in the context of a failure-to-train claim against a city in Ohio. The Court in <u>Canton</u> rebuffed plaintiff's invitation to "adopt lesser standards of fault and causation [that] would open municipalities to unprecedented liability under § 1983" reasoning that "in virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." 489 U.S. 378. Accord <u>Okla. City v. Tuttle</u>, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985) ("Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official."). Appellants' but-for causation argument in the instant case is nothing more than a semantic re-packaging of the "something the city could have done" standard denigrated in <u>Canton</u> and the "if one goes far enough" causation test rejected in <u>Tuttle</u>.

United States Supreme Court authority clearly leaves no room for the type of but-for causation Appellants seek to persuade the Court to adopt here.

### B.    But-for causation is inconsistent with Eleventh Circuit precedent.

While this Court has not "in so many words" held but-for causation to be incompatible with Monell's strict causation requirements, such a conclusion can be assumed from its reasoning in so many cases, only a few of which can be discussed here. Two good examples come from the District Court's opinion below, Teagan v. City of McDonough, 949 F.3d 670 (11th Cir. 2020) and Grech v. Clayton County, 335 F.3d 1326 (11th Cir. 2003) (en banc). (Doc 42 - Pgs 6-7.) Many more cases could be cited to support the City's position here.

In Teagan, this Court, after a lengthy discussion of Monell liability as described in Supreme Court and Eleventh Circuit authority, rejected a plaintiff's attempt to hold a municipality liable for constitutional injuries she suffered at the hands of a local judge the municipality had no control over pursuant to Georgia law.

> Under Georgia law and the rationale of Familias Unidas, Chief Judge Patten was acting on behalf of the state when he presided over her case, found her guilty, sentenced her, signed a warrant for her arrest, issued a $100 "contempt charge" for her failure to pay the fine, and ordered her to serve the 60-day sentence that had been suspended. See Familias Unidas, 619 F.2d at 404. And because a conviction in a Georgia municipal court for a state-law misdemeanor traffic offense is appealable to the superior court, see Ga. Code Ann. § 40-13-28, we cannot say that under Georgia law the City had "control over" Chief Judge Patten or the McDonough municipal court with respect to the adjudication of Ms. Teagan's state-law misdemeanor traffic offense.

Teagan, 949 F.3d at 677-78.  While the plaintiff in Teagan might not have explicitly based her claim on but-for causation, she stressed the close ties between the City of McDonough and the municipal court based on the fact that "municipal courts in Georgia are generally creatures of local government—Georgia law, after all, gives municipalities the power to create municipal courts, appoint judges to those courts, and fix their compensation." Id. at 677.  Teagan was essentially arguing that but-for the City of McDonough's creation, empowerment and support of the municipal court, she would not have suffered constitutional deprivations. Yet, this Court determined the critical causation question to be much more "narrow", that is, did the city have control over the particular actions of the municipal judge the plaintiff claimed to have injured her? Id. at 676-77.  Georgia law answered this narrow question in the negative: The City of McDonough lacked control over the local court. But-for causation is, of course, not a narrow question but one broad in scope.  This Court was right to reject the plaintiff's broad theory of causation in Teagan, and the District Court below was right to look to Teagan for guidance in the instant case.

Similarly, this Court's en banc holding in Grech v. Clayton County is a rejection of plaintiff's unstated theory of causation—in her view, but-for Clayton County's establishment and support of its sheriff department, the plaintiff would not have been arrested based on a warrant that should have been withdrawn thirteen

years prior.  Again, this Court looked to the narrow issue of control rather than broad

connections or more distant and, therefore, less direct causes.

> The counties' lack of authority and control over sheriffs explains why
> counties have no § 1983 liability for their conduct.… A sheriff's policy
> or practice cannot be said to speak for the county because the county
> has no say about that policy or practice.

Id. at 1347-48 (citing Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir. 2001)

(en banc)).  The reasoning of this Court in Grech gave ample support to the District

Court below for its rejection of Appellants' attempt to expand Monell and its

dismissal of their § 1983 claims.[12]

Based on Supreme Court and Eleventh Circuit reasoning in a Monell context,

two federal district courts within the Eleventh Circuit "connected the dots" and

explicitly found but-for causation to be incompatible with Monell.  The plaintiff in

Camp v. Corr. Med. Servs., 668 F. Supp. 2d 1338 (M.D. Ala. 2009), tried to avoid

Monell's strict causation requirements and expand liability to hiring decisions on a

"but for" basis, but the Middle District of Alabama rightly rejected such a ploy as

being inconsistent with Monell.  "Plaintiffs assert that 'but for' this policy and

---

[12]The City of Valley expects Appellants to argue the connections between the City and their arrests are closer in the instant case than the connections between the local governments and local court action described in Teagan and Grech.  That argument would be a non sequitur though.  The issue in Teagan and Grech is authority and control under state law, not degrees of separation or whether the municipality initiated a process.  In the instant case, Alabama law takes district court officials wholly outside the authority and control of municipal governments, able to exercise independent decision-making and to "short-circuit" any process begun by the city.  This breaks any chain of causation Appellants are trying to establish.

custom, CMS would have hired Camp and Martindale.… However, mere causation is insufficient to establish liability under Monell." Id. at 1367 (relying on the reasoning of McDowell v. Brown, 392 F.3d 1283, 1291 (11th Cir. 2004) and Brown, 520 U.S. at 403). See also Lewis v. Reyes, No. 5:22-cv-650-JA-PRL, 2023 U.S. Dist. LEXIS 50461, at *20 (M.D. Fla. Mar. 23, 2023) (relying on Monell to reject plaintiff's argument that "[he] was unlawfully trespassed and unlawfully arrested for trespassing *due to the but for cause* of the documented unconstitutional policy po9150 of the LCSD Board Policies.") (Emphasis added).

