# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

## No. 24-10120-J

_____

**SANTORI LITTLE, et. al.,**

     **Plaintiffs-Appellants,**

**v.**

**THE CITY OF VALLEY, ALABAMA, et. al.,**

     **Defendants-Appellees.**

_____

**On Appeal from the United States
District Court for the Middle District of Alabama
Civil Action No. 3:23-cv-00044-RAH**

_____

## PLAINTIFF-ARGUMENT IN REPLY

Brian M. Clark
Wiggins Childs Pantazis Fisher & Goldfarb LLC
301 North 19th Street
Birmingham, Alabama 35203
205-314-0500

Attorney for Plaintiffs-Appellants

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
APPEAL NO. 24-10120-J

SANTORI LITTLE, TAMARA KHELIFA,
and CHARLES GRAY

      Plaintiffs-Appellants,

v.

THE CITY OF VALLEY, ALABAMA,
and AMWASTE, LLC,

      Defendants-Appellees.

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1, 26.2 and 26.3, Plaintiffs-Appellants Santori Little, Tamara Khelifa, and Charles Gray, submits the following list of persons or entities, which upon information and belief of attorneys for Plaintiffs-Appellants, have or may have an interest in the outcome of this case:

1.     AmWaste, LLC, Defendant-Appellee;

2.     Allan Lamar Armstrong, and the attorneys working for or with the firm of Armstrong Law Center, LLC, Attorneys for Plaintiffs-Appellants;

3.     Callie L. Barrow, and the attorneys working for or with the firm of Burr & Forman LLP, Attorneys for Defendants-Appellees;

C-1 of C-3

*Little, et. al. v. Valley, et. al.*, Appeal No. 24-10120-J

4.      William Joseph Baxley, and the attorneys working for or with the firm of Baxley Jackson Law Firm, Attorneys for Plaintiffs-Appellants;

5.      Darrell Lloyd Cartwright, and the attorneys working for or with the firm of Cartwright Law Center, LLC, Attorneys for Plaintiffs-Appellants;

6.      Brian M. Clark, and the attorneys working for or with the firm of Wiggins, Childs, Pantazis, Fisher, and Goldfarb, LLC, Attorneys for Plaintiffs-Appellants;

7.      Benjamin B. Coulter, and the attorneys working for or with the firm of Burr & Forman LLP, Attorneys for Defendants-Appellees;

8.      Charles Gray, Plaintiff-Appellant;

9.      Bart Gregory Harmon, and the attorneys working for or with the firm of Alexander Hyde, Attorneys for Defendants-Appellees;

10.      Honorable R. Austin Huffaker, Jr., United States District Judge for the Middle District of Alabama;

11.      Robbie Alexander Hyde, and the attorneys working for or with the firm of Alexander Hyde, Attorneys for Defendants-Appellees;

12.      Tamara Khelifa, Plaintiff-Appellant;

13.      Santori Little, Plaintiff-Appellant;

14.      The City of Valley, Defendant-Appellee;

*Little, et. al. v. Valley, et. al.,* Appeal No. 24-10120-J

15.    John Mark White, and the attorneys working for or with the firm of White Arnold & Dowd, P.C., Attorneys for Plaintiffs-Appellants;

The Plaintiff-Appellant is an individual. Plaintiff-Appellant has no knowledge of the Defendants-Appellees' parent companies, subsidiaries, partners, limited liability entity members and managers, trustees, affiliates or similar entities.

*/s/ Brian M. Clark*_____
Counsel for Plaintiff-Appellant

*Santori Little, et. al. v. City of Valley, Alabama, et. al.*
*Appeal No. 24-10120-J*

## <u>TABLE OF CONTENTS</u>

<u>PAGE NO.</u>

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ............................... C-1 of C-3

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ................................................................... iii

TABLE OF RECORD REFERENCES IN THE BRIEF ......................................... ix

A.    *Monell* Does Not Set Forth a Standard of Causation ...................................... 2

    1.    The Policy of Referring Citizen for Criminal
    Prosecution for Unpaid Garbage Bills was the
    Cause-in-Fact of Plaintiffs Injuries ...................................................... 5

    2.    Foreseeability is a Fact Question ........................................................ 6

    3.    The Precedents Relied Upon by the City
    Fundamentally Misunderstand the Plaintiffs' Position ......................... 7

        a.    None of the Cases Relied Upon Touch the Issue
        at Hand .................................................................................. 7

        b.    The Carter Case is Indistinguishable and Was
        Rightfully Decided ................................................................. 9

B.    The Record Clearly Shows That Plaintiffs Were
Incarcerated for the Failure to Pay Garbage Fees ......................................... 11

C.    Plaintiffs Have Stated A Substantive Due Process Claim .............................. 12

1. The Liberty Interest Asserted Is Deeply Rooted in Our Legal Tradition and Protected by the Fourteenth Amendment .........................................................................12

2. Jailing Citizens Without Statutory Authority is Arbitrary .................12

D. Conspiracy Has Been Properly Pled.................................................14

E. An Eighth Amendment Claim Has Been Properly Pled .............................16

F. Neither Younger Abstention or Rooker Feldman Apply .............................16

G. Heck v. Humphrey Is Not Relevant To This Case ........................................18

H. The Timeline of Ms. Little's Claim................................................18

I. Waiver of § 1983 Claims Against AmWaste ................................................18

J. Conspiracy as to AmWaste................................................................19

K. The RICO Claim Has Been Properly Pled ....................................................21

1. The Existence of an Enterprise .........................................................21

2. AmWaste Participated in the Conduct of the Enterprise to Provide Garbage Services and Collect Fees Therefore..................23

3. A Pattern of Racketeering Activity Has Been Pled ............................24

4. The Predicate Hobbs Act Violations Have Been Properly Pled .........25

L. There is No Obvious Alternative Explanation for AmWaste's Farming Out of the Collection Activities to the City ....................................27

M. Conclusion ..........................................................................29

CERTIFICATE OF COMPLIANCE...................................................30

CERTIFICATE OF SERVICE ........................................................31

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE NO.</u>

*Baisch v. Gallin,*
346 F.3d 366, 377 (2d. Cir. 2003)............................................................23

*Bendinburg v. Dempsey,*
909 F.2d 463, 469 (11th Cir. 1990) .........................................................14

*Board of County. Comm'rs v. Brown*,
520 U.S. 397, 400, 406, 410 (1997)...................................................... 2-4

*Boyle v. U.S.,*
556 U.S. 938, 946 (2009)..........................................................................22

*Buckman v. Halsey,*
2021 U.S. App. Lexis 27240 * 6 (11th Circuit 2021).......................... 4-8

*Burrell v. Bd. Of Trustees of Ga. Military College,*
970 F.2d 785, 789 (11th Cir. 1992) .........................................................14

*Campbell v. Johnson,*
586 F.3d 835, (11th Cir. 2009) .................................................................16