Precedent from this Circuit and its district courts eliminates any basis for adopting the but-for causation standard advocated by Appellants in this action.

### C. Other Circuits, including our sister circuit, the Fifth, have *explicitly* rejected a but-for test of causation in the context of Monell liability.

Following the reasoning of Monell and its progeny, our sister circuit, the Fifth Circuit Court of Appeals, has directly determined but-for causation to be inconsistent with Monell and its progeny:

> As we stated above, a direct causal connection must exist between the policy and the alleged constitutional deprivation. *This connection must be more than a mere "but for" coupling between cause and effect.* To form the basis of liability under § 1983, a municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it.

Fraire v. Arlington, 957 F.2d 1268, 1281 (5th Cir. 1992) (citing City of Canton v.

Harris, 489 U.S. 378, 392, 109 S. Ct. 1197, 1204-05 (1989). (Emphasis added). See Estate of Bonilla v. Orange Cty., 982 F.3d 298, 312 (5th Cir. 2020) (quoting Fraire).

Nor is the Fifth Circuit alone in its outright rejection of but-for causation as being fundamentally inconsistent with Monell. See i.e., Ruiz-Cortez v. City of Chi., 931 F.3d 592, 599 (7th Cir. 2019) ("[Plaintiff's] reasoning, however, amounts only to a showing of but-for causation, which does not suffice under Monell."); Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996) ("Pointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under Monell. Rather, the policy must be the proximate cause of the section 1983 injury.").

Adopting Appellants' slackened standard of causation would require reversal of Monell or a severe limiting of Monell's application. Clearly, such a drastic change is unjustified, unwise and was frankly beyond the District Court's power to accomplish, given extant mandatory authority. Its refusal to depart from the sound reasoning of Monell and its progeny should be affirmed by this Court.

   **D.    The holding of Carter v. City of Montgomery is an insufficient basis to impose but-for causation and to justify reversal; other federal district court opinions that run counter to Carter provide superior persuasive authority.**

In support of the "but-for" standard they promote, Appellants rely almost exclusively on the reasoning of the Middle District of Alabama in Carter v. City of

25

<u>Montgomery</u>, 473 F. Supp. 3d 1273 (M.D. Ala. 2020) (Lamberth, J.)[13] This non-mandatory authority will not bear the load they want to place on it: (1) The facts of the instant case distinguish it from <u>Carter</u>; (2) <u>Carter</u>'s reasoning runs counter to mandatory authority; and (3) this Court, to the extent it wants to look to persuasive authority, should look to other district court opinions that provide superior reasoning.

First, the instant case is distinguishable from <u>Carter</u> on the facts. <u>Carter</u> addressed a scenario where the City of Montgomery actually administered a municipal court system and employed municipal court staff including the municipal judge. The City of Valley operates and staffs no such municipal court system. Additionally, the <u>Carter</u> court based its finding of city control on contracts it had with a private probation service which, according to the plaintiffs in that case, was to some degree responsible for constitutional violations they suffered. <u>See</u> <u>Carter</u>, 473 F. Supp. 3d at 1299. ("The City-JCS contracts, however, would allow a reasonable jury to conclude that the City had final responsibility for JCS, either because it acquiesced to JCS's standard operating procedures or because it ratified decisions about how to provide probation that it delegated to JCS."). Such a connection between the City of Valley and those responsible for Appellants' arrests,

---

[13] Judge Lamberth was a visiting district judge from the District Court of the District of Columbia.

the constitutional injury they claim in the instant case, is lacking. Their arrests could not have taken place without the independent actions of district court officials. The City of Valley had no control over these officials—contractual or otherwise.[14]

One portion of the <u>Carter</u> opinion (and its citation of the <u>Woodard</u> case) underscores the critical difference between <u>Carter</u>'s facts and the instant case. The <u>Carter</u> case draws a clear distinction between municipalities which exercise control over the functionality of local court systems and those which lack such control, regardless of what the court is called. <u>See Carter</u>, 473 F. Supp. 3d at 1300. ("*This case, therefore, is unlike cases where municipal court employees act wholly outside the control of their municipalities*. <u>See, e.g.</u>, <u>Woodard v. Town of Oakman</u>, 885 F. Supp. 2d 1216, 1232 (N.D. Ala. 2012)") (Emphasis added). Thus, <u>Carter</u>'s own words belie any application to situations where, like in the instant case, "[district] court employees act wholly outside the control of [local] municipalities."

Second, <u>Carter</u>'s reasoning is out of step with both mandatory and persuasive authority construing <u>Monell</u> liability. Its broad, state-tort-law-based interpretation of what type of level of causation satisfies <u>Monell</u> is far removed from the Supreme Court's own description of "rigorous requirements of culpability and causation."

---

[14] Appellee City of Valley anticipates that Appellants will point to the City's contractual relationship with AmWaste in an attempt to overcome this distinction. But AmWaste merely administered the collection of garbage. It had no power to make arrests or otherwise involve itself in the criminal process.

Monell, 436 U.S. at 691. The federal district court in Carter relies on language in Williams v. Bennett 689 F. 2d 1370, 1389 (11th Cir. 1982) to justify its conclusions, but no court since Williams has construed its holding to justify such a lax causation standard which runs counter to 45 years of opinions construing Monell to require "direct" and "affirmative" causal links between municipality policy and subsequent injury.[15] See Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997) ("Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense: But …. a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."); Okla. City v. Tuttle, 471 U.S. 808, 823 (1985) ("Monell must be taken to require proof of a city policy different in kind from this latter example before a claim can be sent to a jury on the theory that a particular violation was 'caused' by the municipal 'policy.'"). Clearly, causation theories found in Alabama law cannot cancel out the precedent from the United States Supreme Court and Eleventh Circuit Court of Appeals cited throughout this brief.