*Carter v. City of Montgomery*,
473 F.Supp.3d 1273, 1299, 1300, 1302 (M.D. Ala. 2020)............................ 5, 9-11

*City of Canton v. Harris,*
489 U.S. 378, 380, 388-89 (1989) .......................................................7, 8

*Cisneros v. Pentland, Inc.,*
972 1204, 1212 (11th Cir. 2020)........................................................28, 29

*County of Sacramento v. Lewis,*
523 U.S. 833, 847, 849 (1998).................................................................13

*Dander v. Church of Scientology,*
619 F.Appx. 945, 947 (11th Cir. 2015) ...................................................17

*Davis v. Carter,*
555 F.3d 979, 981-82 (11th Cir. 2009) ............................................................13, 17

*Eclectic v. Mays,*
547 So.2d 96 (Ala. 1989); Ala. Code §11-47-135 (1975) ......................................15

*Elliot v. Foufas,*
867 F.2d 877, 881 (5th Cir. 1989) ..........................................................................22

*Exxon Mobil Corp v. Saudi Basic Indus. Corp.,*
544 U.S. 280, 284 (2005)........................................................................................17

*Finch v. City of Vernon,*
877 F.2d 1497, 1503 (11th Cir. 1989) ......................................................................7

*Great Western Dev. Corp. v. Benson,*
2018 U.S. Dist. Lexis 184408 at *19 (N.D. Ala. Oct. 29, 2018)............................22

*Grech v. Clayton County,*
335 F.3d 670, 1364 (11th Cir. 2003) .................................................................... 8-9

*Griggs v. Kenworth of Mgmt.,*
775 Fed.Appx. 608, 613 (11th Cir. 2019)...............................................................19

*GoITV, Inc. v. Fox Sports Latin Am.,*
*2018 U.S. Dist. Lexis 29836 at *38 (S.D. Fla. Jan. 26, 2018)* ..............................24

*Haddan v. Norfolk S. Ry. Co.,*
367 So.3d 1073 (Ala. 2022)......................................................................................7

*Heck v. Humphrey,*
512 U.S. 477 (1994)................................................................................................18

*Hewitt v. Helms,*
459 U.S. 460, 466 (1983)........................................................................................12

*Jackson v. Sauls,*
206 F.3d 1156, 1168 n. 16 (11th Cir. 2000) ....................................................4, 6, 7

iv

*Ketner v. City of Sanibel,*
750 F. 3d 1274, 1279 (11th Cir. 2017) ....................................................12

*Knight v. Tomen,*
1991 U.S. Dist. Lexis 12234 at *4 (N.D. 1991) ...............................16, 20

*Lands v. Ward*,
349 So.2d 219, 228 (Ala. 2021) ..............................................................6

*Lehman v. Lucom,*
727 F.3d 1326, 1330 (11th Cir. 2013) ....................................................21

*Malone v. City of Decatur, Alabama,*
2018 WL 4901212 * 26(N.D. Ala. Oct. 9, 2018) ....................................26

*McCullough v. City of Montgomery*,
2020 U.S. Dist. Lexis 241643 * 29, 30 (M.D. Ala. Dec. 23, 2020) .........5

*Monell v. Dept. of Soc. Svcs. Of N.Y.C.*,
436 U.S. 638, 694 (1978)...............................................2, 3, 4, 5, 8, 9, 19

*Nicholson v. Shafe,*
558 F.3d 1266, 1274 (11th Cir. 2009) ....................................................17

*Oklahoma City v. Tuttle*,
471 U.S. 808, 823 (1985)...................................................................5, 8

*O'Kelley v. Craig,*
781 Fed. Appx. 888, 893 (11th Cir. 2019)..............................................28

*Palmer v. Morris,*
316 F.2d 649, 650 (5th Cir. 1963) ..........................................................14

*Pembaur v. City of Cincinnati,*
475 U.S. 469, 475, 478 (1986)........................................................2, 3, 8

*Quinones v. Szorc,*
771 F.2d 289, 291 (7th Cir. 1985) ..........................................................20

*Ray v. Corr. Svcs.,*
2017 U.S. Dist. Lexis 22667 (N.D. Ala. Feb. 17, 2017) ........................10

*Regents of the University of Michigan v. Ewing*,
474 U.S. 214, 229 (1985) ......................................................................... 12

*Reves v. Ernest Young*,
507 U.S. 170 ............................................................................................. 23

*Rooker-Feldman Doctrine* ....................................................................... 17

*Salinas v. United States*,
522 U.S. 52, 65 (1997) ............................................................................. 24

*Smith v. City of Oak Hill*,
587 F. App'x 524, 527 (11th Cir. 2014) ..................................................... 6

*Smithfield Foods, Inc., v. United Food Commer. Workers Int'l Union*,
585 F.Supp. 2d 789, 800 (E.D. va. 2008) ................................................ 25

*Spence v. Zimmerman*,
873 F. 2d 256, 258 (11th Cir. 1989) ......................................................... 13

*Tate v. Short*,
401 U.S. 395, 398-99 (1971) .............................................................. 13, 18

*Teagan v. City of McDonough*,
949 F.3d 670, 672 (11th Cir. 2020) ........................................................ 8, 9

*Telesca v. Village of Kings Creek Cond. Assn., Inc.*,
390 F. App'x 877-880-81 (11th Cir. 2010) ............................................... 18

*Toyota Gwinnett, LLC v. Gwinnett City Toyota*,
940 F.3d 154, 1267 (11th Cir. 2019) ....................................................... 17

*U.S. v. Allen*,
155 F.3d .5, 42-43 (2d. Cir. 1998) ........................................................... 23

*U.S. v. Pipkins*,
378 F.3d 1281, 1290 (11th Cir. 2004) ...................................................... 28

*U.S. v. Starrett,*
55 F.3d 1525, 1545 (11th Cir. 1995) ........................................28

*United States v. Enmons,*
410 U.S. 396, 399-400 (1973) ..................................................25

*United States v. Godwin,*
765 F.3d 1306, 1320 (11th Cir. 2014) .....................................23

*United States v. Goldin Indus., Inc.,*
219 F.3d 1271, 1275 (11th Cir. 2000) .....................................21

*United States v. Pendergraft,*
297 F.3d 1198, 1205-06 (11th Cir. 2002) ..........................25, 26

*United States v. Porcaro,*
648 F.2d 753, 760 (1st Cir. 1981) ............................................25

*United States v. Solerno,*
481 U.S. 739, 754 (1987) ..........................................................16

*United States v. Napout,*
2017 U.S. Dist. Lexis 171 882 (G.D.N.Y. 2017) ....................19

*United States v. Nicholson,*
716 Fed Appx. 400, 408 (6th Cir. 2017)..................................24

*United States v. Zappola,*
671 F2d 264, 269 (2d Cir. 1982)..............................................26