---

[15] Appellants' idea that the District Court should have looked to Alabama tort law rather than the causation standard set out in Monell and the legions of cases construing it is far-fetched. Acquiesce to their prompting would throw into question the holding of literally every § 1983 municipal liability case decided relying on Monell since it was released in 1978.  See, i.e., Morgan v. Tice, 862 F.2d 1495, 1499 (11th Cir. 1989) (reversing district court's refusal to grant judgment to town "based on failure of the plaintiff to establish the municipality's liability *under the standards of Pembaur and Monell.*") (Emphasis added).

Judge Lambreth's narrow view of <u>Monell's</u> strict causation standard in <u>Carter</u> is an aberration.  Appellee's counsel has been unable to find a single case arising out of the Eleventh Circuit, other than <u>Carter</u>, utilizing a "but for" analysis to find a municipal entity liable under <u>Monell</u>.  Appellants supply no such case in their brief. On the other hand, it appears that the few district courts from this circuit (other than <u>Carter</u>) which have faced a straight-forward attempt to conflate "but for" causation with <u>Monell</u> refused to do so.  <u>See</u> <u>Camp v. Corr. Med. Servs.</u>, 668 F. Supp. 2d at 1367 and <u>Lewis v. Reyes</u>, No. 5:22-cv-650-JA-PRL, 2023 U.S. Dist. LEXIS 50461, at *20.[16]

Third, to the extent this Court, or the District Court below, was inclined to look to the reasoning of district courts in the Eleventh Circuit for persuasive authority, there are better reasoned opinions than <u>Carter</u>.  One of those opinions is <u>Ray v. Judicial Corr. Servs.</u>, No. 2:12-cv-02819-RDP, 2017 U.S. Dist. LEXIS 22667, at *24 (N.D. Ala. Feb. 17, 2017) (Proctor, J.)  Judge Proctor concluded that, as a matter of law, *no judge* (even if called "a municipal judge") can be deemed to be a final policymaker for a municipality because all such judges operate as part of the *state* judicial system.

> In light of Alabama's delegation of judicial authority to the state judicial system, it follows as a matter of law and logic that the Municipal Court's judge acted as a state policymaker when sentencing Plaintiffs to

---

[16] These cases are also discussed on pages 23-24 of this brief.

probation, setting terms of probation, designating JCS as the probation agency, and revoking or reinstating probation…. Because the Municipal Court's judge was a member of the state's judicial system, implemented state law when issuing and supervising probation sentences, and was subject to the disciplinary control of a state agency, the court finds that he acted as a state policymaker, not a municipal policymaker, when implementing the probation policies at issue in this case.

Id. at * 38-40 (Emphasis added). The better logic, reading of state law, and application of Monell is to be found in Ray, not Carter. If a *municipal court judge* cannot be the policymaker for a municipality, state district court officials certainly cannot qualify as such.  In Ray, it did not matter that the City of Childersburg somehow set a process in motion by approving a new private probation service whose actions were eventually responsible for alleged constitutional deprivations. The city could not be held liable for later actions of the court.  See Id. at *7, *60-61. The same reasoning applies here.

Another district court case which provides a better path than Carter to follow in deciding the instant case is Woodard v. Town of Oakman, 885 F. Supp. 2d 1216 (N.D. Ala. 2012) (Coogler, J.), mentioned briefly above. Ironically, this is a case cited in the Carter opinion, although Woodard reached a contrary result.  In Woodard, one of the plaintiffs, a city council member, was arrested and sought to hold the Town of Oakman liable for his arrest, which he claimed to be retaliation for his exercise of free speech.  The district court dismissed this claim, and its reasoning

30

for doing so is instructive.

> "[L]ocal governments . . . can never be liable under § 1983 for the acts of those [officials] whom the local government has no authority to control." Grech v. Clayton County, Ga., 335 F.3d 1326, 1331 (11th Cir. 2003) (quoting Turquitt v. Jefferson County, 137 F.3d 1285, 1292 (11th Cir. 1998)). Therefore, the Court must examine whether Oakman, under Alabama law, has control over the magistrates and their issuance of arrest warrants….The Alabama Supreme Court, not the municipality, provides the rules for administration of the municipal court administrative agency….In short, there is nothing to indicate that Oakman has control of a magistrate's issuance of an arrest warrant. Because Plaintiffs cannot show that Magistrate Welch is a "final policymaker" for Oakman, the Town of Oakman is not subject to § 1983 liability on Smith's First Amendment retaliation claim.

885 F. Supp. at 1232. [17]

Applying Judge Coogler's reasoning in Woodard to the instant case, the City of Valley lacked control over the district court mechanisms and district court officials that effectuated Appellants' arrests. These district court officials cannot qualify as final policymakers for the City of Valley.  Just as the Town of Oakman was properly dismissed as to the plaintiff's retaliatory arrest claim in Woodard, the

---

[17] Although the Woodard court never employs the phrase, "break in the chain of causation," it is difficult to distinguish its "lack of control" analysis from the concept of a break in the chain of causation.  The lack of control the Town of Oakman had over the local court magistrate essentially meant the magistrate's independent act of issuing an arrest warrant severed any viable connection the town had to the local court and its operations—all of which were controlled by Alabama law.  Compare Turner v. Williams, 65 F.4th 564, 581 (11th Cir. 2023) ("The independent actions of the assistant state attorney and the judge broke any causal chain between Williams's alleged motive and the alleged constitutional tort.")