*United Steelworkers of Am. V. Phelps Dodge Corp.,*
865 F.2d 1539, 1541 (9th Cir. 1989) .......................................15

*Weigland v. Royal Caribbean Cruises Ltd.,*
2023 U.S. App. Lexis 17452 * 15 (11th Cir. July 11, 2023)......6

*Williams v. Bennett,*
689 F.2d 1370, 1389 (11th Cir. 1982) .......................................5

*Williams v. Fulton County School Dist.,*
181 F. Supp. 3d 1089, 1148 (N.D. G.A. 2016)........................................................14

*Woodard v. Town of Oakman,*
885 F.Supp.2d 1216, 1232 (N.D. Ala. 2012)..........................................................11

*Wright v. Watson,*
2017 U.S. Dist. Lexis 151180 * 5 (Sept. 18, 2017) ..................................................7

*Younger v. Harris,*
401 U.S. 37 (1971) ...............................................................................................16, 17

*Zivojinovich v. Ritz Carlton Hotel Co., LLC,*
445 F.Supp. 2d 1337, 1344 (M.D. Fla. 2016)........................................................14

## STATUTES:

42 U.S.C. § 1983 ..................................................................... 3-7, 9, 14, 18, 19

18 U.S.C. § 1962(c) ....................................................................................21, 24

18 U.S.C. § 1951(b)(2)........................................................................................25

42 U.S.C. § 1988(a) .............................................................................................5

18 U.S.C. § 1951(a) .......................................................................................25, 26

18 U.S.C. §1961(4) ............................................................................................21

18 U.S.C. § 2113(a) ...........................................................................................27

## OTHER AUTHORITIES:

Ala. Code § 22-27-5(c) .......................................................................................18

Valley Mun. Code § 58-127...................................................................................5

U.S. Const. Amendment 14 ................................................................................12

## TABLE OF RECORD REFERENCES IN THE BRIEF

| **Brief Page #** | | **Docket #** |
|---|---|---|
| 2, 3, 5, 6 8, 10, 11, 15, 19, 20, 21, 22, 24, 27, 28 | Second Amended Complaint | Doc. 31 |
| 5, 7, 19, | Court Memorandum Opinion & Order | Doc. 42 |
| 2, 11, 16 | City Supporting Memorandum Brief Exhibit B | Doc. 35-2 |
| 2, 11, 16 | City Supporting Memorandum Brief Exhibit C | Doc. 35-3 |
| 2, 16, 18 | City Supporting Memorandum Brief Exhibit A | Doc. 35-1 |
| 27 | AmWaste's Motion to Dismiss Second Amended Complaint | Doc. 33 |

**PLAINTIFF'S ARGUMENT IN REPLY BRIEF**

**PLAINTIFFS'-APPELLANTS' ARGUMENT IN REPLY BRIEF**

**A. *Monell* Does Not Set Forth a Standard of Causation.**

Monell v. Dept. of Social Svcs., 436 U.S. 638 (1978) does not refer to or reject "but for" causation. Rather, Monell holds that the Constitutional deprivation must be the result of an "official policy" of the governmental entity. Monell, 436 U.S. at 694.

The Second Amended Complaint ("SAC"), Doc. 31, alleges that, "In each instance referenced above the process was started with the City making a Complaint for a Code Violation." Doc. 31, p. 4. There were, see, infra, other options available. Just the three named Plaintiffs show the longstanding policy of incarcerating people for not paying garbage bills over ten (10) years. Doc. 35-1, p. 5. Doc. 35-2, p. 5; Doc. 35-3, p. 5, and setting bond at $2,500.00. Doc. 35-1, p. 5; Doc. 35-2, p. 5, and Doc. 35-3, p. 5.

In Bd. Of the County Comm'rs v. Brown, 520 U.S. 397, 400 (1997), the Court echoed Monell's phraseology, adding that § 1983 liability is to be imposed where "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." Bd. Of the County Comm'rs, 520 U.S. at 400.

In Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), two deputy sheriffs broke into a physician's office to arrest the witnesses. The physician

filed a § 1983 action. The County argued that the actions of the sheriffs could not be imputed to the County because the sheriffs were not policymakers. The Court disagreed, stating that, "<u>Monell</u> is a case about responsibility," <u>Pembaur</u>, 475 U.S. at 478, before concluding that the responsibility was on the County for implementing a policy that resulted in a Constitutional deprivation by the sheriffs' actions.

The <u>Pembaur</u> Court went back to the statutory language of § 1983 imposing liability on a person who "subjects or causes to be subjected, any individual to a deprivation of federal rights." <u>Pembaur</u>, 475 U.S. at 478, quoting 42 U.S.C. § 1983. Liability does not attach for the **<u>acts</u>**, liability attaches for the **<u>policy</u>** that "causes [one] to be subjected to" a deprivation.

<u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397 (1997) concluded, citing <u>Pembaur</u>, that when the "decision was that of a final municipal decision maker," it was therefore "properly attributable to the municipality [and] established municipal liability. No questions of fault or causation arose." <u>Bd. of County Comm'rs</u>, 520 U.S. at 406. Referring people for prosecution it knew would result in jailing for the purpose of intimidating people into paying garbage bills, Doc. 31, pp. 5-6, 16, is the decision of a municipal policymaker.

It matters not whether employees of the City or agents of the Court actually carried out the policy. If the Constitutional deprivation "causes to be

subjected" a "deprivation of any rights, privileges or immunities secured by the Constitution," 42 U.S.C. § 1983, section 1983 liability attaches. The "but for" causation applicable to Monell analysis is not whether the injury happened as the result of a municipal actor, but whether it occurred as the result of a municipal custom or policy. Bd. of Comm'rs, 520 U.S. at 410.

The District Court came to its "broken chain of causation" conclusion without undertaking the proper causation analysis. In Buckman v. Halsey, 2021 U.S. App. Lexis 27240 (11th Circuit 2021), the Court more recently held that, "Common law tort principles of damages and causation apply in the § 1983 context." Buckman, 2021 U.S. App. Lexis 27240 at * 5.

> Not every cause which comes into operation after a tortfeasor has acted will relieve him of liability for his wrongful act...In order to be an intervening cause, a subsequent cause also must have been unforeseeable and must have been sufficient in and of itself to have been the sole 'cause in fact' of the injury...If an intervening cause could have reasonably been foreseen at the time the tortfeasor acted, it does not break the chain of causation between his act and the injury.

Buckman, supra, quoting Jackson v. Sauls, 206 F.3d 1156, 1168, n. 16 (2000). The decision of the City to initiate criminal prosecution was both the cause in fact and the proximate cause.