District Court properly dismissed Appellants' arrest-based claims as to the City of Valley in this case.

## III. APPELLANTS' CONSTITUTIONAL CLAIMS COULD HAVE BEEN DISMISSED ON A HOST OF ALTERNATIVE GROUNDS IF THE DISTRICT COURT HAD NOT FOUND LACK OF CAUSATION TO BE DISPOSITIVE.

As stated above, the District Court was right to focus on Appellants' failure to meet Monell's standard of causation as the most obvious path to dismissal, but had the District Court wanted to look elsewhere, there were other grounds to dismiss Appellants' Second Amended Complaint. The City of Valley asserted and fully briefed these alternative grounds at the District Court level and each ground would support a decision of this Court to affirm, even apart from Monell.

### A. **Appellants failed to plausibly allege any arrest or incarceration based solely on their inability to pay garbage collection fees.**

Appellants' case, like a fragile house of cards, is based at bottom on the premise that they were subjected to arrest and imprisonment solely due to their inability to pay the garbage collection fees levied by the City of Valley and as authorized by state statute. When that premise is removed, their case collapses. The facts set out above make it clear Appellants have not plausibly alleged the existence of a single arrest or incarceration (at least since 2013) based only upon their being behind on garbage fee payments. The facts set out in the Second Amended Complaint coupled with facts of which this Court may take judicial notice indicate

the Appellants were never subject to arrest or jail based only upon their failure to pay the waste collection fees. *Instead, Appellants Little, Gray and Khelifa found themselves subject to arrest only after each failed to appear for a district court hearing relative to their garbage fee delinquency—a hearing they were notified of in writing—usually on more than one occasion.*

As explained by the U.S. Supreme Court in what has become the Court's preeminent case on pleading requirements, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Given that Appellants have not and cannot plausibly allege facts connecting the City of Valley to arrests or incarceration based solely on the Appellants' inability or failure to pay the waste collection fees imposed by the City of Valley (instead of the Appellants' failure to appear), dismissal is appropriate and all claims which make up this house of cards fall as a result. See <u>Iqbal</u>, 556 U.S. at 679, 129 S. Ct. at 1950 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss"); <u>Shepherd v. Wilson</u>, 663 F. App'x 813, 815 (11th Cir. 2016) (Affirming district court's dismissal based on plaintiff's "failure to allege sufficient facts plausibly suggesting that either [of the defendants] is a 'state actor' subject to liability under § 1983"); <u>Jones v. City of Birmingham</u>, No. 2:19-cv-01122-AKK, 2019 U.S. Dist. LEXIS 209473, at *8

(N.D. Ala. Dec. 5, 2019) (Observing that, "[a] review of the complaint shows that plaintiffs plead no facts alleging that the City promulgated an official policy of discrimination, or that the City or its employees had a custom or practice of racial discrimination in hiring or promotions" and granting defendants' motion to dismiss); Marshall v. United States HUD, No. 1:19-CV-0460-JPB-JSA, 2020 U.S. Dist. LEXIS 269253, at *24 (N.D. Ga. Apr. 3, 2020) ("[T]he Court finds that dismissal is warranted [inter alia] based on plaintiff's failure to allege sufficient facts in the complaint to state a plausible claim for relief under any of the legal theories presented….").

### B.    Appellants failed to state a plausible Substantive Due Process claim.

To the extent a viable constitutional doctrine known as "substantive due process" exists or ever existed, it is most certainly a doctrine extremely limited in its scope and application.   As one Eleventh Circuit concurring opinion recently observed, "while substantive due process is bad on its best day, [the application some plaintiffs seek] represents the doctrine at 'its abject worst.'" Sosa v. Martin Cty., 57 F.4th 1297, 1308 (11th Cir. 2023) (Newsom, CJ, concurring, joined by William Pryor, Chief Judge, and Lagoa, CJ) (citing Hillcrest Prop., LLP v. Pasco Cty., 915 F.3d 1292, 1306 (11th Cir. 2019).   What follows are the many reasons why Appellants have not asserted a plausible substantive due process claim and why it is

due to be dismissed. They have not overcome the "high bar" of stating a substantive due process claim. See Maddox v. Stephens, 727 F.3d 1109, 1119 (11th Cir. 2013) ("Plaintiffs face a high bar when attempting to establish a substantive due process violation…").

### 1.   The rights asserted here by Appellants are not "deeply rooted in our legal tradition."

One strand of substantive due process jurisprudence "protects against deprivation of fundamental rights." Hillcrest Prop., LLP, 915 F.3d at 1297.  Other cases have made it clear that only rights "deeply rooted in our legal tradition" should even be considered as coming within the protection afforded by the Substantive Due Process Clause and its jurisprudence.  See Joe Nathan James v. AG, No. 22-12345, 2022 U.S. App. LEXIS 20579, at *1 (11th Cir. July 26, 2022) ("The substantive component of the Due Process Clause protects those rights that are fundamental, that is, those that are deeply rooted in our history and tradition and essential to our Nation's scheme of ordered liberty."). Appellants have not asserted such a right in their Second Amended Complaint. There is no right at all (much less one rooted in the history of our legal tradition) *not* to pay a legally assessed fee for garbage collection, nor a right not to be arrested when one fails to appear for a court hearing.

Appellants below cited Article 1, Section 20 of the Alabama Constitution and contend that their prosecution and arrest violated this section.  (See Doc 31 - Pg 16.)