1. **The Policy of Referring Citizen for Criminal Prosecution for Unpaid Garbage Bills was the Cause-in-Fact of Plaintiffs Injuries[1].**

"The process was started with the City making a Complaint for a Code Violation." Doc. 31, p. 4, ¶ 25. The criminal referrals are: (1) "a long standing and widespread practice;" and (2) per Monell, "a course of action consciously chosen from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). The City did have alternatives to criminal prosecution, it could have initiated via a civil action, including 12% interest. Valley Mun. Code § 58-127.

The cause-in-fact is established by showing that "except for the constitutional tort, such injuries and damages would not have occurred." Buckman, 2021 U.S. App. Lexis 27240[2]. The District Court agreed the City initiated the causal chain …" Doc. 42, p. 12.

Once but-for causation is established, "An act or omission is a legal or proximate cause of a plaintiff's injuries or damages if it appears from the

---

[1] This causation analysis rebuts both the causation arguments made by the City, and by AmWaste.

[2] The Carter v. City of Montgomery, 473 F.Supp. 3d 1273, 1302 (M.D. Ala. 2020) states that courts look to the actual state law where the incident took place to define the relevant causation standards. Carter, 473 F.Supp. 3d at 1302, citing Williams v. Bennett, 689 F. 2d 1370, 1389 (11th Cir. 1982), as opposed to the more generic "traditional tort principles" referenced in Buckman. This is an academic difference. The Middle District of Alabama, recognized that this is a largely semantical distinction, writing, "Indeed, § 1988(a) expressly authorizes courts to look at state substantive law in deciding civil rights cases…the Circuit has applied state tort law to determine causation standards in § 1983 cases. See, e.g. Williams v. Bennett, 689 F.2d 1370, 1389 (11th Cir. 1982)…Second, even if federal law would be a more appropriate source of law, federal law in this Circuit holds that reasonably foreseeable events do not sever proximate cause." McCullough v. City of Montgomery, 2020 U.S. Dist. Lexis 241643 * 29, 30 (M.D. Ala. Dec. 23, 2020).

evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission." <u>Buckman</u>, 2021 U.S. App. Lexis 27240 at * 6, quoting <u>Jackson v. Sauls</u> 206 F.3d 1156, 1168 n. 16 (11th Cir. 2000). The City was well aware that the natural consequence of its choice to refer delinquent garbage payers for criminal prosecution, rather than pursue traditional civil collection process, would lead to jail time. Doc. 31, p. 5.

### 2. **Foreseeability is a Fact Question.**

Alabama law regarding proximate cause, and "common law" or "traditional tort principles." <u>Buckman</u>, 2021 U.S. App. 27240 at * 6, 5, are indistinguishable. Under Alabama law, "It is well established that proximate cause is generally a jury question." <u>Lands v. Ward</u>, 349 So.2d 219, 228 (Ala. 2021). Similarly, the 11th Circuit has held that, "Under § 1983, that defendants "are, as in common law tort disputes, responsible for the natural and foreseeable consequences of their actions…" <u>Smith v. City of Oak Hill</u>, 587 Fed. Appx. 524, 527 (11th Cir. 2014). The 11th Circuit has held that "Foreseeability is a question of fact." <u>Weigland v. Royal Caribbean Cruises Ltd.</u>, 2023 U.S. App. Lexis 17452 * 15 (11th Cir. July 11, 2023). It was reasonably foreseeable that referring Plaintiffs for criminal prosecution would result in jailing where jailings had been occurring for garbage fees in arrears in excess of ten (10) years.

"[W]here the actions of two or more tortfeasors combine, concur, or coalesce to produce an injury, each tortfeasor's act is considered to be the proximate cause of the injury." Haddan, 367 So.3d at 1073. "The Eleventh Circuit and its predecessor have found that joint and several liability applies in § 1983 damages actions." Wright v. Watson, 2017 U.S. Dist. Lexis 151180 * 5 (Sept. 18, 2017), citing Finch v. City of Vernon, 877 F.2d 1497, 1503 (11th Cir. 1989). The actions of prosecutors and the municipal court may have been a concurring cause of the eventual incarceration of Plaintiffs, however, "[T]he City initiated the causal chain…" Doc. 42, p. 12. Both have caused the injury.

### 3.  The Precedents Relied Upon by the City Fundamentally Misunderstand the Plaintiffs' Position.

#### a.  None of the Cases Relied Upon Touch the Issue at Hand.

Plaintiffs have never advocated for a single-prong, but-for theory of causation. Plaintiffs' theory incorporates but-for causation as a first step per binding 11th Circuit precedent, i.e., that causation has two required elements: cause-in-fact and legal or proximate cause. Buckman, Jackson, supra.

City of Canton v. Harris, 489 U.S. 378 (1989) has nothing to do with the two causational elements referenced above. The Court stated at the very beginning of its opinion that it was "asked to determine if a municipality can ever be liable under 42 U.S.C. § 1983 for constitutional violations resulting

from its failure to train employees." City of Canton, 489 U.S. at 380. The "causation" issue tackled by the City of Canton Court was "what degree of fault must be proved." City of Canton, 489 U.S. at 388, in a failure to train case.

The City of Canton Court, referring to Monell, stated that municipal liability applies where "its policies are the 'moving force' [behind] the constitutional deprivation." City of Canton, supra. Next, the City of Canton Court, citing Pembaur, supra, stated that "municipal liability attaches where— a deliberate choice to follow a course of action is made from among various alternatives." City of Canton, 489 U.S. at 389, citing Oklahoma City v. Tattle, 471 U.S. 808, 823 (1985). The City has, under the applicable statute, a range of choices, and consistently chose the course of action it **knew** would end up with the jailing of citizens. Doc. 31, pp. 4-5. The City **did** have a choice – and one that made more sense if the true object was to collect debts. That is a policy under Monell and City of Canton, supra.

"Control over the court system" is not traditional causation analysis. Foreseeability, as clearly laid out in Buckman, and the cases sited therein, is the proper causation analysis. Neither Teagan v. City of McDonough, 949 F.3d 670 (11ᵗʰ Cir. 2020), or Grech v. Clayton County, 335 F.3d 670 (11ᵗʰ Cir.

2003), hold that the Eleventh Circuit has substituted a "control" test for traditional causation principles.

The Teagan case relied upon by Defendants was distinguished at length in Plaintiffs' Principal Brief, Appellants' Brief, pp. 33-35. Plaintiffs' quarrel is not with the State district court. Plaintiffs' quarrel is with the City's policy decision to initiate criminal proceedings it knew would result in unauthorized jail time. The conduct Plaintiffs find fault with is **not** that specifically attributable to the district court. The fault is with a policy decision the City **did** have control over.

Similarly, Grech is not a proximate cause case. In Grech, the issue was "whether a sheriff has final policymaking authority maintaining and recalling criminal warrants." Grech, 335 F.3d at 1364. The conclusion was that the Sheriff did not, and without such, the governmental entity would be held liable on a respondent superior theory, running afoul of Monell. The quarrel with Valley is that it had a policy of referring those delinquent on garbage bills for criminal prosecution, as opposed to other choices.