35

Yet, this argument does not hold up to the slightest scrutiny.  The phrase from Article I, section 20, "no person shall be imprisoned for debt" has a very limited application. Even the case Appellants cite in their complaint underscores this point: "Under [Article I, section 20], a [civil] defendant may not be imprisoned for alleged contempt in failing to pay a judgment for money." Smith v. Smith, 380 So. 2d. 897, 899 (Ala. Civ. App. 1980).  The Smith court went on to stress that the debt there "resulted from an action for damages…[and] must be treated like a jury award." Id. In other words, a civil plaintiff who recovers a debt or wins an award for damages cannot then have the losing civil defendant placed in jail if he cannot pay it.

Of course, Little, Gray and Khelifa were *not* prosecuted for failing to pay a contractual debt or to enforce a damages judgment they lost in a civil action. Instead, they committed a crime as defined by a local ordinance passed pursuant to a state enabling statute,[18] as the complaint admits. (Doc 31 a p. 6.) Article 1, section 20 is not an obstacle to a municipality's enforcement of an otherwise valid regulatory scheme via the criminal court process, as the Alabama Supreme Court has explained.

In Benson v. Andalusia, 240 Ala. 99 (Ala. 1940), the Alabama Supreme Court upheld the use of a criminal action by the city against one of its customers who

---

[18] Appellants apparently have not asked that the Court find this state statute or Valley's local ordinance unconstitutional. If that is their position, the Alabama Attorney General's office should be brought into the case. See Ala. Code § 6-6-227.

36

refused to pay city sewer system fees. "A municipality owning its sewer system may also provide by ordinance that the use of such system, without the payment of a service charge, not arbitrary or discriminatory, is a misdemeanor punishable by fine, and *such an ordinance does not violate constitutional inhibitions against imprisonment for debt*." Id. at 102.   (Emphasis added).   See also Lavender v. Tuscaloosa, 198 So. 459 (Ala. 1940) ("The immunity from imprisonment for debt contemplated and provided in said Section 20 of the Constitution… does not extend to and include a fine and costs imposed by the municipality for the willful neglect or refusal to comply with the public duty imposed upon the defendant by the terms of the ordinance upon which the prosecution was rested.").

To the Benson court, the difference between a private debtor and someone who refuses to pay for public services was obvious.

> '[W]hen a citizen by his own misconduct exposes himself to the punitive powers of the law, the expense incident to his prosecution and conviction, each and all of these may result in subjecting the defaulter to a money liability.  These are not debts incurred by contract…, but are the result of being members of the social compact, or body politic. Penalties are imposed in furtherance of some public policy, and as a means of securing obedience to law. Persons who incur these, are either in morals or law wrongdoers, and not simply unfortunate debtors unable to perform their pecuniary obligations' to whom the constitutional provisions against imprisonment for debt do not apply.

Id. (quoting Bray v. State, 140 Ala. 172 (Ala. 1903) and Lee v. State, 75 Ala. 29, 30 (Ala. 1883)).

37

### 2. The Second Amended Complaint lacks any plausible pleading of arbitrary action.

A second strand of substantive due process jurisprudence "protects against arbitrary legislation." Hillcrest Prop., LLP, 915 F.3d at 1297. Here again, Appellants' allegations fall far short of plausibly alleging a Substantive Due Process claim. Far from arbitrary, the City's actions were all authorized by state law and applied uniformly to all citizens who benefitted from the waste collection service then failed to pay for it. There is no plausible allegation of arbitrary conduct on the part of Valley.

### 3. Other constitutional provisions are better "fits" for these facts, although they will not ultimately provide Appellants any relief either.

The Substantive Due Process clause "cannot be used to impose additional requirements upon such of the States' criminal processes as are already addressed (and left without such requirements) by the Bill of Rights." Albright v. Oliver, 510 U.S. 266, 276, 114 S. Ct. 807, 814 (1994) (Scalia, J., concurring) (citing Graham v. Connor, 490 U.S. 386, 395, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266 at 273 (majority opinion).

In other words, Appellants should not attempt to use the Substantive Due Process Clause as a "fill-in-the blank" provision in order to paper over gaps they feel are left by other provisions of the Constitution which are intended to apply to and limit particular governmental actions. Yet, that is exactly what Little, Gray and Khelifa are trying to do here. Takings are covered by the Fifth and Fourteenth Amendments (including procedural due process), arrests by the Fourth, and bails by the Eighth. Appellants' attempts to expand the application of the Substantive Due Process claim here is inappropriate, and their Substantive Due Process Clause claim is due to be dismissed.

### C.  Appellants failed to state a plausible claim for conspiracy to violate 42 U.S.C. § 1983.

Appellants' Second Amended Complaint fails to satisfy the elements required in a conspiracy to violate 42 U.S.C. § 1983.

> Holston must allege three elements to establish a conspiracy claim under § 1983: '(1) a violation of his federal rights; (2) an agreement among the Defendants to violate such a right; and (3) an underlying actionable wrong.' Williams v. Fulton Cnty. Sch. Dist., 181 F. Supp. 3d 1089, 1148 (N.D. Ga. 2016) (cleaned up). Holston fails to satisfy the first element. For the reasons stated in the preceding sections, he has not stated any plausible claim of retaliation, deliberate indifference to a serious medical need, or due process violation. Without a plausible claim of an underlying denial of a constitutional right, this count cannot proceed. See Carruth v. Bentley, 942 F.3d 1047, 1062 (11th Cir. 2019) ('to sustain a conspiracy action under § 1983 a plaintiff must show an underlying actual denial of its constitutional rights' (cleaned up)).

Holston v. Dawson, No. 2:21-cv-202-SPC-NPM, 2022 U.S. Dist. LEXIS 73623, at

*22-23 (M.D. Fla. Mar. 9, 2022) (citations omitted). The Second Amended Complaint fails on all counts.