### b.  **The *Carter* Case is Indistinguishable and Was Rightfully Decided.**

Valley argues in this case that the decisional basis for holding the municipality responsible under § 1983 in Carter was that the prosecutions took place in the municipal court. That is just not so. The Carter Court excluded

"control" as a decisional basis when it stated, "The City correctly argues that it cannot be held liable for the Municipal Court and JCS actions just because it funds the court and probation services." Carter, 473 F.Supp.3d 1273. Then the City in Carter made the same argument defendants make here – that it was the court that made the policy with regard to sentencing. This was rejected.

> Once the City became aware that JCS and the Municipal Court systemically violated probationers' rights, it bore policymaking responsibility for the contract's foreseeable consequences until it terminated the contract.

Carter, 473 F.Supp.3d at 1300. Similarly, Valley initiated the process resulting in jailings by the district court for unpaid garbage bills. Doc. 31, p. 5.

Dissatisfied with Carter and its application of the traditional, two-pronged causation analysis instead of its proffered "control" analysis, the City posits that a prior District Court case, Ray v. Corr. Svcs., 2017 U.S. Dist. Lexis 22667 (N.D. Ala. Feb. 17, 2017), is better reasoned. The Carter opinion explains:

> Despite the factual similarities between the cases, JCS's citations to *Ray* do not support its argument. *Ray* granted summary judgment to JCS on plaintiffs' Bearden claims because it found insufficient support for the claims in the record. *See id*. at 1299. While *Ray* notes in dicta that "[a] judicial act generally severs the chain of liability where a judge misapplies the law after another state actor has informed the judge of all the material facts," id. at 1298, it did not reach — [**46]  much less agree with — JCS's causation arguments.

Carter, 473 F.Supp.3d at 1302.

Finally, the holding in Woodard v. Town of Oakman, 885 F.Supp.2d 1216 (N.D. Ala. 2012), is inapposite. The municipality in that case was dismissed because "Plaintiffs do not allege any facts showing that a 'custom' or an adopted 'policy' of the Town of Oakman was the 'moving force' behind any retaliation." Woodard, 885 F.Supp.2d 1216, 1232 (N.D. Ala. 2012). That is not the case here. Doc. 31, p. 5. Valley had complete control as to whether to initiate criminal actions, which foreseeably resulted in jail.

**B. <u>The Record Clearly Shows That Plaintiffs Were Incarcerated for the Failure to Pay Garbage Fees.</u>**

Defendants, insist that Plaintiffs were not incarcerated for the failure to pay garbage fees. That is just not true. The state district court records **state the exact opposite**. The district court records for Mr. Gray and Ms. Khelifa do not contain the words "Failure to Appear". The state district court records, show that Mr. Gray and Ms. Khelifa were jailed exactly for "Fail Pay Solid Waste Fees."

The Court records, show that Gray and Khelifa were convicted of "Fail Pay Solid Waste Fees." This is fully explained and referenced, in detail, at pp. 6-11, of Plaintiffs' Principal Brief. The charge was always listed as "Fail to Pay Solid Waste," Docs. 35-2, p. 5, 35-3, p. 5, and the bond was always set at $2,500.00. Doc. 35-2, p. 5, 35-3, p. 5.

**C. Plaintiffs Have Stated A Substantive Due Process Claim.**

"Substantive due process works to protect these rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty" Ketner v. City of Sanibel, 750 F. 3d 1274, 1279 (11th Cir. 2017). This is a case about the infringement of Plaintiffs' liberty interests, specifically enumerated in the Fourteenth Amendment.

**1.  The Liberty Interest Asserted Is Deeply Rooted in Our Legal Tradition and Protected by the Fourteenth Amendment.**

There are very few—perhaps none—interests more "fundamental" than liberty. The idea that liberty rights are not deeply rooted in our legal tradition, Appellee Brief, pp. 35-37, is not supported in the law. "Substantive due process rights are created only by the Constitution." Regents of the University of Michigan v. Ewing, 474 U.S. 214, 229 (1985). The Fourteenth Amendment itself states that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. Const. Amendment 14. Courts have held that, "Liberty interests protected by the Fourteenth Amendment may arise from two sources - the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983).

**2.  Jailing Citizens Without Statutory Authority is Arbitrary.**

Deprivations of a liberty interest "for an improper motive, and by means that were pretextual, arbitrary, and capricious, and without any rational

basis are actionable" <u>Spence v. Zimmerman</u>, 873 F. 2d 256, 258 (11th Cir. 1989). Substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" <u>Davis v. Carter</u>, 555 F.3d 979, 981 (11th Cir. 2009). Regardless of whether the procedures of the state district court were proper in convicting Plaintiffs, it had no legislative authority to jail Plaintiffs under the statutes at issue.

A substantive due process claim is made under the Fourteenth Amendment as "arbitrary or conscience shocking" in a constitutional sense where "it is so intended to injure in some way unjustifiable by any governmental interest." <u>Davis,</u> 555 F.3d at 982, citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 847, 849 (1998). By statute, there is no justifiable government interest in jailing those convicted of failing to pay garbage fees.

Even if Valley's position that Plaintiffs were not jailed for their failure to pay garbage fees were true, it was unconstitutional for the City to be the moving force behind putting them in jail for not paying their "citations". In <u>Tate v. Short</u>, 401 U.S. 395 (1971), the Court found for the plaintiffs, stating, "[T]he Constitution prohibits the state from imposing a fine as a sentence and then automatically converting it into a jail time solely because the defendant is indigent and cannot forthwith pay the fines in full." <u>Tate</u>, 401 U.S. at 398.

**D. <u>Conspiracy Has Been Properly Pled.</u>**

Both Defendants attack the pleading of the second element for a §1983 conspiracy claim, an agreement among the defendants to violate a constitutional right. <u>See</u> <u>Williams v. Fulton County School Dist.</u>, 181 F. Supp. 3d 1089, 1148 (N.D. G.A. 2016). An "understanding" sufficient to support a § 1983 conspiracy claim does not require the pleading of "smoking gun" direct evidence of an argument. <u>Bendinburg v. Dempsey</u>, 909 F.2d 463, 469 (11th Cir. 1990). "[N]othing more than an 'understanding' and 'willful participation' between private and state defendants is necessary to show the kind of joint action that will subject private parties to §1983 liability." <u>Id</u>.

"Circumstantial evidence may be sufficient to establish the conspiracy if it proves the existence of the conspiracy." <u>Zivojinovich v. Ritz Carlton Hotel Co., LLC</u>, 445 F.Supp. 2d 1337, 1344 (M.D. Fla. 2016), citing <u>Burrell v. Bd. Of Trustees of Ga. Military College</u>, 970 F.2d 785, 789 (11th Cir. 1992). Indeed, "conspiracy is rarely established by direct evidence," and <u>Palmer v. Morris</u>, 316 F.2d 649, 650 (5th Cir. 1963), "averments of communication, consultation, cooperation, or command from which such agreement can be inferred," are sufficient. <u>Palmer</u> 2007 U.S. Dist. Lexis 81479 (M.D. Pa. Nov. 7, 2016).