As established elsewhere in this brief, Little, Gray and Khelifa have not, and cannot, adequately plead a federal deprivation or an underlying actionable wrong, elements 1 and 3. They first contend that the jailing of people for an offense which does not allow for jailing by statute is a violation of the Fourteenth (14th) Amendment's right to substantive due process. (Doc 31 - Pg 12.) Even beyond its circular reasoning, there are many problems with this allegation. First, as established above, the Appellants were jailed *not* based on their "non-jailable offenses," but based on their failure to appear in district court. Second, invoking the criminal courts to enforce compliance with local law is far from a violation of the substantive due process clause, which has *very* limited application. Third, Appellants cannot simply ignore the fact that independent state court officials prosecuted the criminal actions, approved the arrest warrants, and presided over the criminal cases. This involvement by independent actors breaks any line of causation Appellants are trying to draw between the actions of the City, of Amwaste and the Appellants' alleged injuries.

Appellants next contended that "the setting of bond in an amount that is several multiples of the garbage fees at issue is excessive bail, and the related fees are excessive fines under the Eighth (8th) Amendment." Yet nowhere in the Second Amended Complaint do Appellants allege that either the City or Amwaste

(separately or together) had anything to do with the setting of the Appellants' bond. As a matter of law, that is *solely* the function of state court officials.  <u>See</u> Ala. R. Crim. P. 7.2 (b).

Finally, Appellants failed to sufficiently allege (not just conclusorily state) that Defendants City of Valley and Amwaste reached an agreement to violate their rights.  A mere agreement to operate a trash collection service even assuming that they knew those who did not pay could be charged with a misdemeanor—all as authorized by state law and local ordinance—is not enough to meet the requirements for a conspiracy claim.  The Appellants' arrests occurred based on their failure to appear in Court.  Their non-appearance was not an eventuality that the City or Amwaste could anticipate, control or agree to; nor did either party have the authority to approve arrest warrants.  Appellants' conspiracy count fails to state a claim.

### D.    <u>Appellants failed to state a plausible Eighth Amendment claim.</u>

The text of the Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." But note that the Second Amended Complaint never mentions a single allegation that Little, Gray or Khelifa were ever required to pay excessive fines—often just restitution or what they owed, it appears. (Doc 31 - Pgs 2-4.) The Second Amended Complaint instead skips right over fines and goes to allegations of excessive bail.

Appellants' case as to excessive bail is meritless (even assuming Appellants

named the right Defendants, which they have not). "The basic test for excessive bail is whether the amount is higher than reasonably necessary to assure the accused's presence at trial," and "[a]s long as the primary reason in setting bond is to produce the defendant's presence, the final amount, type, and other conditions of release are within the sound discretion of the releasing authority." Lewis v. City of Decatur, No. 7:18-cv-02050-LSC-JHE, 2019 U.S. Dist. LEXIS 224412, at *12 (N.D. Ala. Dec. 6, 2019) (quoting Walker v. City of Calhoun, GA, 901 F.3d 1245, 1258 (11th Cir. 2018). The Second Amended Complaint lacks any plausible allegation that Appellants' bail amounts were set with anything in mind other than to assure their appearance in court, once they failed to appear.

Moreover, there is no allegation the Appellants were unable to eventually make bail; Little and Khelifa bonded out the same day as their arrest without even having to spend a single night in jail. Gray was able to make bail six days after his arrest. But even if Appel had alleged indigency, it would not have mattered. "Bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement." Hill v. Hous. Cty. Judicial , No. 5:17-cv-00481-TES-MSH, 2018 U.S. Dist. LEXIS 86617, at *5 (M.D. Ga. Apr. 16, 2018) (internal citations omitted).

But the most obvious problem with Appellants' Eighth Amendment "excessive bail" claim against the City of Valley is that there is no allegation that

the City of Valley had anything to do with the setting of bail amounts.  Bail-setting is entirely a function of the district court system,[19] and there is no causative link to the City of Valley.  See Stinson v. Jackson, No. 2:12-CV-412-TMH [WO], 2012 U.S. Dist. LEXIS 79206, at *5-6 (M.D. Ala. May 10, 2012) ("Pursuant to the relevant Alabama Rules of Criminal Procedure, judges and magistrates of the state courts are responsible for and have authority to set and reduce bond/bail.") (citing Ala. R. Crim. P. 7.2).  There is no allegation that the district court here (even if it were a municipal court, which it is not) went beyond the bond schedule set out as part of Rule 7.2 or that the district court failed to consider the financial condition of the Appellants, as required in Rule 7.2(a)(13).

### E.    The district court could have abstained from exercising jurisdiction based on the Younger abstention doctrine.

Younger abstention describes the duty of federal courts to consider deferring the exercise of jurisdiction, in the interest of federalism, when state courts are already in the midst of considering the same or similar questions. Younger v. Harris, 401 U.S. 37, 43-44 (1971). The Eleventh Circuit recently explained when Younger abstention doctrine should be applied in Leonard v. Ala. State Bd. of Pharmacy, 61 F. 4th 902 (11th Cir. 2023). Analysis of all three factors described in Leonard favor

---

[19] Barnes v. Goggans, No. 2:20-CV-811-WHA, 2021 U.S. Dist. LEXIS 15057, at *1 (M.D. Ala. Jan. 5, 2021) (Referencing "the bonds set by the state district court.").

applying <u>Younger</u> here. Local interests and state proceedings are on-going. The Appellants appear to remain subject to the garbage fee (perhaps Little owns property still in Valley, although her residence is now Talladega, Alabama). The state proceedings implicate important state interests which are the health, safety, and welfare of its citizens, not to mention the rule of law. Finally, Appellants can raise federal law-based objections before the district court (or on appeal, to the circuit court or Alabama appellate courts).