14

The SAC clearly alleges that the City initiated these prosecutions Doc. 31, p. 4, ¶ 25, in order to use the fear of jail to intimidate people. Doc. 31, pp. 4-5, ¶¶ 26, 29. AmWaste was paid by revenues collected for garbage fees. Doc. 31, p. 13, ¶ 72. Because the City used excess garbage fees for its general fund, Doc. 31, p. 8, ¶¶ 47-50, constituting an unauthorized tax, <u>Eclectic v. Mays</u>, 547 So.2d 96 (Ala. 1989); Ala. Code §11-47-135 (1975), the City was motivation to maximize collections.

"To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." <u>United Steelworkers of Am. V. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1541 (9th Cir. 1989). The common objective is manifest. The City illegally transfers some of the monies to its general fund. Doc. 31, p. 8, ¶¶ 47-50. The common objective of the conspiracy is for the City to extract payments from the citizenry and divert them illegally to its general fund.

The Complaint does not allege "mere knowledge". AmWaste knew of and approved of the methodology to be used in collecting those fees, including the use of jail time or the threat of jail. Doc. 31, p. 13, ¶ 73. Because "[t]he very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement; circumstantial evidence of the conspiracy,

15

particularly regarding overt acts performed in furtherance of conspiracy, is all that is obtainable before discovery and trial." <u>Knight v. Tomen</u>, 1991 U.S. Dist. Lexis 12234 at *4 (N.D. 1991). Because of this reality, "Facts detailing the conspiratorial agreement may be pleaded generally, while facts documenting the overt acts must be pleaded specifically." <u>Knight</u>, <u>supra</u>.

**E. <u>An Eighth Amendment Claim Has Been Properly Pled.</u>**

Bail was uniformly set in the amount of $2,500.00. Doc. 35-1, p. 5; Doc. 35-2, p. 5; Doc. 35-3, p. 5. The maximum fine that could have been imposed for the offense is $200.00. The Eighth Amendment guarantees that "bail will 'not be excessive' in light of the perceived evil." <u>United States v. Solerno</u>, 481 U.S. 739, 754 (1987), cited in <u>Campbell v. Johnson</u>, 586 F.3d 835, (11th Cir. 2009). The only <u>legal</u> "perceived evil" for these offenses is that plaintiffs would not pay the $200 maximum fines, a monetary loss. However, bail in excess of eight (8) times the amount owed is clearly far beyond the "evil."

**F. <u>Neither Younger Abstention or Rooker Feldman Apply.</u>**

<u>Younger v. Harris</u>, 401 U.S. 37 (1971) does not apply because there is no identity of parties, and the underlying claims for the failure to pay garbage fees are criminal actions, not civil cases. <u>Younger</u> applies "where a plaintiffs' federal claims could be adjudicated in a pending state judicial proceeding."

16

Toyota Gwinnett, LLC v. Gwinnett City Toyota, 940 F.3d 154, 1267 (11th Cir. 2019). There is no judicial proceeding between the Valley and Plaintiffs. Younger abstention, an "extraordinary and narrow exception to the rule of non-abstention." Dander v. Church of Scientology, 619 F.Appx. 945, 947 (11th Cir. 2015). Plaintiffs cannot bring a civil claim for damages against the City of Valley and AmWaste in a state district court criminal action. Such an action "would not interfere with the State proceedings," in any case.

The Rooker-Feldman Doctrine does not apply for a similar reason. This case is brought against the City of Valley. The prosecutions were brought by the State of Alabama. Rooker-Feldman is a narrow jurisdictional doctrine "confined to cases…brought by state court losers…rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). There is no world which this case could be construed as an attempt to re-litigate anything that went on in the underlying prosecutions. "Rooker-Feldman does not…[apply] simply because a party attempts to litigate in federal court a matter previously litigated in state court." Nicholson v. Shafe, 558 F.3d 1266, 1274 (11th Cir. 2009).

## G. **Heck v. Humphrey Is Not Relevant To This Case.**

Heck v. Humphrey, 512 U.S. 477 (1994), applies where a successful § 1983 claim would necessarily imply the invalidity of a past criminal conviction. Plaintiffs do not contest their convictions under Ala. Code § 22-27-5. They are guilty.

## H. **The Timeline of Ms. Little's Claim[3].**

In Tate v. Short, supra, a defendant convicted of a misdemeanor that did not carry jail time as a punishment was jailed for the failure to pay those fines. The Court stated:

> The Constitution prohibits converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.

Tate, 401 U.S. at 398-99. In this case, Ms. Little was not imprisoned within the statutory period, but a warrant for her arrest (and imprisonment if she did not pay), was issued in January of 2023, Doc. 35-1, p. 7.

## I. **Waiver of § 1983 Claims Against AmWaste.**

AmWaste argues that any § 1983 claim against it has been waived since the issue of whether there was an agreement between it and the City. First, the issue was argued at length at pp. 35-39 of Appellant's Brief. The heading for

---

[3] The City argues Ms. Little's claim on the basis of standing. Ms. Little's claim is "concrete and particularized (she was the subject of a warrant in January of 2023); the warrant was "actual"; and there is a causal connection between the injury (fear of imprisonment for a non-jailable offense), that would be redressed by a favorable decision (money damages). *Telesca v. Village of Kings Creek Cond. Assn., Inc.*, 390 F. App'x 877-880-81 (11th Cir. 2010).

that section reads, "The District Court Improperly Decided the Fact Question of Whether There was an Agreement Between AmWaste and the City to Extort Money from Plaintiffs." Second, the issue was never decided by the lower court. The District Court stated, "because the City's Monell…argument…is dispositive, the Court will dismiss Plaintiffs' § 1983 claims on Monell and causation grounds and will not address the City's remaining arguments for dismissal." Doc. 42, p. 6. The Court itself stated it decided no other issue as to § 1983 other than the Monell and causation issues before moving onto its RICO analysis. The law is that without an "explanation of the rationale…we cannot conduct meaningful review of the district court's order." Griggs v. Kenworth of Mgmt., 775 Fed.Appx. 608, 613 (11th Cir. 2019). Under this principle, a Court "ordinarily do[es] not decide in the first instance issues not decided below." Id. In this case, there is no ruling on the issue to review.

## J.  Conspiracy as to AmWaste[4].

The SAC contains specific allegations regarding AmWaste's knowledge of, and assent to, the practices of the City in collecting garbage fees:

---

[4] As to the RICO claim against, the City, the necessary mens rea is not attributable to the City. However, the RICO claims against AmWaste are unaffected. The City is an uncharged conspirator. United States v. Napout, 2017 U.S. Dist. Lexis 171 882 (G.D.N.Y. 2017).