**F.**     <u>**The District Court could have determined that the Rooker-Feldman doctrine barred Appellants' claims.**</u>

Under this doctrine, federal courts should not take jurisdiction in cases where "state court losers" are looking for a new venue to advance the same arguments they made or could have made in their previous state court case. <u>See</u> <u>May v. Morgan Cnty. Ga.</u>, 878 F.3d 1001, 1005 (11th Cir. 2017) (citations omitted).

Here, each of the Appellants had every opportunity to challenge their prosecution and arrest within the context of their state district court cases. Consequently, <u>Rooker-Feldman</u> bars resort to federal court merely as a second chance to win what they could have won in state district court, if they had asserted the same or similar arguments as they assert here. <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983).

44

**G.** **The District Court could have held that the doctrine articulated in Heck v. Humphrey barred Appellants' action.**

Appellants' action is barred based on the doctrine set out by the Supreme Court in <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364 (1994). This doctrine prohibits federal courts from entertaining federal civil actions that, if successful, would undermine a criminal conviction in state court. Applying the doctrine to this case, if the Appellants are successful in obtaining a favorable judgment in the federal court, such a result would necessarily imply the invalidity of their past criminal convictions in the Chambers County District Court for violation of Alabama Code § 22-27-5.

**IV. THE FACTS ALLEGED IN APPELLANTS' SECOND AMENDED COMPLAINT DO NOT COME CLOSE TO STATING A PLAUSIBLE RICO CLAIM UNDER 18 U.S.C. § 1962.**

Appellants' decision to include claims under RICO, a statute enacted by Congress to counteract mob activity, primarily extortion, based on the facts alleged here, is quite a stretch indeed. The District Court appropriately dismissed Appellants' 18 U.S.C. § 1962(c) RICO claim based on Appellees' argument that "the SAC fail[ed] to plausibly allege facts supporting all of the necessary RICO elements." (Doc.42 - Pg 14.) The lower court wryly lamented Appellants' decision to "spill much ink" defending a claim when that same ink could have been more wisely used alleging a plausible claim in the first place. <u>Id.</u>

45

This Court's decision in <u>Jones v. Childers</u>, sets out four elements RICO plaintiffs must plausibly plead in order to state a RICO claim under 18 U.S.C. § 1962(c), as noted by the District Court below: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  18 F.3d 899, 910 (11th Cir. 1994) (quoting <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496, (1985).

The District Court concluded the Second Amended Complaint's generalized allegations fell far short of plausibly alleging Appellees operated or managed an illegal collection scheme through a pattern of racketeering or that Appellees had committed "at least two qualifying predicate acts," as required by RICO.  (Doc 42 - Pg 19) (quoting <u>Crawford's Auto Center, Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 945 F.3d 1150, 1158 (11th Cir. 2019).  In other words, nothing in Second Complaint plausibly described Appellees' conduct of an enterprise through a pattern of activity amounting to racketeering.  Appellants went "zero for four" to use common baseball parlance.  As a consequence, the Court had no trouble finding "Plaintiffs' attempts to recast a contractual relationship as a RICO enterprise" to be "unavailing."  (Doc 42 - Pg 27.)

Judge Proctor, Federal District Judge in the Northern District of Alabama, described the requirements of a RICO claim in a somewhat similar context as the instant case. <u>Carden v. Town of Harpersville</u>, No. 2:15-cv-01381-RDP, 2017 U.S. Dist. LEXIS 153752, at *20-22 (N.D. Ala. Sep. 21, 2017) (dismissing RICO claim

against City of Harpersville, et al.).

The District Court properly found the allegations of the Second Amended Complaint inadequate to state a plausible RICO claim. Based on well-pled, non-conclusory allegations of the complaint, the City of Valley has not participated in any "racketeering activity" at all, much less that involving "interstate commerce,"[20] nor is there any pattern of such activity, nor has the City invested income into racketeering enterprises,[21] nor has it derived income from racketeering, nor has it obtained an enterprise or control of an enterprise through use of racketeering.[22]  It has no predicate history of two or more racketeering events in the last ten years (or ever) that are related to one another or demonstrate criminal conduct of a continuing nature.  Nor do the well-pled, non-conclusory facts of the Complaint show an injury to Appellants or their businesses by reason of a substantial RICO violation, that is, proximately caused by a RICO violation.  Like in the case cited above, <u>Carden v. City of Harpersville</u>, Appellants' efforts to adequately plead RICO claims here "fall woefully short." <u>Id</u>. at *24.

Of course, Appellants contend that all of Valley's efforts to collect the garbage fees amount to robbery and extortion.  The facts of the case cannot bear out their

---

[20] <u>See</u> <u>Carden</u> at * 25 (noting plaintiff's failure to allege crossing of state lines or use of U.S. Mail).
[21] <u>See</u> <u>Carden</u> at *25-30 (noting plaintiff's failure to allege "investment injury").
[22] <u>See</u> <u>Carden</u> at *30 -31 (noting plaintiff's failure to allege how defendant obtained an interest in or control of an enterprise through racketeering activities).

outlandish conclusions, however. The Second Amended Complaint concedes that the City of Valley enacted ordinances to regulate garbage pickup, including enforcement for delinquencies in payment, with language that "mirrored" the state enabling statutes. Such actions do not even approach the definitions of robbery or extortion. See Carden, at *24 ("threats to institute litigation are not instances of wrongful conduct actionable under the Hobbs Act"); McCullough v. City of Montgomery, No. 2:15-cv-463 (RCL), 2017 U.S. Dist. LEXIS 34492, at *41-42 (M.D. Ala. Mar. 10, 2017) ("JCS was permitted to collect money and those who did not make required payments could indeed be arrested… JCS's alleged failure to fulfill their contract, or even their coordination with City officials as part of a broader scheme to increase municipal revenue, does not amount to extortion however….").