19

- AmWaste knew the City used [jailing] to intimidate people into paying. Doc. 31, p. 5, ¶ 30.

- Without AmWaste, there is no generation of garbage fees. Without the City, there is no collection of garbage fees through jailing people. Doc. 31, p. 6, ¶ 34.

- AmWaste knew exactly how the City was collecting garbage fees at the time, and entered into a contractual relationship. Doc. 31, p. 13, ¶72.

- AmWaste knew of and approved of the methodology to be used in collecting those fees. Doc. 31, p. 13, ¶73.

AmWaste significantly overstates the pleading requirements for a conspiracy claim. The facts documenting the overt acts are pleaded specifically. The facts concerning an agreement are pled circumstantially. Because "[t]he very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement; circumstantial evidence of the conspiracy, particularly regarding overt acts performed in furtherance of conspiracy, is all that is obtainable before discovery and trial. <u>Knight v. Tomen</u>, 1991 U.S. Dist. Lexis 12234 at *4 (N.D. 1991). Because of this reality, "Facts detailing the conspiratorial agreement may be pleaded generally, while facts documenting the overt acts must be pleaded specifically." <u>Knight</u>, <u>supra</u>, citing <u>Quinones v. Szorc</u>, 771 F.2d 289, 291 (7th Cir. 1985). The overt acts establishing the jailing and excessive bond have

been alleged. Because they must, the facts alleging a conspiracy agreement rely upon an inference.

The allegations are that the citizens were jailed, not to collect any particular garbage fees, but to intimidate the populace into paying. "The City would be better off collecting those monies through normal collection efforts. The only explanation is that it prosecutes and jails people to intimidate them into paying garbage bills." SAC, Doc. 31, p. 5, ¶ 29. If the purpose of the conspiracy was to collect garbage fees, there is a legal avenue open to it – file a civil action. However, the agreement and purpose of AmWaste was to intimidate into payment.

## K. The RICO Claim Has Been Properly Pled.

Civil RICO, 18 U.S.C. §1962(c), requires the following elements: (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013).

### 1. The Existence of an Enterprise.

A RICO enterprise is any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). "The existence of a RICO enterprise is the existence of an association of individual entities, however, loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes…" United States v. Goldin

21

Indus., Inc., 219 F.3d 1271, 1275 (11th Cir. 2000). Further broken down, an enterprise must have the following: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. Boyle v. U.S., 556 U.S. 938, 946 (2009), cited in Great Western Dev. Corp. v. Benson, 2018 U.S. Dist. Lexis 184408 at *19 (N.D. Ala. Oct. 29, 2018).

The "purpose" of the association was for AmWaste to provide garbage collection on behalf of the citizenry of Valley, and for the City to collect monies from the customers to pay AmWaste. Doc. 31, p. 14, ¶ 80. This legal purpose exists separate and apart from the pattern of racketeering activity. "The association exists for purpose other than simply to commit the predicate acts." Elliot v. Foufas, 867 F.2d 877, 881 (5th Cir. 1989).

The parties have conducted the affairs in the otherwise legitimate enterprise of garbage collection and payment through the practice of extorting payments by jailing, threats of jail, and exorbitant bonds for the offense the parties created by their codependent conduct. Doc. 31, p. 16, ¶ 89.

Relationship and longevity are similarly pleaded with clarity. AmWaste acquired the Valley garbage business with full knowledge of how the City collected bills. Doc. 31, p. 5, ¶¶ 30-32. Finally, longevity has been pled. The

Complaint alleges AmWaste took over the garbage collection in 2019, and Mr. Gray and Ms. Khelifa were arrested in 2022. Doc. 31, p. 3, ¶¶ 19, 22.

### 2. AmWaste Participated in the Conduct of the Enterprise to Provide Garbage Services and Collect Fees Therefore.

AmWaste conducted or participated in the conduct of the affairs of the enterprise referenced above. The test is articulated as follows:

> [T]he word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise...

Reves v. Ernest Young, 507 U.S. 170.

The Supreme Court's "operation or management" test is stated in the disjunctive, meaning that if AmWaste is a part of **either** the operation or management of the enterprise, sufficient conduct has been alleged. AmWaste was involved in the "operation" of the enterprise. It collected the garbage that generated the fees. "Even lower-rung participants or virtual outsiders may, by virtue of their conduct, find themselves ensnared." United States v. Godwin, 765 F.3d 1306, 1320 (11th Cir. 2014).

AmWaste decided, through its contract with the City, how it would be paid for those services. This meets the test which has been described as a "relatively low hurdle to clear, especially at the pleading stage. Baisch v.

Gallin, 346 F.3d 366, 377 (2d. Cir. 2003), citing U.S. v. Allen, 155 F.3d .5, 42-43 (2d. Cir. 1998).

Defendant takes the position that in order for a RICO claim to be made out, it must be shown that **it** performed the predicate acts. RICO is a conspiracy statute. "[T]o prove RICO conspiracy, the prosecution is not required to show that a defendant actually committed a racketeering act or any overt act at all." Salinas v. United States, 522 U.S. 52, 65 (1997). "…a RICO conspiracy conviction can be sustained if a defendant agreed that either he or someone else would commit at least two RICO predicate acts…and this agreement may be inferred from a defendant's acts." United States v. Nicholson, 716 Fed Appx. 400, 408 (6th Cir. 2017).

### 3. A Pattern of Racketeering Activity Has Been Pled.

To establish the requisite "pattern of racketeering activity" under § 1962(c), "a plaintiff must allege; (1) at least two predicate acts over a ten-year period that; (2) amount to, or threaten, continued criminal activity. GoITV, Inc. v. Fox Sports Latin Am., 2018 U.S. Dist. Lexis 29836 at *38 (S.D. Fla. Jan. 26, 2018). Mr. Gray was jailed on January 14, 2022, and Ms. Khelifa was jailed on November 30, 2022. Doc. 31, pp. 3-4, ¶¶ 19, 22.

In 2019, AmWaste took on the Valley garbage business well aware that Valley jailed people for not paying their garbage bills; Doc. 31, p.; (3) The

City of Valley was still jailing people for garbage fees in January 2022, when Mr. Gray and Ms. Khelifa were jailed. Doc. 31, p. 3, ¶19. Doc. 31, p. 3, ¶ 22.

**4. <u>The Predicate Hobbs Act Violations Have Been Properly Pled.</u>**

The Hobbs Act, 18 U.S.C. § 1951(b)(2), makes it illegal to extort "or attempts to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose…[or] the obtaining of property from another, with his consent, induced by wrongful use of actual of threatened force ,violence, or fear, under color of official right." 18 U.S.C. § 1951(a), 1951(b)(2).