Further, there is no plausible allegation that the relationship between Valley and Amwaste amounted to an association-in-fact as a RICO enterprise. See Carden, at *31-34. The fact that employees of Valley and employees of Amwaste may have worked together to facilitate the regulation of garbage pickup and the collection of fees therefor (if that is indeed alleged), do not show that Valley and Amwaste "acted together as a continuing unit and do not plausibly show an agreement to conduct extortion through a joint association-in-fact enterprise." See Id., at *31-34. Appellants "ha[ve also] failed to make a distinct allegation of an agreement to violate a substantive portion of RICO." See Id., at *34-36.

48

Finally, a municipality like Valley is unable to formulate the *mens rea* necessary to commit a RICO violation.[23] RICO's allowance for treble damages is punitive in nature, and, as such, damages for RICO violations cannot be assessed against a municipality like the City of Valley. See Genty v. RTC, 937 F.2d 899, 914 (3d Cir. 1991) ("We thus hold that a civil claim brought under section 1964(c) of the RICO Act, with its mandatory award of treble damages which are punitive in character, cannot be maintained against a municipal corporation. In so doing, we iterate that we perceive no intention of Congress to abrogate the long-established and salutary principle of common law prohibiting punitive damages against municipalities.").

## V. THE APPLICABLE STATUTE OF LIMITATIONS BARS APPELLANT SANTORI LITTLE'S CLAIMS, AND SHE LACKS STANDING TO BRING THIS ACTION AS A RESULT.

According to the Second Amended Complaint and Exhibit A, Appellant Santori Little has not been arrested since 2013 (Doc 31 - Pgs 2-3 and Doc 35-1 - Pgs 1-8), well beyond the two-year statute of limitations.  Ford v. Griswald, No. 22-11774, 2023 U.S. App. LEXIS 12541, at *1-2 (11th Cir. May 22, 2023).  The effect of this statute of

---

[23]At this point, the City's defense based on Monell intersects with its defense against Appellants' RICO claim. If the City's relationship to the cause of Appellants' injuries is too attenuated, based on Monell, to survive dismissal of Appellants' § 1983 civil claims, the tenuousness of that relationship is certainly inadequate to support a finding of *mens rea* for the purpose of imposing criminal-type penalties on the City of Valley.

limitations also means Ms. Little lacks standing.  Perhaps, if Ms. Little had brought this action within two years of when she was arrested and placed in jail (briefly, awaiting bond), *in 2011 or 2013*, she would have standing. Since 2013, however, Little has "suffered through" exactly one court hearing where she was ordered to pay a fine and a fee, the payment of a bond, and in the past three years, she has received three or four "show cause" orders *from the state district court.* Such does not a compensable Article III injury make—especially when one "marries" the alleged injury with the applicable two-year statute of limitations.  Telesca v. Village of Kings Creek Condo. Ass'n, Inc., 390 F. App'x 877, 880-81, (11th Cir. 2010).  Notably, the Court in Telesca used the statute of limitations as a "snapshot of time" within which to analyze standing and injury: "Appellants did not, however, state an actual injury that was *within the two year statute of limitations* of the FHA"-- affirming dismissal by district court on this and other grounds." Telesca, 390 F. App'x at 882. (Emphasis added). Little has no injury, concrete or otherwise, within the statute of limitations, she has not been actually harmed, and it is not likely that a jury will be able to redress her alleged injury.

To the extent any part of Appellants' RICO Act claim under 18 U.S.C. § 1962(c) is premised on Ms. Little's 2011 or 2013 arrests, that aspect of the claim is barred by the four year statute of limitations governing such actions.  Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013).

## **CONCLUSION**

Based on the foregoing, Appellee-Defendant City of Valley, Alabama requests that this Court affirm the District Court's order dismissing Appellants-Appellants' Amended Complaint and award unto it costs and attorney's fees in this appeal.

Respectfully submitted this the 22nd day of April, 2024.

Attorneys for Defendant/Appellee
The City of Valley, Alabama

s/Robbie Alexander Hyde
ROBBIE ALEXANDER HYDE
BART HARMON
ALEXANDER HYDE, LLC
2138A Moore's Mill Road
Auburn, Alabama  36830
(334) 246-2333 Telephone
(334) 246-2334 Fax
Email:  robbie@alexanderhyde.com
        bart@alexanderhyde.com

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

The undersigned attorney certifies that this brief, filed on behalf of Appellee The City of Valley, Alabama complies with Rule 32(a)(7)(b) in that it contains no more than 13,000 words.  The brief, beginning with the page entitled "Statement of the Issues" contains 12,749 words.

<u>s/Robbie Alexander Hyde</u>
ROBBIE ALEXANDER HYDE
BART HARMON
ALEXANDER HYDE, LLC
2138A Moore's Mill Road
Auburn, Alabama  36830
(334) 246-2333 Telephone
(334) 246-2334 Fax
Email:  robbie@alexanderhyde.com
        bart@alexanderhyde.com

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on **April 22, 2024**, I filed a copy of the foregoing using the ECF system.  A copy of same will be served on the following via the ECF system or by electronic mail to the following:

Brian Michael Clark
Wiggins Childs Quinn & Pantazis, PC
The Kress Building
301 19th Street North
Birmingham, AL  35203
bclark@wigginschilds.com

Benjamin B. Coulter
Callie S. Leopard
Burr & Forman LLP
420 North 20th Street, Ste. 3400
Birmingham, AL  35203
Ben.coulter@burr.com
Cleopard@burr.com

                  <u>s/Robbie Alexander Hyde</u>
                  OF COUNSEL