Defendant argues, apparently, that jailing people is permissible when they are actually delinquent on their bills, citing <u>United States v. Pendergraft</u>, 297 F.3d 1198, 1205 (11th Cir. 2002), relying on <u>United States v. Enmons</u>, 410 U.S. 396, 399-400 (1973), to argue that "wrongful" within the meaning of the Hobbes Act means "using a wrongful means to achieve a wrongful objective." <u>Pendergraft</u>, 297 F.3d at 1208, citing <u>Enmons</u>, <u>supra</u>. However <u>Enmons</u> has been "applied…restrictively" by lower courts, <u>Smithfield Foods, Inc., v. United Food Commer. Workers Int'l Union</u>, 585 F.Supp. 2d 789, 800 (E.D. va. 2008) "explicitly tried to the labor context and more specifically to the strike context." <u>Smithfield Foods</u>, <u>supra</u>, citing <u>United States v. Porcaro</u>, 648 F.2d 753, 760 (1st Cir. 1981). As numerous courts have held, 'by adopting

25

the states' statutory law of extortion, Congress meant to punish as extorting <u>any effort</u> to obtain property by inherently wrongful means, such as force or threats of force.'" <u>United States v. Zappola</u>, 671 F2d 264, 269 (2d Cir. 1982).

Defendant cites <u>Malone v. City of Decatur, Alabama</u>, 2018 WL 4901212 (N.D. Ala. Oct. 9, 2018), for the proposition that where a private company uses illegal means to collect a debt, it is immune from a RICO claim where it had a lawful claim to the fines and fees it was attempting to collect. <u>Malone</u>, 2018 U.S. Dist. Lexis at * 26. In both <u>Malone</u>, and the case it principally relies upon, <u>United States v. Pendergraft</u>, 297 F. 3d 1198, 1205 (11th Cir. 2002), the defendants were authorized by law to actually jail the plaintiffs.

In <u>Malone</u>, the plaintiffs were not jailed for not paying the fines, their probation was revoked. In that instance, there is statutory authority for the jailing of the probationers. <u>Pendergraft</u> was a criminal case in which the defendants were charged under the Hobbs Act, 18 U.S.C. § 1951(a) for attempting to extort money from the county by threatening to file a lawsuit against it. The Court held that threatening to file a lawsuit cannot be extortion because a threat to litigate, which anyone is entitled to do, is not illegal or "wrongful" under the Hobbs Act. <u>Pendergraft</u>, 297 F.3d at 1206. In both <u>Malone</u> and <u>Pendergraft,</u> the alleged extortionate acts were legally authorized.

In this case, the City had imposed upon Plaintiffs a penalty not allowed under the law – jail time. Therefore, the jailing is a wrongful means, actionable under the Hobbs Act. 18 U.S.C. § 2113(a).

Defendant argues that the threat of jail is not extortion because the Alabama Solid Waste Act provides criminal penalties. Defendant's Brief, Doc. 33, p. 22. This misses the point. Plaintiffs' claim is not that the criminal penalties of a fine allowed by the Code are wrongful. Plaintiffs' case is that jailing people for unpaid garbage bills – not provided for in the Code – is wrongful.

## L. There is No Obvious Alternative Explanation for AmWaste's Farming Out of the Collection Activities to the City.

Defendant argues that there is nothing illegal or conspiratorial about "a simple, run-of-the-mill" contractual arrangement. Appellee's Brief, p. 48. If all AmWaste had done in this case was contract with the City to wholly undertake garbage collection services, and collect or otherwise process fees for that collection, there would be no case.

AmWaste knew that the City had been jailing people for non-payment or garbage bills when it assumed the garbage contract in 2019. Doc. 31, p. 5. The collection of delinquent garbage bills by the criminal process operative in this case makes no sense at all from a pure collections standpoint. Doc. 31, p. 5, as the Court costs and additional fees in the aggregate, are over three

times the amounts of the unpaid trash bills. Doc. 31, p. 5. The logical conclusion to be drawn, see O'Kelley v. Craig, 781 Fed. Appx. 888, 893 (11th Cir. 2019) ("all reasonable inferences in the plaintiff's favor"), is that the criminal actions for unpaid garbage bills were initiated not to collect garbage bills, but to intimidate citizens. Doc. 31, p. 5.

Defendant cites Cisneros v. Pentland, Inc., 972 1204, 1212 (11th Cir. 2020), for the proposition that where there is an "obvious alternative explanation" for the conspirators actions, like simply making money collecting garbage, that no RICO common purpose has been pled. AmWaste makes this argument ignoring the two cases cited in the Cisneros opinion right above the quoted text, U.S. v. Pipkins, 378 F.3d 1281, 1290 (11th Cir. 2004), (overall objective to make money by prostituting juveniles), and U.S. v. Starrett, 55 F.3d 1525, 1545 (11th Cir. 1995) (making money from repeated criminal activity demonstrates an enterprise's common purpose engaging in a course of conduct).

Instead of undertaking the collection of garbage fees itself, or hiring a private company to do so, AmWaste essentially "hired" the City of collect in a fashion it knew would lead to the incarceration of people for not paying garbage bills. That pushes Valley's conduct from "making money" to "making money by collecting monies via incarceration and threat of

28

incarceration from delinquent garbage fees." In <u>Cisneros</u>, the plaintiff had alleged no facts that could plausibly support the interference that the defendants were collectively trying to make money in pet sales by fraud," <u>Cisneros</u>, 972 F.3d at 1212. In this case, given alternatives, AmWaste chose the role it knew would lead to incarceration for non-payment. AmWaste was trying to make money in garbage collection through violations of the Hobbs Act.

**M. <u>Conclusion</u>**

For the foregoing reasons, the District Court is to be reversed.

*/s/ Brian M. Clark*                          
Brian M. Clark
bclark@wigginschilds.com
Attorney for Plaintiff-Appellant

OF COUNSEL:
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

## CERTIFICATE OF COMPLIANCE

Plaintiff-Appellant certify that the Argument in Reply complied with the type-volume limitation as it contains 6,463 words according to the word-count function of the word-processing system used to prepare the brief.

*/s/ Brian M. Clark*                          
Counsel for Plaintiff-Appellant

30

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have e-filed today, June 12, 2024, the above and foregoing by utilizing the Court's CM-ECF system, with copies being served on:

Robbie Alexander Hyde
Bart Gregory Harmon
ALEXANDER HYDE, LLC
2138 Moore's Mill Road, Ste. A
Auburn, Alabama 36830
robbie@alexanderhyde.com
bart@alexanderhyde.com
Telephone: (334) 246-2333

Benjamin B. Coulter
Callie L. Barrow
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
bcoulter@burr.com
cleopard@burr.com
Telephone: (205) 251-3000

*/s/ Brian M. Clark*
Plaintiff-Appellant